IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON GONZALES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 16 C 7915 |
| MICHAEL J. MADIGAN, FRIENDS OF MICHAEL J. MADIGAN, 13TH WARD DEMOCRATIC ORGANIZATION, PRISONER REVIEW BOARD, SHAW DECREMER, SILVANA TABARES, RAY HANANIA, JOE BARBOSA, and GRASIELA RODRIGUEZ, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2016, Jason Gonzales ran for Illinois House Representative of District 22 against Michael Madigan and two other candidates. Gonzales lost to Madigan and subsequently filed suit against him and a number of others associated with him, based on their conduct during the period leading up to the election. Gonzales alleges that the defendants violated his rights under the Constitution and state law. Eight of the nine defendants moved jointly to dismiss the federal claims asserted against them. The Prisoner Review Board (PRB) filed its own motion to dismiss the federal claims. For the reasons stated below, the Court grants the joint defendants' motion to dismiss, with leave for Gonzales to amend the complaint, and grants the PRB's motion to dismiss without leave to amend.

**Background**

Gonzales is an active member in the Chicago community and a member of the Chicago Council on Global Affairs, the Spertus Institute, and the Civic Club of Chicago. He also co-founded AquaVida, a non-profit organization that helps people throughout the world access clean drinking water. At some point, Gonzales decided that he wanted to expand his public service and run for public office. Gonzales faced an obstacle, however, in that he had been convicted of crimes when he was a teenager. Between 1991 and 1994, Gonzales was arrested and charged with offenses arising from the unlawful use of credit cards at shopping malls. He was convicted of both felony and misdemeanor charges. Gonzales spent time in jail as well as on probation.

After his release, Gonzales asked several governors of Illinois to grant him a pardon. In January 2015, then-Governor Pat Quinn granted Gonzales's request for executive clemency. Gonzales received a full pardon and an order expunging the records of his criminal cases. By October 2015, the state had either expunged or sealed all of Gonzales's criminal case files.

Gonzales then decided to run against incumbent Madigan for the District 22 seat in the Illinois House of Representatives. In November 2015, Gonzales arrived at the office of the Illinois State Board of Elections to file his nominating petition for the election. While there, Gonzales says, he saw Shaw Decremer, a top aide to Madigan, staking out the office. Gonzales alleges that just after he filed his nominating petition, Decremer filed the nominating petitions of two additional candidates—Joe Barbosa and Grasiela Rodriguez—for the same seat. Gonzales alleges that neither of these individuals actively campaigned for the seat, nor did they maintain a website or

otherwise promote their candidacies.  In essence, Gonzales alleges, they were sham candidates put up by Madigan and his associates.

Gonzales further alleges that during the campaign, Madigan, acting through his employees and agents, misinformed voters regarding Gonzales's qualifications.  Specifically, Gonzales claims that Madigan used television and internet ads, mailers, yard signs, and in-person canvassing to falsely advise District 22 voters that Gonzales was ineligible to hold elected office because he was a convicted felon.  Madigan also allegedly enlisted the help of two political action committees—Friends of Michael J. Madigan (Friends) and 13th Ward Democratic Organization (13th Ward)—to help canvas door-to-door and otherwise disseminate information about Gonzales's past convictions.  According to Gonzales, the PRB also participated in this effort.  The PRB is a state agency responsible for making recommendations to the governor regarding petitions for clemency.  Gonzales alleges that the PRB disclosed his criminal records to Kerry Lester, a reporter for the Daily Herald.  Gonzales further alleges that while at a polling place for early voting, he witnessed Silvana Tabares—the Illinois House Representative for District 21—instructing voters not to vote for Gonzales because he was a convicted felon.  Gonzales also says that Ray Hanania, a Chicago journalist, published similar statements in his columns, blog, and other postings.  Gonzales lost the election, receiving 27.1% of the vote.  Madigan won with 65.2%.  Barbosa received 2.0% and Rodriguez received 5.8%.

