IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON GONZALES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 16 C 7915 |
| MICHAEL J. MADIGAN, FRIENDS OF MICHAEL J. MADIGAN, 13TH WARD DEMOCRATIC ORGANIZATION, PRISONER REVIEW BOARD, SHAW DECREMER, SILVANA TABARES, RAY HANANIA, JOE BARBOSA, and GRASIELA RODRIGUEZ, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In March 2016, Jason Gonzales ran in the primary election hoping to become the Democratic Party's nominee for the District 22 seat in the Illinois House of Representatives. Gonzalez ran against incumbent representative (and Speaker of the House) Michael Madigan and two other candidates who he contends were sham candidates put up by Madigan and his associates in order to split up the Hispanic vote in the district. Gonzales lost the primary. He later filed this suit against Madigan and a number of other defendants, alleging that their conduct during the election violated his rights under the Constitution and state law.

In March 2017, the Court granted a motion by defendants to dismiss the complaint and granted Gonzales leave to amend his claims against certain defendants.

*See Gonzales v. Madigan*, No. 16 C 7915, 2017 WL 977007 (N.D. Ill. Mar. 14, 2017). Gonzales filed an amended complaint, and defendants have again moved to dismiss. For the reasons stated below, the Court grants defendants' motion.

**Background**

Gonzales is a resident of Illinois and an active member of the Chicago community, serving as a member of the Chicago Council on Global Affairs, the Spertus Institute, and the Civic Club of Chicago. Sometime prior to 2015, he decided he wanted to run for political office. He believed this would be difficult, however, because he had been convicted of crimes as a teenager. Between 1991 and 1994, Gonzales faced several arrests and felony and misdemeanor convictions related to the unlawful use of credit cards at shopping malls. He served time in jail as well as on probation.

After his release, Gonzales asked several Illinois governors to grant him a pardon. In January 2015, then-Governor Pat Quinn granted his request for executive clemency and a full pardon with an order for expungement of his record. By October 2015, all of Gonzales's case files had been either expunged or sealed.

Gonzales then began the process of qualifying to run in the 2016 election for the District 22 seat in the Illinois House of Representatives. In November 2015, he went to the office of the Illinois State Board of Elections to file his nominating petition. Gonzales says that he arrived about 15 minutes before the deadline for filing nominating petitions. While there, he noticed Shaw Decremer, an aide to incumbent Representative Michael Madigan, watching him; he says that Decremer had been "staking out" the office to see if others would file nominating petitions for the District 22 seat. Once Gonzales filed his nominating petition, Decremer "suddenly produced" and filed nominating petitions for

two additional candidates: Joe Barbosa and Grasiela Rodriguez. Am. Compl. ¶ 82. Gonzales alleges that Barbosa and Rodriguez were sham candidates who did not actually intend to run for the seat; he says that that they did not actively campaign for the seat, maintain campaign websites, or otherwise promote their candidacies. Instead, Gonzales claims that they were sham candidates that Madigan instructed Decremer to put up in order to divert Hispanic voters from Gonzales (people of Hispanic origin, Gonzales says, make up seventy percent of the population of District 22).[1]

Gonzales further alleges that, throughout the campaign, Madigan and others acting in concert with him misinformed voters regarding Gonzales's eligibility for the seat. Gonzales alleges that Madigan used television, internet, and door-to-door advertising to inform voters of Gonzales's past convictions and to inaccurately claim that these convictions made him ineligible to run for political office. Madigan allegedly used his own campaign funds as well as the funds and employees of two political action committees—Friends of Michael J. Madigan (Friends) and 13th Ward Democratic Organization (13th Ward)—to help disseminate this information.

Gonzales alleges that the other defendants participated in these efforts. First, Gonzales alleges that the Prisoner Review Board (PRB)—the state agency responsible for making clemency recommendations to the governor—disclosed records of his past convictions to a reporter for the Daily Herald. He further states that he observed Silvana Tabares—the representative for District 21 and a close friend of Madigan—at an early voting location telling voters in Spanish that Gonzales was a convicted felon and that he was ineligible to run for office. Finally, Gonzales says that reporter Ray

---

[1] Gonzales alleges that Madigan and his associates had similarly put up sham candidates for previous elections for the District 22 seat. See Am. Compl. ¶ 35.

