**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JASON GONZALES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16 C 7915** |
| | ) | |
| **MICHAEL J. MADIGAN, FRIENDS OF** | ) | |
| **MICHAEL J. MADIGAN, 13TH WARD** | ) | |
| **DEMOCRATIC ORGANIZATION, PRISONER** | ) | |
| **REVIEW BOARD, SHAW DECREMER,** | ) | |
| **SILVANA TABARES, RAY HANANIA, JOE** | ) | |
| **BARBOSA, and GRASIELA RODRIGUEZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

In 2016, Jason Gonzales ran against Michael J. Madigan and two other candidates in the Democratic primary for the District 22 seat in the Illinois House Representatives. Madigan won the primary, which was tantamount to winning the general election. Gonzales then filed this action under 42 U.S.C. § 1983 and Illinois law against Madigan, the other two candidates, and some of Madigan's associates. In general terms, Gonzales alleges that the defendants registered two sham candidates with Hispanic last names to split up the Hispanic vote and disseminated false information about him during the election to confuse Hispanic voters, all to ensure that Madigan won the primary.

In March 2017, the Court granted motions by defendants to dismiss the complaint and granted Gonzales leave to amend his claims against certain defendants.

*See Gonzales v. Madigan*, No. 16 C 7915, 2017 WL 977007 (N.D. Ill. Mar. 14, 2017).

Gonzales then filed an amended complaint, and the Court again granted defendants'

motion to dismiss, this time with prejudice, and entered judgment against him. *See*

*Gonzales v. Madigan*, No. 16 C 7915, 2017 WL 2653079 (N.D. Ill. June 20, 2017).

Gonzales has moved to alter the judgment pursuant to Federal Rule of Civil Procedure

59(e). He also requests leave to amend his complaint under Rule 15(a). For the

reasons stated below, the Court vacates the judgment and grants Gonzales's request to

amend his complaint. The Court also addresses the remainder of defendants' original

motions to dismiss and dismisses some of Gonzales's claims based on certain of those

arguments.

## Background

The Court assumes familiarity with the allegations in this case and will

summarize them only briefly here. A more detailed explanation of Gonzales's

allegations can be found in the Court's original dismissal with leave to amend dated

March 14, 2017. *See generally Gonzales*, 2017 WL 977007. The Court takes the

following facts from Gonzales's amended complaint. *See* dkt. no. 45.

When Gonzales was younger, he was convicted of felony and misdemeanor

charges relating to his unlawful use of credit cards at shopping malls. He served time in

jail and on probation. In January 2015, Gonzales received a pardon from then-

Governor Pat Quinn. By October 2015, the state either expunged or sealed all of

Gonzales's criminal case files.

In 2016, Gonzales ran in the Democratic primary for the Illinois House District 22

seat against Madigan, the incumbent, and two other candidates. Gonzales alleges that

Madigan and the others interfered with the election in two ways. First, Gonzales alleges that Madigan engaged in a campaign to place sham candidates on the ballot. Madigan allegedly instructed his aide, Shaw Decremer, to wait at the office of the Illinois State Board of Elections on the date of the deadline for candidates to file nominating petitions to see if other candidates would file to run for the District 22 seat. Immediately after he observed Gonzales file a nominating petition, Decremer filed nominating petitions for two other candidates: Joe Barbosa and Grasiela Rodriguez. Gonzales alleges that Barbosa and Rodriguez never intended to run but agreed to let Madigan use their names, the purpose being to split the Hispanic vote so that Gonzales would lose the primary in the predominantly Hispanic district. Gonzales alleges that Decremer acted in concert with his co-defendants in order to carry out this scheme. Gonzales alleges that two of Madigan's political action committees—Friends of Michael J. Madigan (Friends) and 13th Ward Democratic Organization (13th Ward Organization)—as well as Silvana Tabares, House Representative for District 21 and a close friend of Madigan's, assisted in these efforts.

Second, Gonzales alleges that, during the campaign, Madigan and others acting in concert with him used television ads and in-person canvassing to tell voters that Gonzales was a convicted felon and to inaccurately claim that he was therefore ineligible to hold office. He also alleges that the Prisoner Review Board (PRB) improperly disclosed his criminal records to a reporter for the Daily Herald. Gonzales alleges that Madigan then used his own campaign funds as well as the funds and employees of Friends and the 13th Ward Organization to disseminate this information. Gonzales alleges that Tabares assisted Madigan by hiring Hispanic individuals to stand

3

near polling places and tell voters in English and Spanish not to vote for Gonzales. He also alleges that Ray Hanania, a reporter, published similar statements in his columns, blog, and other postings.

In August 2016, Gonzales filed his initial complaint in this case against Madigan, Friends, the 13th Ward Organization, the PRB, Decremer, Hanania, Barbosa, and Rodriguez, alleging they violated his rights under 42 U.S.C. § 1983 and state law. Gonzales claimed that informing voters that he was a convicted felon, after he had received a full gubernatorial pardon, violated his right under the First Amendment to petition the government for redress of grievances. Gonzales also claimed that falsely informing voters that he was ineligible to become an elected official due to his past convictions violated his right to equal protection under the Fourteenth Amendment. Gonzales brought these claims against Madigan (counts 1 and 2), Friends (counts 7 and 8), the 13th Ward Organization (counts 13 and 14), and Tabares (counts 25 and 26). Gonzales also brought a similar First Amendment claim against the PRB, alleging that its disclosure of his criminal record to a reporter violated his right to petition the government for redress of grievances (count 19).

