IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON GONZALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16 cv 7915 |
| v. ) | |
| ) | |
| MICHAEL J. MADIGAN, et al., ) | |
| ) | Judge Matthew F. Kennelly |
| Defendants. ) | |
| ) | |

**DEFENDANT MICHAEL J. MADIGAN'S REPLY TO PLAINTIFF'S RESPONSE TO PRIVILEGE LOG OF SUBPOENA RESPONDENT JULIE B. PORTER**

Defendant Michael J. Madigan, by and through his undersigned attorneys, Hinshaw & Culbertson, submits his reply to Plaintiff's response to the privilege log of subpoena respondent Julie B. Porter. Defendant Michael J. Madigan requests that this Court uphold the assertions of privilege made by non-party subpoena respondent Julie B. Porter, the Illinois Special Legislative Inspector General ("SLIG"), and reject plaintiff's attempt to discover wholly irrelevant information that has nothing to do with the allegations of his complaint. In support, Mr. Madigan states as follows:

**Background**

Plaintiff issued 54 subpoenas to various third parties. One of those subpoenas was issued to SLIG Porter, seeking:

> (1) Investigative reports, memorandum [*sic*], interviews, and documents prepared by Inspector General Thomas Homer

regarding the investigation into Michael Madigan's connection to METRA hiring and/or UIC admissions;

(2) The document referred to as the "Homer Report" prepared by Legislative Inspector General's office regarding Michael Madigan; and

(3) Complaints filed against Michael Madigan.

(Doc. #87-2.)

The SLIG moved to quash plaintiff's subpoena because the Illinois State Officials and Employees Ethics Act ("Ethics Act") precluded the disclosure of the documents plaintiff sought and she lacked authority to disclose the documents under Illinois law. (Doc. #87 at 1, 3-7.)

In conducting an *in camera* inspection of the documents, the court ordered the SLIG to inform the Court which documents "were sent to or received from defendant Michael Madigan or his office or his legal or other representative(s)." (Doc. #127.) In response the SLIG identified ten documents that had either been sent by Mr. Madigan to Legislative Inspector General ("LIG") Thomas Homer or sent by LIG Homer to Mr. Madigan. (Doc. #129 at 3.) On May 2, 2018, this Court ordered SLIG to provide a privilege log to the parties and to the Court as described in open court by May 9, 2018. (Doc. #132.) The Court also ordered any motions arguing waiver of privilege to be filed by May 16, 2018. *Id*.

301968226v1 1002097

On May 9, 2018, LIG produced a privilege log. Plaintiff filed his response to this privilege log on May 24, 2018. (Doc. # 135.) Mr. Madigan hereby files this reply to Plaintiff's Response.

### Argument

**I. This Court Should Reject Plaintiff's Attempt To Uncover Irrelevant Information About An Investigation That Long Predates The Acts Alleged In His Complaint.**

In addition to the reasons raised by SLIG Porter, Mr. Madigan requests this Court quash plaintiff's subpoena because it does not seek information relevant to plaintiff's claims. FRCP 26(b). The allegations in plaintiff's amended complaint all arise from purported acts related to the the 2016 Democratic primary election for State Representative for the 22nd District. Specifically, plaintiff alleges that Mr. Madigan and the co-defendants violated plaintiff's 14th Amendment rights by placing Defendants Barbosa and Rodriguez on the ballot.

Plaintiff's subpoena to the SLIG, however, seeks information that has nothing to do with that election or any other primary election, much less any information that could possibly suggest that his claims of "sham candidates" are true. Instead, Plaintiff seeks information related to former Legislative Inspector General Thomas Homer's investigation regarding Metra that did not result in any finding of misconduct on the part of Mr. Madigan.

301968226v1 1002097

Plainly, documents relating to that investigation have nothing to do with this suit. This investigation was completed more than two years before the primary election at issue in this case and more than one year before plaintiff filed his nominating petition to run in the 2016 primary. (Doc. #68.) And the vast majority of documents on the SLIG's privilege log were generated between 2012 and 2014; only two, dated August 31, 2015 and November 15, 2017, are even within a year of the primary. Documents relating to an investigation that long predated plaintiff's failed campaign have no relevance to any alleged impropriety during the 2016 primary.

