**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JASON GONZALES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 16 cv 7915 |
| v. | ) | |
| | ) | Honorable Matthew F. Kennelly |
| MICHAEL J. MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**NON-PARTY JULIE B. PORTER'S REPLY
IN SUPPORT OF HER PRIVILEGE LOG**

Non-party Julie B. Porter, Special Legislative Inspector General, by her attorney, Lisa Madigan, the Illinois Attorney General, submits this Reply in Support of her Privilege Log.

**Introduction**

The dispute between Plaintiff and Porter has been addressed in the briefing on Porter's Motion to Quash the subpoena. (Docs. 87, 91, 95). Porter maintains that the documents that have been submitted *in camera* should not be disclosed to Plaintiff because those documents are not only protected by the confidentiality provisions of the State Ethics Act, 5 ILCS 430/25-90, 25-95, but also are wholly irrelevant to the claims underlying this lawsuit. This lawsuit has nothing to do with any allegations regarding Speaker Madigan's alleged involvement in Metra hiring and/or UIC admissions. Yet, Plaintiff persists in seeking such documents in what appears to be a fishing expedition.

While the State Ethics Act does not necessarily prevent a federal court from ordering the production of confidential documents in a federal lawsuit, *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058 (7th Cir. 1981), the cases also hold that state law confidentiality

provisions should not be ignored, *see id.* at 1061; *see also Jaffee v. Redmond*, 518 U.S. 1 (1996). This case presents an opportunity for the Court to weigh the interests in protecting the integrity of the investigation of the Office of the Legislative Inspector General on the one hand, and the need for the production of what appears to be documents having no probative value to the present lawsuit on the other hand. This Court should protect the identity of complainants and witnesses, and generally protect the integrity of the investigatory process, by forbidding the disclosure of irrelevant material that is otherwise protected under the State Ethics Act.

Against this backdrop, this Court ordered Porter to tender a privilege log for the withheld documents submitted *in camera*. This Court also allowed Plaintiff leave to file a Response to the privilege log. Pursuant to the Court's order, Plaintiff's Response was to be limited to "arguing waiver of privilege." (Doc. 132). Plaintiff's Response to the privilege log argues that two privileges—the deliberative process privilege and the work product doctrine—have been waived. Porter acknowledges that she raised neither the deliberative process privilege nor the work product doctrine in the briefing on the Motion to Quash. Under the law, this Court may nonetheless consider the applicability of these two privileges. Porter respectfully requests that this Court find that, although technically forfeited, the applicability of these two privileges is ripe for review.

In addition to addressing the waiver argument, Plaintiff's Response also repeats arguments raised in the briefing of the Motion to Quash and raises new arguments regarding the applicability of the State Ethics Act. The arguments presented by Plaintiff regarding the State Ethics Act are unfounded. The State Ethics Act provides that the documents submitted to the Court *in camera* and identified on the privilege log should be kept confidential. This is especially true, given the irrelevancy of the subpoenaed documents.

## Argument

I.     **This Court should consider the deliberative process privilege and the work product doctrine as additional bases for the withholding of certain documents identified on the privilege log.**

In his Response to the privilege log tendered by Porter on May 9, 2018, Plaintiff argues that two bases asserted by Porter for withholding documents have been waived for failure to raise the bases in the briefing on the Motion to Quash the subpoena. (Docs. 87, 95). According to Plaintiff, because Porter did not raise either the deliberative process privilege or the work product doctrine as a basis to withhold documents in the Motion to Quash, she should be barred from asserting in the privilege log these additional bases. (Doc. 135, pp.2-6).