Gonzales then filed suit against Madigan, Friends, 13th Ward, the PRB, Decremer, Tabares, Hanania, Barbosa, and Rodriguez, bringing both federal claims under 42 U.S.C. § 1983 and state law claims.  Gonzales first claims that informing

voters that he was a convicted felon, after he had received a full gubernatorial pardon, violated his right under the First Amendment to petition the government for redress of grievances. Gonzales also claims that informing voters that he was ineligible to become an elected official due to his past convictions violated his right to equal protection under the Fourteenth Amendment. Gonzales brings both of these claims against Madigan (counts 1 and 2), Friends (counts 7 and 8), 13th Ward (counts 13 and 14), and Tabares (counts 25 and 26). Gonzales brings a similar First Amendment claim against the PRB, alleging that its disclosure of his criminal record to Lester violated his right to petition the government for redress of grievances (count 19).

Gonzales next claims that the defendants worked together to register two sham candidates—Barbosa and Rodriguez—for the purposes of diluting the Hispanic vote in the election for District 22 representative. Gonzales claims that this violated his right under the Fourteenth Amendment to equal protection. Gonzales further claims that this same conduct abridged his right to vote on account of his race, in violation of the Fifteenth Amendment and the Voting Rights Act. He brings these claims against Madigan (counts 3 and 4), Friends (counts 9 and 10), 13th Ward (counts 15 and 16), Decremer (counts 23 and 24), Tabares (counts 27 and 28), Barbosa (counts 33 and 34), and Rodriguez (counts 35 and 36). Gonzales further claims that all nine of the defendants engaged in a civil conspiracy to deprive him of his constitutional rights (count 37).

Gonzales also asserts state law claims. Gonzales claims that informing voters that he was a convicted felon constitutes defamation per se under Illinois law. Gonzales claims that the same conduct also placed him in a false light in violation of Illinois law.

4

He brings these claims against Madigan (counts 5 and 6), Friends (counts 11 and 12), 13th Ward (counts 17 and 18), the PRB (counts 20 and 21), Tabares (counts 29 and 30), and Hanania (counts 31 and 32). Gonzales claims that the PRB's disclosure of his criminal record to Lester constitutes unlawful disclosure in violation of 730 ILCS 5/3-5-1 (count 22). Gonzales also claims that all nine of the defendants engaged in a conspiracy to prevent voters from supporting Gonzales in violation of 10 ILCS 5/29-18 (count 38), and deprived Gonzales of his constitutional rights in violation of 10 ILCS 5/29-17 (count 39).

## Discussion

All defendants except for the PRB filed a joint motion to dismiss Gonzales's federal claims. These defendants argue that Gonzales has failed to allege that they were acting under color of state law or that he suffered a deprivation of any constitutional right. Further, they argue that Gonzales has failed to adequately plead a claim for civil conspiracy. The PRB filed its own motion to dismiss, arguing that it is not a "person" as required for section 1983 claims and that it has immunity under the Eleventh Amendment.

When considering a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all reasonable inferences in the plaintiff's favor. *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (internal quotation marks omitted). Dismissal is proper if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for

relief. *Wilson*, 624 F.3d at 392.

I.  **Joint motion to dismiss**

The defendants who filed the joint motion to dismiss first argue that Gonzales has failed to allege that any of the defendants acted under color of state law. Gonzales has brought all of his federal claims against each defendant under 42 U.S.C. § 1983. In order to hold an individual liable under § 1983, a plaintiff must show that the individual acted "under color of state law" to deprive the plaintiff of a federally guaranteed right. *Wilson*, 624 F.3d at 392. Not every action taken by a state official is considered to have occurred under color of state law. *See, e.g., Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). An action is taken under color of state law if it involves a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941); *see also Sims*, 506 F.3d at 515.

Gonzales's complaint does not adequately allege that any of the individual defendants acted under color of state law. Gonzales bases his claims on two main courses of conduct: informing voters that he was a convicted felon and registering sham candidates to deprive him of votes. But Gonzales has not alleged facts that connect this conduct to any power or authority that the defendants possessed by virtue of state law. Gonzales merely alleges, without elaboration, that the defendants violated his constitutional rights "while acting under color of state law." *See, e.g.*, Compl. ¶ 52. This conclusory allegation is insufficient.