Hanania published similar statements in his columns, blog, and other postings. Gonzales ultimately lost the primary to Madigan.

In August 2016, Gonzales filed his initial complaint in this case against Madigan, Friends, 13th Ward, the PRB, Decremer, Hanania, Barbosa, and Rodriguez, alleging they violated his rights under 42 U.S.C. § 1983 and state law. Gonzales claims that informing voters that he was a convicted felon, after he had received a full gubernatorial pardon, violated his right under the First Amendment to petition the government for redress of grievances. Gonzales also claims that informing voters that he was ineligible to become an elected official due to his past convictions violated his right to equal protection under the Fourteenth Amendment. Gonzales brings both of these claims against Madigan (counts 1 and 2), Friends (counts 7 and 8), 13th Ward (counts 13 and 14), and Tabares (counts 25 and 26). Gonzales brings a similar First Amendment claim against the PRB, alleging that its disclosure of his criminal record to a reporter violated his right to petition the government for redress of grievances (count 19).

Gonzales next claims that defendants worked together to register two sham candidates—Barbosa and Rodriguez—for the purposes of diluting the Hispanic vote in the election for District 22 representative. Gonzales claims that this violated his right to equal protection under the Fourteenth Amendment. Gonzales further claims that this same conduct abridged his right to vote on account of his race, in violation of the Fifteenth Amendment and the federal Voting Rights Act. He brings these claims against Madigan (counts 3 and 4), Friends (counts 9 and 10), 13th Ward (counts 15 and 16), Decremer (counts 23 and 24), Tabares (counts 27 and 28), Barbosa (counts 33 and 34), and Rodriguez (counts 35 and 36). Finally, Gonzales claims that all nine of the

4

defendants, including Hanania, engaged in a conspiracy to deprive him of his constitutional rights (count 37).

Gonzales also asserts state law claims. Gonzales claims that informing voters that he was a convicted felon constitutes defamation per se under Illinois law. Gonzales claims that the same conduct also placed him in a false light in violation of Illinois law. He brings these claims against Madigan (counts 5 and 6), Friends (counts 11 and 12), 13th Ward (counts 17 and 18), the PRB (counts 20 and 21), Tabares (counts 29 and 30), and Hanania (counts 31 and 32). Gonzales claims that the PRB's disclosure of his criminal record to Lester constitutes unlawful disclosure in violation of 730 ILCS 5/3-5-1 (count 22). Gonzales also claims that all nine of the defendants engaged in a conspiracy to prevent voters from supporting him in violation of 10 ILCS 5/29-18 (count 38), and deprived him of his constitutional rights in violation of 10 ILCS 5/29-17 (count 39).

In November 2016, the PRB filed a motion to dismiss in which it argued that it is not a "person" suable under section 1983 and that Gonzales failed to allege the deprivation of any constitutional right. The Court agreed with the PRB on both grounds and dismissed with prejudice Gonzales's federal claims against the PRB. The remaining defendants filed a joint motion to dismiss the federal claims against them on two grounds: (1) Gonzales failed to allege that defendants acted under color of state law; and (2) he failed to allege the deprivation of any federal constitutional right. The Court determined that Gonzales failed to allege that the remaining defendants acted under color of state law and dismissed all of his federal claims against those defendants, including the claim of civil conspiracy. The Court did not consider

5

defendants' remaining arguments.

The Court granted Gonzales leave to amend his complaint; the Court's order said that unless he filed an amended complaint that included at least one viable federal claim, the Court would dismiss his federal claims with prejudice. Gonzales filed his amended complaint on March 29, 2017, asserting, with additional factual allegations, the same claims as in the original complaint.