Gonzales next claimed that defendants' registration of sham candidates violated his right to equal protection under the Fourteenth Amendment. Gonzales further claimed that this same conduct abridged his right to vote on account of his race, in violation of the Fifteenth Amendment and the federal Voting Rights Act. He brought these claims against Madigan (counts 3 and 4), Friends (counts 9 and 10), the 13th Ward Organization (counts 15 and 16), Decremer (counts 23 and 24), Tabares (counts 27 and 28), Barbosa (counts 33 and 34), and Rodriguez (counts 35 and 36). Finally,

Gonzales claimed that all nine of the defendants, including Hanania, engaged in a conspiracy to deprive him of his constitutional rights (count 37).

Gonzales also asserted state law claims. He claimed that informing voters that he was a convicted felon constitutes defamation per se under Illinois law. Gonzales claimed that the same conduct also placed him in a false light in violation of Illinois law. He asserted these claims against Madigan (counts 5 and 6), Friends (counts 11 and 12), the 13th Ward Organization (counts 17 and 18), the PRB (counts 20 and 21), Tabares (counts 29 and 30), and Hanania (counts 31 and 32). Gonzales also claimed that the PRB's disclosure of his criminal record to Lester constitutes unlawful disclosure in violation of 730 ILCS 5/3-5-1 (count 22). Gonzales also claimed that all nine of the defendants engaged in a conspiracy to prevent voters from supporting him in violation of 10 ILCS 5/29-18 (count 38) and deprived him of his constitutional rights in violation of 10 ILCS 5/29-17 (count 39).

In November 2016, the PRB filed a motion to dismiss the federal claims against the agency. The PRB argued that it is not a "person" suable under section 1983 and that Gonzales failed to allege the deprivation of any constitutional right. In response, Gonzales agreed that the agency itself is immune from suit and requested leave to amend his complaint to name individual employees of the PRB as defendants. The Court found that Gonzales failed to allege the deprivation of any constitutional right based on the PRB's actions and therefore denied his request to amend. The Court dismissed with prejudice Gonzales's federal claims against the agency but did not separately address the three state law claims. The remaining defendants also filed a joint motion to dismiss the federal claims against them, arguing among other things that

Gonzales failed to allege that defendants acted under color of state law.  The Court agreed and dismissed on this basis all of his federal claims against those defendants, including the claim of conspiracy.  The Court did not address defendants' remaining arguments in support of dismissal.

The Court granted Gonzales leave to amend his claims against all defendants other than the PRB, and Gonzales filed an amended complaint on March 29, 2017.  He asserted the same claims as in the original complaint, with additional statements regarding the alleged state action.  Defendants—with the exception of the PRB—again moved to dismiss on the ground that Gonzales failed to allege that defendants acted under color of state law.  Defendants also incorporated by reference the arguments that the Court did not consider from their motion to dismiss the original complaint.  The Court determined that Gonzales still had failed to allege that defendants had acted under color of state law and dismissed all federal claims in the complaint, this time with prejudice. The Court also declined to exercise supplemental jurisdiction over all of Gonzales's state law claims—including those against the PRB—and dismissed those claims without prejudice.  The Court entered judgment on June 20, 2017.

Gonzales has moved to alter the judgment pursuant to Federal Rule of Civil Procedure 59(e), based on his contention that the Court construed his complaint too narrowly and overlooked precedent when determining whether defendants acted under color of state law.  Gonzales also requests leave to amend his complaint to add a claim under 42 U.S.C. § 1985(3) against all defendants except the PRB.

**Discussion**

**A.    Motion to alter judgment**

Gonzales asks the Court to vacate the dismissal of his federal claims based on the color-of-state-law issue and vacate the dismissal of his state claims for lack of supplemental jurisdiction.  Pl.'s Mot. to Alter J. Under Rule 59(e) and For Leave to Amend Compl. Under Rule 15(a) (Pl.'s Mot. to Alter J.) at 1.  Gonzales argues that the Court read his complaint too narrowly and failed to apply precedent that supported his claims.

**1.    Forfeiture**

Defendants argue that Gonzales has forfeited the arguments in his motion to alter judgment because he failed to raise them before the Court's entry of judgment. They correctly note that Rule 59(e) typically does not permit a party "to advance after judgment a non-jurisdictional argument that could have been presented prior to judgment." *Lardas v. Grcic*, 847 F.3d 561, 566 (7th Cir. 2017).  But district courts have discretion to consider new arguments if they so choose.  *Id.*  Further, Gonzales's motion to alter the judgment concerns arguments he has maintained since defendants' very first motion to dismiss.  He has not forfeited the arguments.