Courts have rejected requests for the results of unrelated investigations on relevance grounds. For example, in *Santiago v. Smithson*, No. 05-cv-0512-MJR, 2008 U.S. Dist. LEXIS 5088, at 1 (S.D. Ill. Jan. 24, 2008), the court rejected a prisoner's attempt to uncover the results of investigations into prior misconduct of the guards who allegedly assaulted him. The court found that discovery into past allegations "regardless of whether the misconduct was close in time to [plaintiff's] alleged assault, conducted in a similar manner, or undertaken for a similar purpose" was "irrelevant" to the plaintiff's claims. *Id.* at 5-6. The mere fact that the defendants were involved in all of the incidences was insufficient to show that the requested documents were relevant. *Id.* at 6; *see also Wiggins v. Clark*, No. 09-cv-00613, 2009 U.S. Dist. LEXIS 90280, at 1 (E.D. Cal. Sept. 16, 2009) (denying discovery into actions by state governor in unrelated cases on

4

the basis that prior actions are "completely irrelevant" to constitutional claims against governor in present case).

Here, like *Santiago*, the only similarity between plaintiff's complaint and the documents he seeks from the SLIG is that they involve allegations of impropriety made against Mr. Madigan. As noted above, the SLIG's documents do not involve allegations of the use of "sham candidates" or any election misconduct, do not relate to plaintiff's failed candidacy, and do not implicate any of the codefendants in this suit. Nor could they. The LIG and Commission are not tasked with investigating claims of electoral "misconduct" under Illinois law. Rather, the Commission and LIG only investigate alleged ethics violations relating to sitting legislators and their employees. *See* 5 ILCS 430/25-5(d) (Commission has "jurisdiction over the members of the [Illinois] General Assembly and all State employees "who report to a legislative leader," and its jurisdiction "is limited to matters arising under [the Ethics Act]"); 5 ILCS 430/25-10(c) (LIG has authority to "investigate allegations of fraud, waste, abuse, mismanagement, misconduct, nonfeasance, misfeasance, malfeasance, or violations of [the Ethics Act] or violations of other related laws and rules"). They do not investigate claims of candidate misconduct during elections, which would either fall within the jurisdiction of the Illinois State Board of Elections or the Illinois Supreme Court. *See* 10 ILCS 5/10-9 (Illinois State Board of Elections hears challenges to nominating petitions); 10 ILCS 5/23-1.1a (Illinois Supreme Court has jurisdiction over election contests). Thus, the LIG would not

5

have any documents relevant to plaintiff's claim that Mr. Madigan previously used "sham candidates."

Plaintiff is also incorrect that the existence of written reports means that "multiple ethical violations involving Mr. Madigan's practice on state hiring were found by the [LIG]." (Doc. #135 p. 10.) Under the Ethics Act, when the LIG decides to close an investigation, he or she must "provide the Commission with a written statement of the decision to close the investigation." 5 ILCS 430/25-51. Thus, even if the LIG decides not to pursue an investigation, he or she drafts a written report that is disclosed to the Commission.

Moreover, even when the LIG finds "that reasonable cause exists to believe that a violation has occurred" and provides the Commission with a summary report, that does not mean that a violation has, in fact, occurred. 5 ILCS 430/25-50(a). Rather, the legislative leader provides a response to the summary report (5 ILCS 430/25-50(a)), and the LIG may decide not to file a complaint with the Commission. 5 ILCS 430/25-50(c-5). In that case, the LIG provides the Commission with "a statement setting forth the basis for the decision not to file a complaint and a copy of the summary report and response from the ultimate jurisdictional authority or agency head." *Id.* Thus, the existence of summary reports does not show that any violations of the Ethics Act occurred. To the contrary, the fact that no further proceedings occurred demonstrates that any allegations were unsupported.

301968226v1 1002097

The only possible purpose of plaintiff's subpoena is to attempt to gather unduly prejudicial information regarding Mr. Madigan. This Court should prevent plaintiff from abusing discovery to pry into confidential matters wholly unrelated to Plaintiff's allegations.

## Conclusion

WHEREFORE, Mr. Madigan respectfully requests that this Court uphold the claims of privilege in the SLIG's privilege log, reject plaintiff's request for the disclosure of irrelevant material in his Response, and for any other relief that this Court finds just.

    Respectfully submitted

    s/ *Adam R. Vaught*
    Adam R. Vaught

J. William Roberts
Robert T. Shannon
Adam R. Vaught
Vincent M. Rizzo
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
avaught@hinshawlaw.com
*Attorneys for Michael J. Madigan*

CERTIFICATE OF SERVICE

The undersigned certifies that on May 31, 2018, I electronically filed the foregoing Reply To Plaintiff's Response To Privilege Log Of Subpoena Respondent Julie B. Porter with the Clerk of the U.S. District Court, using the Court's CM/ECF system, which will accomplish service electronically on all counsel of record.

/s/ <u>*Adam R. Vaught*</u>

8

301968226v1 1002097