On this point, Porter recognizes that the failure to include (1) deliberative process privilege and (2) work product doctrine in the Motion to Quash and Reply in Support of Motion to Quash results in forfeiture of these objections. *See Otto v. City of Milwaukee*, 682 F.3d 552, 557-58 (7th Cir. 2012). Although Plaintiff describes Porter's failure to raise deliberative process privilege and work product doctrine in the briefing on the Motion to Quash as resulting in a "waiver" of these objections, the failure to raise these objections are more appropriately described as "forfeiture." *See United States v. Doyle*, 693 F.3d 769, 771 (7th Cir. 212) (noting that "[f]orfeiture occurs by accident, neglect, or inadvertent failure to timely assert a right" and "waiver occurs when a defendant or his attorney manifests an intention, or expressly declines, to assert a right"). While it is rare to do so, a court has the discretion to consider issues that have technically been forfeited. *S.E.C. v. Yang*, 795 F.3d 674, 679 (7th Cir. 2015). Porter respectfully requests that this Court consider the deliberative process privilege and the work product doctrines as additional reasons to withhold from disclosure certain documents identified in the privilege log. *See Ultimate Timing, L.L.C. v. Simms*, 2009 WL 1148056 at *1 (S.D. Ind. Apr. 28,

2009) ("While deadline compliance is to be encouraged by the court, in this particular case, the court will not decline to consider the motion merely because of a failure to comply with the time constraints required by the rules"); *Yousuf v. Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006) (where the court considered an untimely objection to a subpoena, in part, because the subpoenaed government witness is a nonparty acting in good faith); *Ventre v. Datronic Rental Corp.*, 1995 WL 42345 at * 4 (N.D. Ill. Feb. 2, 1995) ("Where objections to the subpoena are based upon claims of privilege, Rule 45 does not impose a strict time period within which the privilege objections must be made …. As a practical matter, the investment of time necessary to review all responsive documents for privileged material and prepare a privilege log or report with sufficient detail to satisfy the requirements of Rule 45(d)(2) does not lend itself to the limited fourteen (14) day time period"); *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) (a full privilege log may follow "within a reasonable time"); *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C. Cir. 1996) ("the responsibility rests with the district court to ensure that the information required under the Rule is provided to the requesting party within a *reasonable time,* such that the claiming party has adequate opportunity to evaluate fully the subpoenaed documents and the requesting party has ample opportunity to contest that claim") (emphasis in original).

Because Plaintiff has responded to the arguments on the applicability of the deliberative process privilege and the work product doctrine, Porter provides this reply, so that this Court can rule on the applicability of these two asserted protections.

II.     **If this Court chooses to consider the deliberative process privilege, it should find that this privilege applies to the handful of withheld documents identified in the privilege log.**

Plaintiff recognizes that most of the documents identified on the privilege log as protected by the deliberative process privilege indeed appear to be "'drafts' of reports or communications which arguably are deliberative." (Doc. 135, p.4). Plaintiff, however, highlights five specific withheld documents that he contends include factual material that are not subject to the deliberative process privilege. (Doc. 135, pp.4-5). Those documents are as follows: (1) Summary of Metra Files Included in LIG Summary Report (000119-000120); (2) Interview Summaries (000128-000129); (3) Interview Transcript with OEIG (000132-000134); (4) Partial Transcript (000209); and (5) April 4, 2014 letter received by LIG (000441-000446). (Doc. 135, pp.4-5). Porter did not claim the deliberative process privilege over the fifth document identified by Plaintiff—the April 4, 2014 letter received by the Office of the Legislative Inspector General. Thus, Plaintiff's narrowed challenge relates only to the first four documents.

All four of these documents are protected by the deliberative process privilege. The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001). For the privilege to apply, the document must be "pre-decisional" and "deliberative." *Becker v. IRS*, 34 F.3d 398, 403 (7th Cir. 1994). The theory behind the privilege is that, "[s]ince frank discussion of legal and policy matters is essential to the decision making process of a government agency, communications made prior to and as a part of an agency determination are protected from disclosure." *Id.* Communications made after final agency decisions, however, are not protected. *Id.*

Analyzing the applicability of the deliberative process privilege involves two steps. *First*, the governmental body must make a *prima facie* showing that privilege applies by (1) having the department head with control over the matter make a formal claim of privilege; (2) demonstrating, typically by affidavit, the precise and certain reasons for preserving the confidentiality of the documents in question; and (3) specifically identifying and describing the documents. *K.L., L.F., & R.B. v. Edgar*, 964 F. Supp. 1206, 1209 (N.D. Ill. 1997). If the *prima facie* showing is established, then the burden shifts to the plaintiff to show that there is a particularized need for the withheld documents. *United States v. Farley*, 11 F.3d 1385, 139 (7th Cir. 1993).