Gonzales argues in his response to defendants' motion that, due to Madigan's lengthy service in the Illinois House of Representatives, his "authority as a private

person and the authority he derives from his position are indistinguishable." Pl.'s Resp. Mem. in Opp'n to Certain Defs.' Mot. to Dismiss at 6. Gonzales cites no case law to support this proposition. The Seventh Circuit has repeatedly stated that "[t]he mere assertion that one is a state officer does not necessarily mean that one acts under color of state law." *Wilson*, 624 F.3d at 392; *see also Latuszkin v. City of Chicago*, 250 F.3d 502, 505–06 (7th Cir. 2001) (off-duty police officer engaged in "entirely private behavior" did not act under color of state law); *Plaats v. Barthelemy*, 641 F. App'x 624, 627 (7th Cir. 2016) (noting that section 1983 does not necessarily cover disputes between private citizens, even if one happens to be a state official). Gonzales must allege facts permitting a plausible inference that Madigan engaged in conduct made possible by his official authority under state law that contributed to the alleged constitutional violations. Gonzales has not done so in his complaint in its current form.

Gonzales also argues that, to carry out the alleged constitutional violations, Madigan and Tabares used resources available to them as state representatives, such as supporters, precinct captains, campaign war chests, and political favors. Pl.'s Resp. Mem. in Opp'n to Certain Defs.' Mot. to Dismiss at 6. But Gonzales includes no such allegations in his complaint. Further, Gonzales makes this general statement without providing any specific instances of how he contends any of these defendants employed these resources or otherwise misused power possessed by virtue of state law. The Court is therefore unable to evaluate the specific nature of any conduct to determine the plausibility of such a contention.

The Court grants defendants' joint motion to dismiss all federal claims brought against them under 42 U.S.C. § 1983, with leave to amend. This includes counts 1–4,

7

7–10, 13–16, 23-28, and 33–36.  Because the Court dismisses all of Gonzales's federal claims against the defendants other than the PRB on this basis, it is unnecessary to consider these defendants' remaining arguments for dismissal.

Gonzales's failure to allege that any defendant acted under color of state law likewise requires the Court to dismiss count 37, in which he alleges that all nine defendants engaged in a conspiracy to deprive him of his constitutional rights.  Five of the defendants who filed the joint motion—Friends, 13th Ward, Hanania, Barbosa, and Rodriguez—are not state employees but private actors.  In order to prove a private actor liable under section 1983, a plaintiff must show that the private actor "had a meeting of the minds and thus reached an understanding with a state actor to deny plaintiffs a constitutional right."  *Wilson v. Warren Cty.*, 830 F.3d 464, 468 (7th Cir. 2016) (internal quotation marks omitted); *see also Evers v. Reak*, 21 F. App'x 447, 450 (7th Cir. 2001) (to state a conspiracy claim under section 1983, a plaintiff must allege that "1) state officials and private individuals reached an understanding to deprive him of his constitutional rights, and 2) those individuals were willful participants in joint activity with the state or its agents.").

As discussed above, Gonzales has failed to adequately allege that any of the defendants employed by the state—Madigan, Tabares, and Decremer—acted under color of state law.  Thus there is no basis for an allegation that the private actors had a meeting of the minds with any state actor.  Further, Gonzales's allegations of conspiracy are entirely conclusory and therefore insufficient in any event.  He alleges, without elaboration, that the defendants "had an express or implied agreement among them to deprive Gonzales of his said constitutional rights."  Compl. ¶ 310.  Even if Gonzales had

sufficiently alleged that any of the defendants acted under color of state law, this conclusory allegation would be insufficient to support a claim that the private actors and the state actors arrived at a meeting of the minds to deprive Gonzales of his constitutional rights. The Court therefore grants defendants' joint motion to dismiss count 37.