## Discussion

Defendants Madigan, Friends, 13th Ward, Decremer, Tabares, Hanania, Barbosa, and Rodriguez have jointly moved to dismiss the federal claims against them in Gonzales's amended complaint. The Court limited the parties' arguments to the issue of whether Gonzales's amended complaint now adequately alleges that defendants acted under color of state law for purposes of the claims brought under 42 U.S.C. § 1983. Defendants contend that it does not. Because the Court previously determined that the original complaint failed to plead this element of a claim under section 1983, it focuses its analysis on the additions made in the amended complaint.

When considering a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all reasonable inferences in the plaintiff's favor. *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (internal quotation marks omitted). Dismissal is proper if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief. *Wilson*, 624 F.3d at 392.

In order to hold an individual liable under section 1983, a plaintiff must show that he acted under color of state law to deprive the plaintiff of some federally guaranteed right. *Id.* An action is taken under color of state law if it involves a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941); *see also Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). Typically this refers to individuals that the state provides with "some degree of authority—normally through employment or some other agency relationship"—who wield this authority to deprive plaintiff of his constitutional rights. *See Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003). Private individuals can also be liable under section 1983, however, when they engage in a conspiracy with one or more parties acting under the color of state law. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

**A.    Madigan**

Gonzales contends that Madigan acted under color of state law because he exercised the power of his various political offices in order to register sham candidates and discredit Gonzales. Specifically, Gonzales alleges that Madigan is a state actor by virtue of three positions that he holds: Speaker of the Illinois House, Illinois House Representative, and chairman of the Democratic Party of Illinois. Am. Compl. ¶¶ 7–9. The amended complaint also notes that Madigan is the 13th Ward Committeeman for the Democratic Party and, in that capacity, is responsible for voter registration, community forums, and distribution of election materials. *Id.* ¶ 23. As party committeeman, he is also a voting member of the Cook County Democratic Organization, which endorses replacements for vacant political posts. *Id.* ¶ 24.

7

Gonzales alleges that this position gives Madigan influence over doling out jobs, favors, and services within and outside of his ward. *Id.* ¶ 25.

These allegations are an insufficient basis for a contention that Madigan acted under color of state law. Although Madigan's positions as a state representative and Speaker of the Illinois House clearly qualify him as a state official, not every action taken by a state official is considered to have occurred under color of state law. *See, e.g., Sims*, 506 F.3d at 515. An action is taken under color of state law only if it involves the misuse of power that is possessed by virtue of state law and made possible only due to that authority. *Classic*, 313 U.S. at 326; *see also Sims*, 506 F.3d at 515. Gonzales has failed to allege that any of Madigan's actions at issue in this case were made possible by his authority as either Speaker of the House or a state representative.

Gonzales relies in part on *Ali v. Village of Tinley Park*, 79 F. Supp. 3d 772 (N.D. Ill. 2015). In *Ali*, the court determined that the plaintiff adequately alleged the defendants had acted under color of state law when he alleged that a firefighter used a fire hose to spray him. *See Ali*, 79 F. Supp. 3d at 775–76. In doing so, the court drew a distinction between activities that are "so wholly unconnected" to state authority that they are "functionally equivalent to those of any private citizen" and "those that are improper extensions of one's authority." *Id.* at 775. It denied the defendants' motion to dismiss because it concluded that the firefighter was on duty and the fire hose used to "perpetrate the alleged harm" was "a tool with which [the firefighter] was uniquely entrusted by virtue of his official position." *Id.* at 776.

The same cannot be said of the allegations against Madigan in this case. Gonzalez makes a single reference to tools or authority that Madigan possessed by

8

virtue of state law. He alleges that Madigan "used resources available to [him] as state representative[ ], including supporters, precinct captains, campaign funds, political favors, in order to discredit" Gonzales. Am. Compl. ¶ 46. Although Madigan likely gained access to these resources at least partly due to his state office, their use does not involve authority conferred by his elected position. Thus they have not been "uniquely entrusted" to him by virtue of being a house representative or speaker. *See Ali*, 79 F. Supp. 3d at 776. One might argue that "political favors" are a tool available to Madigan only due to his positions in state government. But Gonzales does not allege any favors that Madigan granted, using his state-law authority, in exchange for help in discrediting Gonzales. Thus Gonzales has failed to allege that Madigan used any power uniquely granted to him due to his positions as Speaker of the Illinois House and House Representative in committing the alleged constitutional violations.