**2.    Color of state law**

Gonzales argues that in determining that he had not alleged that defendants acted under color of state law, the Court overlooked allegations in his amended complaint or read the amended complaint too narrowly and that it failed to apply applicable precedent.  "An action is taken under color of state law if it involves a misuse of power, possessed by virtue of state law and made possible only because the

wrongdoer is clothed with the authority of state law." *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (internal quotation marks omitted).

### a.     Madigan

In its ruling dated June 20, 2017, the Court held that Gonzales failed to allege that Madigan acted under color of state law because he "failed to allege that he used any power uniquely granted to him due to his positions as Speaker of the Illinois House and House Representative." *Gonzales v. Madigan*, 2017 WL 2653079, at *4.  This determination was based on the principle that not every action by a state official or employee is deemed to occur under color of state law.  *See, e.g.*, *Sims*, 506 F.3d at 515.

After consideration of Gonzales's motion, the Court concludes that it read his amended complaint too narrowly and that Gonzales has in fact adequately alleged that Madigan's conduct in this case involved power and authority he had by virtue of his official positions.  Gonzales alleges that Madigan used funds he controls by virtue of his governmental offices—including the accounts of Friends, the Democratic Majority Fund, the 13th Ward Organization, and the Democratic Party of Illinois—to inform voters that Gonzales is a convicted felon.  Am. Compl. ¶¶ 11, 103.  Perhaps more importantly, he also alleges that Madigan used resources available to him due to his position as a state representative and Speaker of the Illinois House—including political favors, control of campaign funds, and precinct captains—to discredit Gonzales.  *Id.* ¶ 46.  Gonzales further alleges that Madigan's official positions give him influence "over doling out jobs, favors and services."  *Id.* ¶ 25.  Significantly, he alleges that Madigan used this influence to get Rodriguez a job in the office of the Illinois Attorney General in exchange

for her service as a sham candidate—an allegation the Court overlooked in dismissing the amended complaint. *Id.* ¶ 69. Gonzales also alleges that both Barbosa and Rodriguez have volunteered for Madigan's campaigns and/or used organizations associated with Madigan to obtain employment. *Id.* ¶¶ 59, 66. In sum, Gonzales has adequately alleged that Madigan used resources available to him by virtue of his official positions and therefore that he acted under color of state law.

Gonzales also points to precedent from the Seventh Circuit that supports this conclusion. In *Smith v. Cherry*, 489 F.2d 1098 (7th Cir. 1973), the court considered a suit in which Ronald Smith, the losing candidate in the Democratic primary for State Senator of Illinois District 12, alleged that Robert Cherry, his opponent, was a sham candidate. *Id.* at 1099–1100. After Smith lost the primary to Cherry, Cherry withdrew his candidacy, and the 12th Senatorial Committee (made up of five Democratic Ward Committeemen) appointed as the Democratic nominee Ben Palmer, who had been unable to run in the primary because he was no longer a resident of District 12. Smith filed suit against Cherry, Palmer, and the Committeemen under 42 U.S.C. § 1983, alleging that they had conspired to use Cherry as a sham candidate, knowing that he never intended to run in the general election, in order to make Palmer the nominee. *Id.* at 1100. The Seventh Circuit concluded that Smith had adequately alleged a claim under section 1983. *Id.* at 1102. Although the court did not expressly consider whether Smith had alleged that defendants acted under color of state law, it repeatedly referred to defendants' conduct as "official treatment." *See id.* at 1103. Thus *Cherry* reflects that a state representative's use of his leverage to manipulate an election can constitute actionable conduct under color of state law. *See also Grimes v. Smith*, 585 F. Supp.

1084, 1089 (N.D. Ind. 1984) (Posner, J., sitting by designation) (noting that Cherry's position as an incumbent State Senator created the necessary state action for Smith's claim), *aff'd*, 776 F.2d 1359 (7th Cir. 1985).

For these reasons, the Court vacates its dismissal of Gonzales's federal claims against Madigan.

Gonzales also argues, alternatively, that Madigan and the rest of the defendants acted under color of state law because they used a state election to achieve the goal of their conspiracy. He cites *Shelley v. Kraemer*, 334 U.S. 1 (1948), for the premise that, because a state election is supervised and implemented by state officials, any scheme involving fraudulent candidates necessarily alleges action taken under color of state law. Pl.'s Mot. to Alter J. at 7–8. The Court does not find this argument persuasive. If this were the case, every claim of election fraud or violation of a state election statute would give rise to a federal suit under section 1983. The Seventh Circuit has held, however, that section 1983 does not have such a broad scope. *See Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975). The Court's grant of Gonzales's motion to alter its judgment of dismissal does not rest on this basis.

In sum, the Court grants Gonzales's motion to vacate the dismissal of the federal claims against Madigan. These claims are still potentially subject to dismissal based on the remaining arguments in defendants' motion to dismiss the original complaint that the Court did not initially consider. The Court will address those arguments later in this opinion.

### b. Tabares

The Court dismissed Gonzales's federal claims against Tabares for the same

reasons it dismissed the federal claims against Madigan.  For the same reasons

discussed above, the Court finds that it read the complaint too narrowly and relied on an

incorrect application of the color of state law standard.  Gonzales alleges that Tabares

worked with Madigan in the state legislature and that she used resources available to

her as a state representative, including political favors, supporters, campaign funds, and

precinct captains, in order to carry out their scheme to discredit Gonzales.  Am. Compl.