Here, through the privilege log, Porter has made a formal claim of privilege for the four documents challenged by Plaintiff. (Privilege Log, pp.2-4). There is a sufficient explanation as to why the deliberative process privilege applies to each of the four documents. *First*, although the "Summary of Metra Files Included in LIG Summary Report" (000119-000120) arguably contains factual information, such information was relied upon by former Inspector General Thomas Homer in preparing his summary report. Additionally, the interview summaries (000128-000129) and interview transcripts (000132-000134; 000209) were also used by Homer in formulating his findings and ultimate recommendation to the Legislative Ethics Commission. Each of these four documents, which were essential to Homer's decision making process, are both pre-decisional and deliberative.

Nor is an affidavit required for Porter to establish a *prima facie* showing that the deliberative process privilege applies. Plaintiff cites *Evans v. City of Chicago*, 231 F.R.D. 302 (N.D. Ill. 2005), which states that a *prima facie* showing is made "typically by affidavit." *Id.* at 316. But this case does not hold that an affidavit is required in all circumstances. The Temporary

Emergency Court of Appeals (which was a federal appellate court whose jurisdiction was subsumed by the Court of Appeals for the Federal Circuit in 1993) held in *United States Dep't of Energy v. Brett*, 659 F.2d 154, 155 (Temp. Emergency Ct. App. 1981), that an affidavit explaining the bases for the assertion of the deliberative process privilege is necessary only where documents have not been tendered for *in camera* inspection. This holding makes sense, for where a governmental body is withholding documents on the basis of its deliberative process, but has not tendered documents to the court, the court cannot adequately address whether there has been a *prima facie* showing that the privilege applies. In other words, the court either needs to review the documents *in camera* or rely on the assertions in an affidavit in the absence of having access to the documents. *See id.*; *see also Breakthrough Towing, LLC v. Hall*, 15 CV 12526, 2017 WL 1164523, *4 (Mar. 29, 2017 E.D. Mich.).

Consistent with *Brett*, Porter has tendered all withheld documents for *in camera* inspection, so an "affidavit or testimony . . . [is] unnecessary to assert the privilege effectively." *See Brett*, 659 F.2d at 155. And if this Court agrees that a *prima facie* showing has been made, then it should also conclude that Plaintiff cannot show any particularized need for the documents withheld on the basis of the deliberative process privilege. Porter maintains that the *in camera* review will show that any responsive documents that do exist are irrelevant to this lawsuit. To reiterate, this lawsuit does not involve any allegations regarding Metra hiring and/or UIC admissions. And although Plaintiff has previously suggested that the documents sought are relevant because he has alleged that Speaker Madigan is a state actor, his personal actions are inseparable from his political actions, he controls jobs, and he intertwines his political office with his campaign (Doc. 91, p.1), such general and vague allegations against Speaker Madigan are insufficient to demonstrate the relevance or need of the documents submitted *in camera*.

**III.    If this Court chooses to review the work product doctrine, it should find that it applies to the handful of documents identified in the privilege log.**

Plaintiff's sole argument related to the merits of Porter's assertion of the work product doctrine is that the Office of the Legislative Inspector General could not have created the relevant documents "with an eye to a suit against the Defendants." (Doc. 135, p.6). Notably, in his Response, Plaintiff does not challenge whether the documents contain the Legislative Inspector General's mental impressions, opinions, or legal theories. (Doc. 135, p.6). Rather, the Response is more focused; Plaintiff argues that these documents were not created in anticipation of litigation.