## II. Prisoner Review Board

The PRB first argues that, as an agency of the State of Illinois, it is not a "person" under section 1983 and therefore cannot be liable on the federal claims that Gonzales alleges. PRB's Mem. in Supp. of Mot. to Dismiss at 4–5. Gonzales concedes that he cannot bring these claims against the PRB itself but requests leave to amend his complaint to name individual PRB employees as defendants. Pl.'s Resp. Mem. in Opp. to PRB's Mot. to Dismiss and Mot. for Leave to Amend Compl. at 2–3. Gonzales says that his proposed amendment would "simply assert existing claims against new parties." *Id*. at 3. The Court finds, however, that Gonzales has failed to adequately allege constitutional violations based on the PRB's conduct, even if he had named as defendants the individuals responsible for such conduct. The Court therefore denies Gonzales's request for leave to amend his complaint and grants the PRB's motion to dismiss count 19 and count 37.

### A. First Amendment

Gonzales alleges in count 19 that the PRB violated his right under the First Amendment to petition the government for redress of his grievances when it disclosed his criminal record to Lester. Gonzales argues in essence that the PRB interfered with his request for a gubernatorial pardon by revealing this information.

9

The First Amendment establishes a right to petition the government for redress of grievances, and by virtue of the Fourteenth Amendment this includes state and local governments. *Ogurek v. Gabor*, 827 F.3d 567, 568 (7th Cir. 2016). This right, however, includes only the right to petition openly; it does not impose any affirmative obligation on the government to listen or respond to the request. *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 286 (1984).

Gonzales's request for a gubernatorial pardon constitutes a petition under the First Amendment. But Gonzales has not alleged that the PRB prevented Gonzales from applying for this pardon or that it attempted to interfere with his effort to seek a pardon. Rather, Gonzales alleges only that the PRB released information on his criminal record to a newspaper; he does not allege how this prevented or impeded him from petitioning the governor for a pardon. What's more, Illinois law requires the PRB to release such information prior to consideration of a pardon request. The Illinois Administrative Code provides:

> Publication of intent to petition for executive clemency shall be made in a newspaper of common circulation in the county of commitment on at least two occasions no less than two weeks apart. Said notice shall contain the name of the petitioner, the offense for which he was convicted, the date of sentencing and the sentence imposed.

Ill. Admin. Code tit. 20, § 1610.180 (2017). Thus Illinois law requires making a petitioner's criminal record public before he can get a pardon. This further undermines Gonzales's claim that the PRB's release of this information in some way interfered with his ability to request a pardon. The Court grants the PRB's motion to dismiss count 19.

B. Civil conspiracy

Gonzales alleges in count 37 that all of the defendants, including the PRB, engaged in a civil conspiracy to deprive him of his constitutional rights. Gonzales has failed to allege facts sufficient to support this claim.

As noted earlier, to state a conspiracy claim under section 1983 in these circumstances, a plaintiff must allege that "1) state officials and private individuals reached an understanding to deprive him of his constitutional rights, and 2) those individuals were willful participants in joint activity with the state or its agents." *Evers*, 21 F. App'x at 450. The complaint must contain factual allegations "suggesting that the defendants reached a meeting of the minds." *Id.*; *cf. Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) (circumstances from which a reasonable inference may be drawn that the alleged constitutional deprivation could only have arisen by way of a conspiracy are sufficient). Vague and conclusory allegations are insufficient to meet this burden. *Evers*, 21 F. App'x at 450.

The Court concluded earlier that Gonzales's current complaint fails to state a viable conspiracy claim against the other moving defendants. The same is true with respect to the PRB or any of its officials. Gonzales makes only a bare allegation that all of the defendants "had an express or implied agreement among them to deprive Gonzales of his said constitutional rights," Compl. ¶ 311; he does not identify any particular interaction between the PRB or its officials and any of the other defendants. The Court therefore dismisses count 37 with regard to the PRB as well.

## Conclusion

For the foregoing reasons, the Court grants the joint defendants' motion to

dismiss [dkt. no. 37]. The Court dismisses counts 1–4, 7–10, 13–16, 23-28, and 33–37, in other words, all of plaintiff's federal claims against these defendants. The Court also grants PRB's motion to dismiss [dkt. no. 32] and therefore dismisses counts 19 and 37, the two claims that name the PRB as a defendant. Unless plaintiff files, by March 29, 2017, an amended complaint that contains at least one viable claim over which the Court has jurisdiction, the Court will enter judgment dismissing his federal claims with prejudice and his state claims for lack of federal jurisdiction.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 14, 2017

12