Gonzales cites to another district court case that is similarly unpersuasive. In *McCloughan v. City of Springfield*, 172 F. Supp. 2d 1009 (C.D. Ill. 2001) , the court denied the defendant's motion for summary judgment on the ground that an off-duty police officer who took the plaintiff's car keys to prevent him from leaving the scene of an accident and hit him may have acted under color of state law. *McCloughan*, 172 F. Supp. 2d at 1011, 1015–16. The court arrived at this conclusion despite the fact that the defendant officer did not identify himself as an officer; did not display his badge, gun, or handcuffs; was not in uniform or on-duty; and did not inform the plaintiff that he was under arrest. *Id.* at 1015. Thus, Gonzales argues, the proper characterization of Madigan's actions is an issue of fact for the jury, even if he did not broadcast his state authority. Pl.'s Resp. Mem. in Opp'n to Certain Defs.' Mot. to Dismiss the Fed. Cls.

9

Alleged in Pl.'s First Am. Compl. (Pl.'s Resp.) at 7. But the court in *McCloughan* denied summary judgment particularly because the defendant came to stop the plaintiff only after hearing another off-duty officer who identified himself as such to the plaintiff call for help. *McCloughan*, 172 F. Supp. 2d at 1015. The court therefore decided that a jury should determine whether defendant came to assist as a friend or as a police officer. *Id.* But Gonzales has not pointed to any similar arguable exercise of state authority by any of the defendants in this case, as discussed in more detail below. Because Gonzales has failed to allege any way in which Madigan used the authority of his office, he has failed to allege that he acted under color of state law.

The particulars of the unlawful conduct alleged in the complaint support this conclusion. Gonzales focuses on two main courses of conduct underlying all of his federal claims: registration of two sham candidates in the election, and dissemination of information to voters that Gonzalez had been convicted of a crime and therefore was ineligible for elected office. None of this, however, was conduct made possible by virtue of Madigan's governmental office or his state-conferred authority. Any private citizen is permitted to run advertisements and hire campaign workers to discredit competitors during an election. The same is true of registering candidates for an election. Although Gonzales's allegations about putting up sham candidates to ensure Madigan's re-election are particularly concerning, the allegations do not entail a misuse of Madigan's power as state representative, nor are they the type of conduct that was made possible only because Madigan was clothed with the authority of state law.

There is, to be sure, a temptation to say that Madigan's alleged conduct involved action under color of state law because he is able to wield influence that his high

governmental office gives him and that this enabled or facilitated the misconduct that Gonzales alleges in this case. This, however, would make virtually anything that Madigan did or does action under color of state law, even when he is not actually using authority he has because of his position as a public official. Gonzales has cited no authority that stretches the concept of color of state law this far.

Finally, the amended complaint appears to allege that Madigan acted under color of state law by referring to two other positions he holds: chairman of the Democratic Party of Illinois and 13th Ward Committeeman. Gonzales particularly emphasizes Madigan's responsibilities as 13th Ward Committeeman in arguing that he acted under color of state law. Pl.'s Resp. at 4. Gonzales notes specifically that, as 13th Ward Committeeman, Madigan has control over voter registration and the distribution of election materials and helps choose who to endorse for vacant political posts. *Id.* ¶¶ 23, 24. But although Gonzales has alleged that these positions provide Madigan with significant influence over the electoral process, neither position is imbued with any authority granted by the state. Rather, these are positions within a private political organization, the Democratic Party. Courts have indicated that political parties can be considered state actors, but only when they are performing a traditionally public function. *Max v. Republican Comm. of Lancaster Cty.*, 587 F.3d 198, 200 (3d Cir. 2009). The Supreme Court has found a political party to be a state actor only because it was acting under authority conferred by the state's election code. *See Morse v. Republican Party of Va.*, 517 U.S. 186, 223–24 (1996). Gonzales has not pointed to any state law that imbues the organizations Madigan controls with any specific authority, nor has he alleged how Madigan used such authority for the conduct at issue

here. Madigan's alleged control over and use of the funds of these various organizations was not a right or privilege created by his state employment. *See Federer v. Gephardt*, 363 F.3d 754, 759 (8th Cir. 2004); *Gleason v. Scoppetta*, 566 F. App'x 65, 69 (2d Cir. 2014). Thus even if Madigan used his responsibilities in these positions for the allegedly unlawful conduct, he did not do so under color of state law.