¶ 46.  For this reason and those discussed in the previous section of this opinion, the

Court vacates its dismissal of the federal claims against Tabares.

### c.    Friends, 13th Ward Organization, Decremer, Hanania, Barbosa, and Rodriguez

The remaining defendants—Friends, the 13th Ward Organization, Decremer,

Hanania, Barbosa, and Rodriguez—are not state officials.  Thus to allege that they

acted under color of state law, Gonzales must allege that they "had a meeting of the

minds and thus reached an understanding with a state actor to deny [Gonzales] a

constitutional right."  *Wilson v. Warren Cty.*, 830 F.3d 464, 468 (7th Cir. 2016).  In its

previous ruling, the Court found that Gonzales had not done so because he had not

sufficiently alleged that either Madigan or Tabares—the only two state officials claimed

to be part of the conspiracy—were state actors for the purpose of his claims.  Thus

there was no state actor with which the private individuals and entities could have

conspired.  But the Court has now concluded that the amended complaint adequately

alleges that Madigan and Tabares were state actors—i.e., they acted under color of

state law when engaging in the conduct alleged in Gonzales's complaint.  This is

sufficient to warrant vacating the dismissal of the federal claims against these six

defendants.  Again, the Court will address later in this opinion any remaining arguments

for dismissal from defendants' motion to dismiss the original complaint that it did not address the first time around.

### 3. State law claims

Gonzales also asks the Court to vacate its dismissal of the state law claims in his amended complaint. After dismissing the federal claims, the Court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed those counts without prejudice. Because the Court is vacating its dismissal of the federal claims, the Court likewise vacates its jurisdictional dismissal of the state law claims.

### 4. Summary

The Court vacates its dismissal on June 20, 2017 of all federal and state law claims in Gonzales's amended complaint. This ruling does not alter the Court's initial dismissal of March 14, 2017, in which the federal claims against the PRB were dismissed with prejudice. Gonzales does not argue otherwise.

## B. Motion to dismiss

In ruling on defendants' motion to dismiss the original complaint, the Court declined to consider defendants' other arguments in favor of dismissal after finding that Gonzales failed to allege that they acted under color of state law. *Gonzales*, 2017 WL 977007, at *3. Defendants incorporated these same arguments into their motion to dismiss the amended complaint. Dkt. no. 48, Certain Defs.' Mot. to Dismiss the Federal Cls. Alleged in Pl.'s First Am. Compl. and Joint Mem. of Law in Support at 9. The Court again granted defendants' motion to dismiss based on the color of state law issue and did not address their other arguments. The Court now addresses the remaining arguments from defendants' motion to dismiss the original complaint as incorporated by

reference in their motion to dismiss Gonzales's amended complaint.

Defendants contend that, even if the two state officials (Madigan and Tabares) acted under color of state law, Gonzales has failed allege that any of the private defendants acted in concert with a state official. They also argue that Gonzales has failed to allege that he was deprived of any constitutional right under the First, Fourteenth, or Fifteenth Amendments or the Voting Rights Act. Defendants further contend that Gonzales cannot pursue claims under section 1983 against Madigan and Tabares in their official capacities. Finally, they ask the Court to strike Gonzales's request for injunctive relief.

When considering a motion to dismiss, the Court accepts as true all well-pleaded facts and draws inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The complaint must contain "sufficient factual information to state a claim for relief that is plausible on its face." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The Court evaluates all of defendants' arguments for dismissal using Gonzales's amended complaint.

**1.     Private defendants & civil conspiracy**

Defendants argue that, even if Gonzales has alleged that Madigan and Tabares acted under color of state law, he has failed to allege that the remaining private defendants did so. To state a claim against a private individual under section 1983, a plaintiff must allege that the private individual "had a meeting of the minds and thus reached an understanding with a state actor to deny plaintiffs a constitutional right."

*Wilson*, 830 F.3d at 468.

Gonzales has adequately alleged that each of the private defendants, other than Hanania, reached an understanding with Madigan to commit the conduct alleged in the complaint. He alleges that Madigan is the principal of Friends and the organization's purpose is to elect and re-elect Madigan. Am. Compl. ¶¶ 13, 15. He alleges that Madigan, as 13th Ward committeeman, runs the 13th Ward Organization. *Id.* ¶ 28. Gonzales also alleges that the 13th Ward Organization and Friends share some of the same officers, employees, consultants and/or volunteers. *Id.* ¶ 29. He alleges that Madigan used resources of both organizations in order to carry out his scheme. Further, Gonzales specifically alleges that Decremer is the individual that Madigan used in order to place "straw candidates onto the ballot." *Id.* ¶ 36. He also alleges that both Barbosa and Rodriguez gave Madigan permission to register them as sham candidates and that the two worked with Madigan to deceive the voters. *Id.* ¶¶ 58, 60, 65, 67. Gonzales has therefore alleged that these five private individuals or entities reached an understanding with Madigan regarding the conduct underlying his claims. The Court denies Gonzales's motion to dismiss the claims against these five defendants on this ground.