Plaintiff cites *Evans v. City of Chicago*, 231 F.R.D. 302 (N.D. Ill. 2005), to support his argument that the work product doctrine does not apply to documents sought from a non-party to the underlying lawsuit. (Doc. 135, pp.5-6). But *Evans* should not be read so broadly. In that case, the defendants in a civil rights lawsuit subpoenaed documents in the possession of the Illinois Prisoner Review Board created in connection with a decision to pardon a wrongfully convicted plaintiff. *Evans*, 231 F.R.D. at 310-11. The court relied heavily on the fact that, in Illinois, a decision to pardon is unreviewable. *Id.* at 310 (citing *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457 (2004)). Because there would have been no chance that documents created in connection with a decision to pardon the plaintiff would lead to a lawsuit, the documents certainly could not have been created in anticipation of litigation. *Id.*

Unlike the circumstances in *Evans*, the former Legislative Inspector General would have been aware that any adverse finding against Speaker Madigan could result in a complaint being filed with the Legislative Ethics Commission, followed by the presentation of evidence and testimony to the Commission. Additionally, an adverse finding imposing a fine against Speaker Madigan would very likely result in further litigation through an administrative review action

filed from the decision of the Legislative Ethics Commission. *See* 5 ILCS 430/25-60. Thus, this is not a case like *Evans*, where the work of the administrative agency could never be relevant to a lawsuit. On the contrary, the documents over which Porter requests protection under the work product doctrine can be said to have been made in anticipation of future litigation. *See Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006) (stating a lawsuit need not be underway for work product doctrine to apply "provided the prospect of litigation [is] not remote"). It was the threat of litigation that would result in the event of an adverse finding against Speaker Madigan that forms the basis of the claim of work product protection.

Nor is Plaintiff correct that it is conclusive in this Circuit that a non-party cannot claim protection under the work product doctrine. There are some cases that make comments to that effect, *see, e.g.*, *Evans*, 231 F.R.D. at 310-11, but the Seventh Circuit has not definitively resolved the issue. In *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006), the Seventh Circuit opined that the work product privilege would be applicable to a hypothetical involving a non-party law firm facing a subpoena *duces tecum*. And in *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612 (7th Cir. 2010), the court applied the work product privilege to a non-party law firm's interview notes and legal memoranda prepared in connection to the litigation. These Seventh Circuit cases persuaded the court in *Timmermann's Ranch & Saddle Shop, Inc. v. Pace*, Nos. 11 C 1509 & 13 C 818, 2016 WL 1181792, *2 (Mar. 28, 2016 N.D. Ill.), to apply the work product privilege to a non-party.

The work product protection should apply to Porter notwithstanding the fact that she is a non-party to this lawsuit. Should this Court decide to review the work product doctrine as it applies to the documents identified in the privilege log, Porter requests that it rule that such documents are not subject to disclosure.

IV.  **Plaintiff's new arguments raised for the first time in the Response to the privilege log should be rejected.**

Although Plaintiff's Response was supposed to be limited to discussing waiver of Porter's privilege claims asserted in the privilege log (Doc. 132), he has gone further by addressing the applicability of the confidentiality provisions of the State Ethics Act, 5 ILCS 430/25-90, 25-95, which is at the heart of the dispute between Plaintiff and Porter. But the applicability of the confidentiality provisions of the State Ethics Act has been fully briefed, and this Court has not allowed further briefing. (Docs. 87, 91, 95, 99). Accordingly, Porter will respond only to the new arguments raised by Plaintiff.

*First*, Plaintiff argues that the confidentiality provisions of the State Ethics Act, specifically sections 20-90(b) and 25-95(d), 5 ILCS 430/20-90(b), 25-95(d), protect documents from public disclosure under only the Illinois Freedom of Information Act. Section 25-95(d), provides as follows:

> Unless otherwise provided in this Act, all investigatory files and reports of the Office of the Legislative Inspector General, other than monthly reports, are confidential, are exempt from disclosure under the Freedom of Information Act, and shall not be divulged to any person or agency, except as necessary (i) to the appropriate law enforcement authority if the matter is referred to this Act, (ii) to the ultimate jurisdictional authority, or (iii) to the Legislative Ethics Commission.