Gonzales has therefore failed to allege that Madigan acted under color of state law. The Court grants Madigan's motion to dismiss the federal claims brought against him in counts 1–4.

**B.    Decremer**

According to Gonzales, Decremer is the top aide to Madigan in his position as Speaker of the House. Am. Compl. ¶ 34. He is also a volunteer on Madigan's political campaigns and a paid employee of Friends. *Id.* ¶ 35. Gonzales alleges that "Decremer was Madigan's go to person . . . to add straw candidates onto the ballot." *Id.* ¶ 36. He further states that Decremer has used his access to and employment by Madigan to influence elections. *Id.* ¶ 39. Gonzales alleges that Decremer violated his constitutional rights "while acting under color of law in conjunction with or at the direction of Madigan." Am. Compl. ¶ 261. Finally, he alleges that "Decremer was, at all times relevant hereto, a state actor." *Id.* ¶ 40.

Gonzales has failed to allege that Decremer acted under color of state law. To the extent that Gonzales argues that Decremer himself misused power granted by the state, he fails to identify any power that Decremer possessed under state law by virtue of his governmental position that he used to register Barbosa and Rodriguez as candidates in the election. Any private citizen is entitled to register to run for office—this

action does not require state authority. If instead Gonzales intends to rely on allegations that Decremer acted in concert with and at the direction of Madigan, these are insufficient to support a claim that Decremer acted under color of state law. Because Madigan himself did not use any authority of the state for his allegedly unlawful conduct, private individuals acting in concert with him did not, by virtue of doing so, act under color of state law.

Gonzales has therefore failed to allege that Decremer acted under color of state law. The Court grants Decremer's motion to dismiss the federal claims brought against him in counts 23–24.

**C.     Tabares**

Gonzales alleges that Tabares was involved only in the dissemination of information regarding his prior conviction and eligibility for public office. Specifically, Gonzales alleges that she went to places of early voting—and possibly sent postcards—to tell voters that Gonzales was a convicted felon. *See id.* ¶¶ 48, 281, 286, 292, and 301. As with Madigan, Tabares clearly has authority granted by the state, as she is the representative for District 21. But in arguing that she acted under color of state law, Gonzales makes only a single general allegation: she used resources available to her as a state representative (supporters, precinct captains, campaign funds, and political favors) to discredit Gonzales. *Id.* ¶ 46. For the reasons discussed in the section of this opinion addressing Madigan, these statements are insufficient to allege that Tabares acted under color of state law. Gonzales does not explain how Tabares's act of going to early polling locations and speaking with voters was made possible by authority granted to her by virtue of her governmental office.

Gonzales has therefore failed to allege that Tabares acted under color of state law. The Court grants Tabares's motion to dismiss the federal claims brought against her in counts 25–28.

**D.      Friends and 13th Ward**

Gonzales's allegations make clear that both Friends and 13th Ward are private political organizations and thus are not state actors. Friends works to get Madigan elected and to support other candidates who support Madigan. Am. Compl. ¶¶ 13–16. 13th Ward is a component of the Democratic Party in Illinois and not affiliated with the state. *See id.* ¶¶ 20–31. The amended complaint does not allege that either of these organizations possesses authority under state law. Therefore the only way they might act under color of state law is if they worked in concert with a state official acting under color of state law to deprive Gonzales of his constitutional rights. Because Gonzales has failed to allege that any state employee named as a defendant in this case acted under color of state law, these two organizations cannot be liable under section 1983 for acting in concert with Madigan and the others. The Court grants defendants' motion to dismiss the federal claims against Friends and 13th Ward in counts 7–10 and 13–16.