Gonzales only brings one claim against Hanania under section 1983: the claim of conspiracy. Gonzales alleges in the amended complaint that Hanania supports Madigan and that he uses his consulting business to benefit Madigan. *Id.* ¶ 51. Gonzales also alleges that Hanania tends to write positive stores on Madigan and negative stories on Madigan's opponents, but he does not allege that Hanania wrote the articles discussing his conviction based on any agreement with Madigan or that

Madigan controls the articles Hanania writes. *See id.* ¶ 54. Although Gonzales also alleges more generally that all of the defendants—including Hanania—conspired to violate his civil rights, this vague allegation is insufficient by itself to support a claim that Hanania reached an understanding with any state actor. The Court therefore dismisses Gonzales's claim of conspiracy (count 37) as alleged against Hanania.

### 2. Deprivation of a constitutional right

Defendants also argue that Gonzales has not alleged that they deprived him of any federal right. In order to state a claim under 42 U.S.C. § 1983, Gonzales must allege that defendants deprived him of a right secured by the Constitution or some other federal statute while acting under color of state law. *Wilson*, 830 F.3d at 469. Gonzales alleges that defendants deprived him of his rights under the First, Fourteenth, and Fifteenth Amendments, as well as the Voting Rights Act.

### a. First Amendment

Gonzales alleges that Madigan, Friends, the 13th Ward Organization, and Tabares deprived him of his First Amendment right to petition the government for redress of his grievances by telling District 22 voters that he is a convicted felon and therefore ineligible to hold elected office. Am. Compl. ¶¶ 95–110, 151–57, 192–98, 275–83. Gonzales alleges that this effectively nullified his pardon, primarily because the statements regarding his ineligibility to hold office were false.

The First Amendment guarantees the right of the people to petition the government for a redress of grievances. *McDonald v. Smith*, 472 U.S. 479, 482 (1985). The Seventh Circuit has suggested that there are two types of violations of this right: direct interference with an individual's petition for redress and retaliation against an

individual for petitioning for redress. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009).

Gonzales clearly does not allege that Madigan, Friends, the 13th Ward Organization, and Tabares directly interfered with his efforts to petition for a pardon. Gonzales filed multiple pardon applications before Governor Pat Quinn granted his request in January 2015. Am. Compl. ¶¶ 77–78. Gonzales does not say that the defendants attempted to interfere with these applications in any way. And Gonzales does not allege any offensive conduct whatsoever by defendants prior to November 30, 2015. Thus Gonzales has not alleged that these four defendants directly interfered with his right to apply for a pardon.

The Court also concludes that Gonzales has failed to allege that these defendants retaliated against him for exercising his right to petition. To state such a claim, Gonzales must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges*, 557 F.3d at 553 (internal quotation marks omitted). Thus Gonzales must allege that defendants' conduct was in response to "a constitutionally protected exercise of his right to access" the system to petition for redress. *Id.* at 554. But Gonzales does not allege that Madigan and the other defendants spread information regarding his prior conviction *because* he applied for a pardon. Rather, he alleges that defendants spread this information in order "to keep [Madigan's] seat and benefits in the Illinois House of Representatives"—i.e., in retaliation for the fact that Gonzales chose to run against

16

Madigan in the Democratic primary for the District 22 seat. Am. Compl. ¶ 105. Thus Gonzales has not alleged that the defendants retaliated against him for exercising his right to petition.

Gonzales's allegations that defendants' statements nullified the effects of his pardon do not support his claim. The right to petition includes only the right to speak freely and petition openly; it does not guarantee the right to a particular response by the government. *Minn. State Bd. for Cmty. Colls. v. Knight*, 464 U.S. 271, 286 (1984). Thus Gonzales's allegations that the defendants nullified the effects of his pardon do not support a claim that they deprived him of his right to petition under the First Amendment.

In his response, Gonzales argues more generally that defendants retaliated against him for exercising his First Amendment right to campaign against Madigan. Pl.'s Resp. Mem. in Opp'n to Certain Defs.' Mot. to Dismiss Pl.'s Federal Cls. (Pl.'s Resp.) at 3–4. But Gonzales's complaint expressly states only that defendants "interfered with [his] right to petition the government for redress." Am. Compl. ¶ 98. It does not allege that defendants interfered more generally with the exercise of his First Amendment right to free speech. The Court grants defendants' motion to dismiss the First Amendment claims.

> **b.    Fourteenth Amendment**

Gonzales next alleges that defendants deprived him of his right to equal protection in violation of the Fourteenth Amendment. He alleges first that Madigan, Friends, the 13th Ward Organization, and Tabares misrepresented to voters that he was ineligible to hold public office due to his prior conviction, which imposed an

unconstitutional qualification on candidates for office in violation of the equal protection clause. He also alleges that Madigan, Friends, the 13th Ward Organization, Decremer, Tabares, Barbosa, and Rodriguez diluted the voting power of Hispanic residents of District 22 by registering sham candidates in the primary in violation of the equal protection clause.