5 ILCS 430/25-95(d). By its plain terms, this section applies to much more than requests made under the Freedom of Information Act. To be sure, while section 25-95(d) specifically addresses the Freedom of Information Act, the section also states that, in addition, investigatory files and reports of the Office of the Legislative Inspector General "shall not be divulged to any person or agency" unless one of the three exceptions at the end of section 25-95(d) apply. It would not make sense for the legislature to specifically reference that investigatory files and reports "shall not be divulged to any person or agency" after mentioning the Freedom of Information Act, if it

intended for this section to apply only to the Freedom of Information Act. If Plaintiff's interpretation is accepted, then the language "and shall not be divulged to any person or agency" is superfluous. Yet courts are loath to interpret a statute which makes any part of it superfluous or meaningless. *See United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004). Plaintiff's interpretation should be rejected; section 25-95(d) applies to more than requests under the Freedom of Information Act.

Plaintiff's reliance on *Klaine v. S. Ill. Hosp. Servs.*, 2016 IL 118217, is equally misplaced. There, the Illinois Supreme Court considered confidentiality provisions under the Illinois Medical Studies Act, 735 ILCS 5/8-2101, and the Illinois Health Care Professional Credentials Data Collections Act, 410 ILCS 517/1, stating that certain records were "confidential." The Supreme held that designating records as "confidential," standing alone, does not automatically make them non-discoverable or immune from the court's process. Rather, the Court held that, "[w]hen information is identified as confidential, disclosure will depend on whether applying an evidentiary privilege 'promotes sufficiently important interests to outweigh the need for probative evidence.'" *Klaine*, 2016 IL 118217, ¶24 (quoting *Univ. of Pa. v. Equal Employment Opportunity Comm'n*, 493 U.S. 182, 189 (1990)) (internal quotation marks omitted).

Here, section 25-95(d) provides much more than just a general mandate of confidentiality. It specifically states that the Office of the Legislative Inspector General's investigatory files and reports "*shall not be divulged to any person or agency*," except as provided in the three exceptions, none of which apply to Plaintiff. 5 ILCS 430/25-95(d) (emphasis added). This is specific language intended to protect the investigatory files from disclosure to anyone, including Plaintiff during discovery. Interpreting section 25-95(d) this way

promotes the important interest of protecting the identities of complainants and witnesses, the reputation of the reasonable, yet sometimes mistaken, whistleblowers and the wrongfully accused, and the overall integrity of investigations conducted by the Legislative Inspector General. And there is little need in this case for the evidence that Porter considers non-discoverable under section 25-95(d). The documents submitted *in camera* and identified on the privilege log clearly show that they have nothing to do with this lawsuit, which involves allegations that Defendants interfered with Plaintiff's 2016 efforts to run for elected office, both by highlighting Plaintiff's status as a convicted felon and by registering "fake Hispanics" to dilute the Hispanic vote, allegedly to Plaintiff's detriment. Evidence of any investigation related to Speaker Madigan's alleged involvement with Metra hiring or UIC admissions is irrelevant. In the end, interpreting section 25-95(d) as creating an evidentiary privilege in this case "promotes sufficiently important interests [that] outweigh the need for probative evidence." *See Klaine*, 2016 IL 118217, ¶24.

**V.      Plaintiff's position on specific documents should be rejected.**

Plaintiff asserts that the documents identified in Porter's privilege log can be categorized into six categories, all of which Plaintiff believes should be produced. (Doc. 135, pp. 11-15). Plaintiff's arguments should be rejected.

*First*, Plaintiff asserts that all documents exchanged with Speaker Madigan should be produced because they are no longer confidential. (Doc. 135, pp.11-12; *see also* Privilege Log Documents 91; 97-107; 108-118; 121-127; 210-216; 217-229; 232; 282-309; 310; 311; 440; 802-826). Plaintiff's argument ignores the language of the State Ethics Act. Pursuant to the State Ethics Act, the Legislative Inspector General must provide a summary report to the "appropriate ultimate jurisdictional authority." 5 ILCS 430/25-50(a). Importantly, the report must be sent to

the ultimate jurisdictional authority even if he or she is a subject of the report. In the case of a report concerning a member of the majority party in the House of Representatives, the ultimate jurisdictional authority is the Speaker of the House, who at all relevant times was Speaker Madigan. 5 ILCS 430/1-5.