**E.      Hanania**

Gonzales brings three claims against Hanania, two of which fall under state law and one of which is the claim for conspiracy that the Court addresses below. Gonzales therefore does not specifically argue that Hanania acted under color of state law, because he does not accuse Hanania of any separate constitutional violations. But due to the fact that the other defendants may be liable for the claims asserted against them if they acted in concert with Hanania and he acted under color of state law, the Court

14

still addresses whether Gonzales has adequately alleged that Hanania acted under color of state law.

Gonzales has failed to do so. In describing Hanania, Gonzales alleges that he uses his consulting business to benefit Madigan and affect election results. *Id*. ¶¶ 51–52. He also alleges that Hanania uses his position as an award-winning journalist to influence his readers' opinions. *Id*. ¶ 51. Finally, Gonzales alleges that Hanania "misuse[d] his consulting firm, media connections and the power of the press to effect [sic] the election process as a State actor." *Id*. ¶ 53. Gonzales does not explain how these allegations qualify Hanania as a state actor. He does not point to any authority that Hanania allegedly possessed by virtue of state law. Therefore defendants allegedly acting in concert with Hanania cannot be held liable under section 1983 by virtue of this agreement, because Hanania was not acting under color of state law.

### F.     Barbosa and Rodriguez

The amended complaint seems to allege both that Barbosa and Rodriguez are themselves state actors and that they acted in concert with state actors to deprive Gonzales of his rights. As discussed above, Barbosa and Rodriguez cannot be held liable under section 1983 for acting in concert with state officials, because Gonzales has not alleged that any of the state officials named as defendants in this case acted under color of state law. Further, Barbosa and Rodriguez are not state actors. Gonzales alleges that each of them violated his rights to equal protection "while acting under color of law as a political candidate." *Id*. ¶¶ 337, 344, 351, & 361. This allegation is insufficient. Candidacy for public office does not make the candidate's conduct attributable to the state. *D'Agostino v. Delgadillo*, 111 F. App'x 885, 887 (9th Cir. 2004).

And Gonzales does not point to any state authority wielded by candidates for public office that Barbosa and Rodriguez used to deprive Gonzales of his constitutional rights. Registering to run for political office does not require misuse of any power available to Barbosa and Rodriguez by virtue of state law.

Gonzales has therefore failed to allege that Barbosa and Rodriguez acted under color of state law. The Court grants defendants' motion to dismiss the federal claims brought against them in counts 33–36.

### G. Civil conspiracy

In count 37, Gonzales claims that defendants conspired to deprive him of his constitutional rights in violation of section 1983. Because Gonzales has failed to allege that any of the conduct that forms the basis of his claims was done under color of state law, he cannot maintain a claim for conspiracy under section 1983 based on this conduct. The Court therefore grants defendants' motion to dismiss count 37.

### H. State law claims

The Court has dismissed all federal claims brought against defendants in Gonzales's amended complaint. Because the Court lacks original jurisdiction over the remaining fifteen claims brought under state law, the Court declines to exercise supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(c)(3); *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007). The Court therefore dismisses without prejudice counts 5–6, 11–12, 17–18, 20–22, 29–32, and 38–39.

### Conclusion

For the foregoing reasons, the Court grants the joint defendants' motion to dismiss [dkt. no. 48]. And because it is apparent that Gonzales cannot make

16

allegations plausibly supporting a contention that one or more of the defendants acted under color of state law, there is no good reason to give him further attempts to amend. The Court directs the Clerk to enter judgment dismissing with prejudice counts 1–4, 7–10, 13–16, 23–28, and 33–37 of the amended complaint and dismissing for lack of subject matter jurisdiction counts 5–6, 11–12, 17–18, 20–22, 29–32, and 38–39 of the amended complaint.

                                                _____
                                                       MATTHEW F. KENNELLY
                                                       United States District Judge

Date: June 20, 2017