Gonzales's claims based on the creation of an unconstitutional candidate qualification fail to allege the deprivation of any constitutional right. He argues that, by telling voters that he was ineligible to hold office, "[d]efendants imposed an unlawful and unconstitutional qualification for office upon" him. Pl.'s Resp. at 4. But, as defendants argue, their alleged statements did not actually impose any such qualification. Gonzales was still eligible to run for state representative, despite being a convicted felon. Nothing defendants allegedly did would have prevented him from taking office had he won. It is therefore unnecessary to analyze whether a restriction based on Gonzales's status as a convicted felon would violate the equal protection clause. And the mere fact that defendants made misleading statements during a campaign does not give rise to a claim under section 1983. *See Rudisill v. Flynn*, 619 F.2d 692, 694 (7th Cir. 1980) (stating that there is no circuit precedent "holding that a federal cause of action arises whenever an incumbent intentionally misrepresents facts relevant to an election issue"). Thus where the misrepresentations are not "intimately connected with the ballot itself or the right to vote," they cannot serve as the basis for a claim under section 1983. *Id.* at 695. The Court therefore dismisses Gonzales's claims under the Fourteenth Amendment based on defendants' statements regarding his prior conviction.

The Seventh Circuit has, however, recognized the deprivation of a constitutional

right where the defendant commits election fraud or engages in willful conduct that undermines the organic processes by which candidates are elected, including by placing sham candidates on the ballot. *See Hennings,* 523 F.2d at 864 (citing *Cherry*, 489 F.2d 1098). Therefore Gonzales has alleged that he was deprived of his right to equal protection based on defendants' registration of the two sham candidates.

Defendants argue that Gonzales's claim under this theory fails because he characterizes his claim as vote dilution, and vote dilution claims can only arise in the redistricting context. Regardless of whether this statement is true, Gonzales's claim is not so limited. Although he refers to claims under this theory in shorthand as "vote dilution," it is clear that he is alleging that defendants perpetrated a fraud by registering two sham candidates in the democratic primary. *See, e.g.*, Am. Compl. ¶¶ 119–27. The fact that Gonzales argues the effect of this fraud was to dilute the Hispanic vote— the two alleged sham candidates have Hispanic surnames—does not negate the fact that the registration of sham candidates can, on its own, constitute a deprivation of a constitutional right.

Defendants also argue that any claim of vote dilution under the Fourteenth Amendment requires purposeful discrimination. The Court agrees, but this does not require dismissal of Gonzales's claim. In *Cherry*, the Seventh Circuit recognized that candidates for office have interests "in official treatment free from intentional or purposeful discrimination [that] are entitled to constitutional protection." *Cherry*, 489 F.2d at 1103. But Smith, the losing candidate and the plaintiff in that case, did not allege discrimination based on any recognized protected class. Instead, he alleged that the defendant, by registering sham candidates, discriminated against Smith's voters and

those swing voters who may have chosen to associate with him.  *See id.* at 1102.

Therefore it is sufficient that Gonzales alleges that defendants' registration of sham

candidates affected those who voted for him and those who voted for other candidates

but might have voted for him had the sham candidates not been included on the ballot.

Further, even if Gonzales were required to allege discrimination based on a protected

class, he clearly alleges that the purpose of defendants' conduct was to discriminate

against Hispanic voters.  Gonzales alleges that defendants registered these sham

candidates to split up the Hispanic vote and prevent the election of a Hispanic

representative.  This is sufficient to allege purposeful discrimination.

Finally, defendants argue that Gonzales has failed to allege any harm from the

deprivation of this right because, even if he had received all the votes that went to the

sham candidates, he would have received only 34.9% of the overall vote.  But Gonzales

also alleges that some voters who voted for Madigan when faced with three other

candidates may not have done so when faced with only one.  The Court finds that this

allegation is sufficient to survive the pleading stage.

For these reasons, the Court denies defendants' motion to dismiss Gonzales's

claims under the Fourteenth Amendment based on defendants' registration of sham

candidates.

### c.      Fifteenth Amendment and the Voting Rights Act

Gonzales next alleges that Madigan, Friends, the 13th Ward Organization,

Decremer, Tabares, Barbosa, and Rodriguez violated his right to vote through vote

dilution by registering sham candidates.  *See, e.g.*, Am. Compl. ¶¶ 126–34.  Gonzales

labels these counts as asserting violations of the Fifteenth Amendment, but he also

states in these counts that the same conduct violates laws enacted under the Fifteenth Amendment, "including the Voting Rights Act." *Id.* The Court therefore considers whether these counts adequately allege a deprivation of a right under either the Fifteenth Amendment or the Voting Rights Act.