Moreover, the State Ethics Act provides that "[t]he appropriate ultimate jurisdictional authority … shall respond to the summary report within 20 days, in writing, to the Legislative Inspector General." 5 ILCS 430/25-50(a). After receiving the response from the ultimate jurisdictional authority, the LIG then determines whether to make changes to the summary report and whether to seek to file a complaint or submit the summary report to the Legislative Ethics Commission. 5 ILCS 430/25-50(c)-(c-5). At all times relevant, Speaker Madigan was acting as the "ultimate jurisdictional authority" and, as a result, was entitled to receive the documents sent to him. Thus, in this case, the Legislative Inspector General did not waive or forfeit the protections and confidentiality provisions afforded under the State Ethics Act by exchanging documents with the "ultimate jurisdictional authority", Speaker Madigan.

*Second*, Plaintiff argues that "Plainly Relevant Reports" are not "deliberative" and should be produced. (Doc. 135, p.12). This Court, not Plaintiff, will determine which documents are relevant to this lawsuit. And Porter maintains that the *in camera* review will show that any responsive documents that do exist are irrelevant to this lawsuit.

*Third*, Plaintiff argues that three documents should be produced because Porter failed to meet the disclosure requirements under Fed. R. Civ. Pro. 45(e)(2)(A). Specifically, Plaintiff argues that "Email Correspondence dated September 7, 2012" (169-171), "Summary of Metra Files Included in LIG Summary Report" (119-120); and "Finalized PDF of April 9, 2014 Metra Media Response" fail to give Plaintiff sufficient information to assess the claim of privilege.

Porter maintains that disclosure of the sender, recipient, and subject line information in the September 7, 2012 email correspondence would violate the State Ethics Act, and that the privilege log entry for this particular document is in compliance with this Court's May 2, 2018, instructions. Porter similarly maintains that the "Summary of Metra Files Included in LIG Summary Report" is consistent with this Court's May 2, 2018, instructions. And finally, as evidenced by the privilege log, the "Finalized PDF of April 9, 2014 Metra Media Response" was already disclosed to the parties and, therefore, is moot.

*Fourth*, with respect to the remaining category of documents identified by Plaintiff (*i.e.*, "Plainly Relevant Witness Documents;" "Not Plainly Relevant Witness Documents;" and "Draft Documents"), Porter respectfully relies on the arguments previously raised in her Motion to Quash the subpoena (along with the Reply brief) and the privileges asserted in her Privilege Log. (*See* Docs. 87, 95, 132).

**VI. Should this Court rule that the documents submitted *in camera* are subject to disclosure, Porter respectfully requests that this Court designate the documents as "Attorneys' Eyes Only."**

Finally, if this Court orders Porter to produce any documents, a protective order should be entered to maintain as best as possible the substantial interest in the confidentiality of the Legislative Inspector General's work. A protective order would maintain any documents as confidential and keep private the identities of any witnesses and individuals referenced in the subpoenaed documents who are not parties to the instant action. 5 ILCS 430/25-90. Plaintiff suggests that production can be made as "Attorneys' Eyes Only" (Doc. 135, p.11), and Porter respectfully requests that the documents be designated for production in that manner should this Court deny the Motion to Quash.

## CONCLUSION

Wherefore, non-party movant, Special Legislative Inspector General Julie B. Porter, respectfully requests that this Honorable Court enter an order finding that her privilege log is proper, quashing Plaintiff's subpoena, and granting any further relief that the Court deems reasonable and just.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

/s/ *Sunil Bhave*
Sunil Bhave
Assistant Attorney General
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-2098
sbhave@atg.state.il.us

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the **Reply in Support of the Privilege Log** was served on all counsel of record at the electronic addresses provided through the Court's electronic CM/ECF system, on May 31, 2018.

/s/ *Sunil Bhave*
Sunil Bhave
Assistant Attorneys General
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-2098
sbhave@atg.state.il.us