### i. Fifteenth Amendment

Gonzales alleges that defendants' registration of sham candidates constitutes impermissible vote dilution in violation of the Fifteenth Amendment. The Supreme Court "ha[s] never held that vote dilution violates the Fifteenth Amendment." *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 334 n.3 (2003). The Court stated in *Reno* that the Fifteenth Amendment does not grant a plaintiff the right to have candidates of his race elected; rather it ensures that citizens can register and cast votes without hindrance. *Id.* Gonzales does not allege that defendants prevented Hispanic voters from registering to vote or casting a ballot, only that they denied Hispanic voters the right to an effective vote. Further, Gonzales does not cite any case that recognizes a vote dilution claim under the Fifteenth Amendment. Therefore the Court grants defendants' motion to dismiss counts 4, 10, 16, 24, 28, 34, and 36 to the extent that they are based on the Fifteenth Amendment.

### ii. Voting Rights Act

Gonzales also alleges that defendants' registration of sham candidates constitutes impermissible vote dilution in violation of the Voting Rights Act. But the Seventh Circuit has described section 2 of the Voting Rights Act "as including a prohibition of vote dilution *by redistricting*." *Gonzalez v. City of Aurora*, 535 F.3d 594, 598 (7th Cir. 2008) (emphasis added). And plaintiffs do not cite to—and the Court is

unaware of—any circuit case in which a court found that the Act supports a claim of vote dilution resulting from a practice other than redistricting. The Court sees no basis to read this statute to cover the allegations in this case.

A quick review of Gonzales's claim demonstrates why doing so would make no sense. Gonzales alleges essentially that defendants diluted the Hispanic vote by registering sham candidates with Hispanic last names so as to split up Hispanic voters and prevent them from unifying behind one Hispanic candidate. But Gonzales does not cite any case suggesting that the Voting Rights Act gives rise to liability for election fraud. Thus Gonzales's claim under this provision cannot be based on the fact that the other two Hispanic candidates on the ballot were sham candidates. It can be based only on a theory that there were too many Hispanic candidates on the ballot, such that Hispanic voters in District 22 could not vote as a bloc to elect their preferred candidate. The Court would then have to determine what, in effect, constitutes too many minority candidates on one ballot. Without precedent to suggest that the Voting Rights Act extends this far, the Court declines to entertain such a claim. The Court grants defendants' motion to dismiss counts 4, 10, 16, 24, 28, 34, and 36 to the extent that they are based on the Voting Rights Act. Therefore, these claims are dismissed in their entirety.

### d.    Summary

In sum, the Court finds that Gonzales has failed to allege that he was deprived of any right under the First and Fifteenth Amendments or the Voting Rights Act. The Court also finds that Gonzales has failed to allege that he was deprived of his right to equal protection under the Fourteenth Amendment based on defendants' creation of an

unconstitutional candidate qualification.  The Court therefore grants defendants' motion to dismiss counts 1–2, 4, 7–8, 10, 13–14, 16,  24–26, 28, 34, and 36.

Gonzales has alleged, however, that he was deprived of his right to equal protection under the Fourteenth Amendment based on defendants' registration of sham candidates.  The Court therefore denies defendants' motion to dismiss counts 3, 9, 15, 23, 27, 33, and 35.

### 3.    Individual capacity

Gonzales brings all claims against Madigan and Tabares in both their individual and official capacities.  Defendants contend that Gonzales cannot bring claims under section 1983 against these two defendants in their official capacities.  The Court agrees. "A suit against a state official in his or her official capacity is a suit against the state," and "section 1983 does not authorize suits against states."  *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000).  Gonzales essentially concedes as much when he argues in response only that his claims against these two defendants in their personal capacities are not barred.  *See* Pl.'s Resp. at 12–13.  The Court therefore dismisses all of Gonzales's claims against Madigan and Tabares to the extent that they are brought against the two in their official capacities.  Gonzales may proceed on any claims against Madigan and Tabares in their individual capacities that are not otherwise dismissed in this opinion.

### 4.    Injunctive relief

Defendants also ask the Court to strike Gonzales's request for injunctive relief as it would constitute a prior restraint on speech and is therefore *per se* unconstitutional. But prior restraints on speech are not *per se* unconstitutional; they are merely presumed

to be invalid.  *Weinberg v. City of Chicago*, 310 F.3d 1029, 1045 (7th Cir. 2002).

Further, courts have the ability to craft injunctive relief in ways that would not infringe on

defendants' free speech rights.  *See, e.g.*, *Tory v. Cochran*, 544 U.S. 734, 737–38

(2005).  The Court sees no reason to strike the request for injunctive relief at this stage

and therefore denies defendants' request.

### 5. PRB

As discussed above, in November 2016, the PRB moved to dismiss the federal

claims against it.  The PRB argued that the Eleventh Amendment bars suits under

section 1983 against state agencies and that Gonzales failed to allege the deprivation of

a constitutional right.  In response, Gonzales conceded that he can only bring such

claims against individual employees of the PRB in their individual capacities, and he

asked the Court for leave to amend his complaint.  The Court denied Gonzales's

request after concluding that, even if he had named individuals as defendants, he had

not adequately alleged that the challenged actions on behalf of the PRB deprived him of

a constitutional right.  The Court then dismissed with prejudice Gonzales's federal

claims against the PRB.  It did not make any ruling on the state law claims.  The Court

granted Gonzales leave to amend his complaint only with regard to the federal claims

against defendants other than the PRB.

Gonzales then filed his amended complaint, which included the same state law

claims against the PRB.  The Court restricted the parties' arguments on dismissal solely

to the issue of whether defendants other than the PRB acted under color of state law,

an issue that is not relevant to the state law claims against the agency.  Thus the

agency did not move to dismiss Gonzales's amended complaint.  As discussed above,

the Court ultimately dismissed all remaining federal claims with prejudice and dismissed all remaining state claims—including the ones against the PRB—for lack of supplemental jurisdiction.

Because the Court has now vacated the judgment, it must determine whether Gonzales may proceed on his state law claims against the PRB . The Court concludes that the Eleventh Amendment, which it previously ruled barred Gonzales's section 1983 claims against the agency, also bars his state law claims found in counts 20, 21, and 22. Specifically, the Eleventh Amendment prohibits suits brought in federal court under state law against a state or its agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984) (considering a claim under a Pennsylvania statute). This constitutional bar applies even when the court has jurisdiction over other related federal claims. *Id.* at 120. Based on the PRB's assertion of Eleventh Amendment immunity in its original motion to dismiss, the Court finds that it is also immune from suit based on state law claims in federal court. The Court therefore dismisses counts 20, 21, and 22 in Gonzales's amended complaint.

### C.      Motion for leave to amend

Because Gonzales has alleged several claims that survive defendants' motion to dismiss, the Court also considers his motion to amend his complaint under Rule 15(a) to add a claim under 42 U.S.C. § 1985(3).

A party seeking to amend its pleading more than 21 days after service must seek leave of the Court or consent of the opposing party. Fed. R. Civ. P. 15(a)(2). Courts have broad discretion in determining whether to grant leave to amend. *See Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*, No. 16-3582, 2017 WL 3805856,

*8 (7th Cir. Sept, 1, 2017).  "[I]f a plaintiff seeks leave to amend a complaint before final judgment, leave should be freely given when justice so requires."  *Newell v. Velacruz*, No. 17-1617, 2017 WL 3585608, *2 (7th Cir. Aug. 18, 2017).

The Court has vacated its order dismissing a number of Gonzales's claims. Therefore it has the authority to grant Gonzales's motion for leave to amend.  *Vesely v. Armslist LLC*, 762 F.3d 661, 666–67 (7th Cir. 2014).

Defendants argue that the amendment would be futile because Gonzales's proposed claim fails to state a claim under section 1985(3).  Specifically, they contend that the proposed claim fails to allege that defendants acted with racially discriminatory animus.  The Court disagrees.

Section 1985 prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws."  42 U.S.C. § 1985(3).  A plaintiff pursuing such a claim must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971).  Gonzales repeatedly alleges that defendants discriminated against him and other Hispanic voters.  He alleges in his proposed claim that defendants conspired to prevent a Hispanic candidate from winning an election in a predominantly Hispanic legislative district.  Pl.'s Mot. to Alter J., Ex. A ¶ 389.  Further, he alleges throughout his amended complaint that defendants placed sham candidates with Hispanic surnames on the ballot in order to interfere with the voting rights of Hispanic voters and to dilute the Hispanic vote.  Am. Compl. ¶¶ 84, 121.

Defendants argue that these allegations are no more than conclusory statements

regarding defendants' intent and therefore should be disregarded.  Defs.' Resp. to Pl.'s
Mot. to Alter J. and For Leave to Amend Compl. at 9–10.  Further, they contend that
there is an alternative, equally plausible, non-discriminatory explanation:  that
defendants targeted Gonzales because he challenged Madigan, not due to his race.  *Id.*
at 10.  But Gonzales has clearly alleged the existence of a calculated scheme intended
to target Hispanic voters in order to keep them from electing a Hispanic representative.
This is sufficient to allege racially discriminatory animus as required under section 1985.

The Court grants Gonzales's motion for leave to amend his complaint to add a
claim against defendants under 42 U.S.C. § 1985(3).

## Conclusion

For the foregoing reasons, the Court grants Gonzales's motion [dkt. no. 53] to
alter the judgment.  The Court vacates the judgment entered on June 20, 2017 and
directs the Clerk to reinstate the case.  The Court also grants Gonzales leave to file his
proposed second amended complaint asserting a claim under 42 U.S.C. § 1985(3).
Gonzales's second amended complaint alleges the exact same counts that were in his
first amended complaint, plus newly asserted count 40, the section 1985(3) claim.
Therefore, for the reasons described in this opinion, the Court  dismisses counts 1–2, 4,
7–8, 10, 13–14, 16,  19–22, 24–26, 28, 34, and 36 in plaintiff's second amended
complaint.  The Court also dismisses count 37 in the second amended complaint as
against Hanania only.  In addition, the Court dismisses any claim to the extent it is
brought against Madigan and Tabares in their official capacities.  Finally, the Court
declines to strike Gonzales's request for injunctive relief.

The ruling date of September 13, 2017 is converted to a status hearing on that

date at 9:30 a.m.  The Court will set at that time deadlines for making Rule 26(a)(1)

disclosures, amending the pleadings and adding parties, and completing fact discovery.

Counsel are to be prepared to propose appropriate deadlines.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  September 11, 2017