IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON GONZALES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 16-cv-7915 |
| MICHAEL J. MADIGAN, FRIENDS OF | ) | |
| MICHAEL J. MADIGAN, 13TH WARD | ) | Judge Matthew J. Kennelly |
| DEMOCRATIC ORGANIZATION, | ) | |
| PRISONER REVIEW BOARD, SHAW | ) | |
| DECREMER, SILVANA TABARES, | ) | |
| RAY HANANIA, JOE BARBOSA, and | ) | |
| GRASIELA RODRIGUEZ, | ) | |
| | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTIONS TO STRIKE
FIRST AND SECOND AFFIRMATIVE DEFENSES**

NOW COMES Plaintiff, Jason Gonzales, by and through his attorneys, and for his Reply in support of his Motion to Strike First Affirmative Defense and Motion to Strike Second Affirmative Defense states as follows:

I. **THE AFFIRMATIVE DEFENSES MUST BE STRICKEN BECAUSE THE FIRST AMENDMENT DOES NOT SHIELD DEFENDANTS' WRONGFUL ACTS.**

Defendants' scheme is not subject to First Amendment protection for one simple reason: "The First Amendment does not shield fraud." *Illinois ex rel. Madigan v. Telemarketing Associates,* 538 U.S. 600, 612 (2003).

The Supreme Court has recognized that "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Communist Party of Indiana v. Whitcomb*, 414 U. S. 441, 448, 94 S. Ct. 656, 661, 38 L. Ed. 2d 635 (1974). Further, "[n]either the right to associate nor the right to participate in political activities is absolute in any event." *U.S. Civil Serv. Comm'n v.*

*Nat'l Ass'n of Letter Carriers, AFL–CIO,* 413 U.S. 548, 567, 93 S. Ct. 2880, 37 L.Ed.2d 796 (1973).

In the case at bar, Defendants can hardly be heard to assert that a "First Amendment right" to engage in wrongful conduct supersedes Plaintiff's right of equal protection under the state's interest in preventing sham candidacies. Fraudulent candidacies are not a legitimate exercise of the First Amendment, in that "a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Bullock v. Carter,* 405 U.S. 134, 145, 92 S. Ct. 849, 857, 31 L. Ed. 2d 92 (1972), citing *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S. Ct. 1970, 1976, 29 L. Ed. 2d 554 (1971).

This Court has already ruled that the allegations of the Second Amended Complaint state claims for violation of civil rights statutes. See *Smith v. Cherry*, 489 F.2d 1098 (7th Cir. 1973). For an affirmative defense the Defendants must assert matters that intervene to defeat the claim.

> [T]he basic concept of an affirmative defense is an *admission* of the facts alleged in the complaint, coupled with the assertion of some other reason defendant is not liable."

*Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 02 C 2523, 2003 WL 1720073, at *3 (N.D. Ill. Mar. 31, 2003), quoting, *Instituto Nacional de Comercializacion Agricola v. Cont'l Ill. Nat'l Bank & Trust Co.,* 576 F. Supp. 985, 989 (N.D.Ill.1983)(courts' emphasis). Defendants have offered in their First and Second Affirmative Defenses only empty legal conclusions devoid of facts that cannot meet the test of law. Moreover, Plaintiff alleges that the Defendants are state actors, not individual citizens, which should preclude the assertion of the First Amendment. The defenses must be stricken.

### A. The First Affirmative Defense Does Not Assert Legitimate, Protectable Participation in the Political Process.

Defendants assertion that a judgment would "infringe upon" their right "to participate in the political process to either support or defeat a political candidate" is a farce. The utterly bogus nature of this phrasing is obvious from very essence of the scheme, which was to place on the ballot candidates *opposing* Defendant Madigan. It is revealing that the two sham candidates did not lift a finger to campaign, and Defendants did not continue their "support" at all after the two candidates were placed on the ballot, even though neither sham candidate withdrew. Defendants did not engage in a good faith exercise of rights of political speech.

Defendants' claim that their "intent" was only to defeat a "plant" to protect their party is not only specious, as the real intent is obvious, it is no defense under law first because Defendants specifically intended the result that constituted a deprivation, *i.e.,* the existence of two sham candidates on the ballot to the detriment of Plaintiff.

> A less easily recognizable though no less clear-cut violation of 42 U.S.C. 1983 occurs where there is no "specific intent" to violate a constitutional right but where the *act* itself and its *result* were intended under color of law sans improper motive. Though ulterior motive is absent, the acts will "be read against the background of tort liability that makes a man responsible for the natural consequences of his actions. In such a case the elements of the offense are a violated constitutional right, a conscious act, an intended result and a result that should have been contemplated under the common law tort doctrine of foreseeability. Good faith or proper motive is no defense.

*Jenkins v. Meyers*, 338 F. Supp. 383, 388-9 (N.D.Ill 1972)(citations omitted). In the case at bar the Defendants engaged in a calculated scheme to place to sham candidates on the ballot to the detriment of Plaintiff. Given that they acted with intent to create the result that was a constitutional deprivation towards Plaintiff, their motive is irrelevant, and no defense.

In a separate argument paralleling those in pending summary judgment proceedings, Defendants argue that the Seventh Circuit precedent of *Smith v. Cherry*, 489 F.2d 1098 (7th Cir.

3

1973) applies only to factually identical fact patterns. To the contrary, a later Seventh Circuit case affirmed the principle of *Smith* that a "deception on the face of the ballot . . . is impermissible" without limiting *Smith* to its facts. *Rudisill v. Flynn*, 619 F.2d 692 (7th Cir. 1980). To the extent Defendants argue against application of *Smith* or raise other arguments contained in their recent summary judgment filing, they are simply contesting Plaintiff's case, not asserting a new and affirmative matter. Plaintiff adopts the arguments of his Response to Motion for Summary Judgment on the applicability of *Smith* to this case.

Defendants' cases cited in support of the defenses are inapposite. In the Response, Defendants analogize a judgment against them to State imposition of a "loyalty oath" for candidates filing to be on a ballot. The analogy fails. In the case relied on, *Communist Party of Indiana v. Whitcomb*, 414 U. S. 441, 448, 94 S. Ct. 656, 661, 38 L. Ed. 2d 635 (1974), the Supreme Court specifically decided the case based on "advocacy" of political or social positions. Defendants engaged in no such advocacy of beliefs, policies or positions in subverting the ballot of the 2016 Illinois Democratic Primary. Plaintiff readily acknowledges that "debate on the qualifications of candidates is integral to the operation of the system of government established by our Constitution", *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 223, 109 S. Ct. 1013, 1020, 103 L. Ed. 2d 271 (1989), but a conspiracy to place sham candidates on a ballot to fool voters is not "debate." It was deception on the face of the ballot and tantamount to election fraud.

Defendants arguments also fail because their acts contained "non-speech" elements. In *U. S. v. O'Brien*, 391 U.S. 367, 376, 88 S. Ct. 1673, 1678–79, 20 L. Ed. 2d 672 (1968), the defendant burned his draft card in public on courthouse steps in violation of federal law. His stated motive was to "influence others to adopt his antiwar beliefs", and "reevaluate their

4

positions with Selective Service, with the armed forces, and reevaluate their place in the culture of today." 391 U.S. at 370. The Supreme Court held his conduct to be outside of the protection of the First Amendment:

> However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

391 U.S. at 376, 88 S. Ct. at 1678–79. Infringement to prevent sham candidates is just such a state interest, "a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Bullock v. Carter,* 405 U.S. 134, 145, 92 S. Ct. 849, 857, 31 L. Ed. 2d 92 (1972), citing *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S. Ct. 1970, 1976, 29 L. Ed. 2d 554 (1971). At best, Defendants acts were a combination of speech and non-speech elements. The state interest in combating sham candidacies therefore controls over the non-speech aspects of Defendants acts.

###    B.    **The Second Affirmative Defense Does Not State a Legitimate Interest in Ballot Access Held by the Sham Candidates.**

The sham candidates, who did nothing to campaign, are poor candidates for claiming "ballot access." The requirement of a "compelling state interest" to overcome the First Amendment has not generally been required by the Supreme Court to in analyzing restrictions on ballot access. *Bullock v. Carter*, 405 U.S. 134, 142-143, 92 S .Ct. 849, 31 L.Ed.2d 92 (1972). The two keys that trigger higher scrutiny. The first is when the extent and nature of their impact on voters is substantially limited. *E.g., Harper v. Virginia Board of Education*, 383 U.S. 663, 86 S. Ct. 1079, 16 L.Ed.2d 169 (1966). A second is when the restriction on access has an intended or indirect impact of discrimination in favor of one group over another. *E.g.,*

5

*Bullock, supra*, where a very high filing fee improperly favored wealthy candidates over poorer ones.  Neither aspect is present in the case at bar.

Without strict scrutiny, Defendants argument falls before the state's interest in equal protection to prevent sham candidacies.  In *Operation King's Dream v. Connerly*, 06-12773, 2006 WL 2514115 (E.D. Mich. Aug. 29, 2006), the court found that a public interest group obtained signatures in support of an initiative petition to place an anti-affirmative action proposal on a ballot by telling voters that they were signing a petition supporting affirmative action. While holding that the action did not constitute a violation of the cited statute, the Voting Rights Act, the court rejected the argument that the First Amendment was a defense to the fraudulent conduct in seeking ballot access, citing *Illinois, ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 123 S. Ct. 1829, 155 L. Ed. 2d 793 (2003). With its factual parallels, the case stands as precedent that practiced deceit in the ballot access process is not protected by the First Amendment.

In sum, Defendants cannot hide behind the First Amendment right of political expression because their expression was not even speech, was illegitimate and is completely outweighed by the governmental interest in preventing fraudulent candidacies.

## II.     DEFENDANTS HAVE FAILED TO OVERCOME THE BLATANT PLEADING DEFICIENCIES OF THE AFFIRMATIVE DEFENSES.

In the Response, Defendants do not contest Plaintiff's argument in the Motion that they engaged in precisely the conclusory legal allegation that is not allowed under the law of this Circuit.  See, *United States v. 416.81 Acres of Land*, 514 F.2d 627 (7th Cir. 1975).  Only after discovery had begun did Denfeants give any detail, issuing subpoenas in a claimed attempt to justify their actions on ground that Plaintiff was a "Republican plant."   As late as a July 5, 2018

6

hearing in open court, the Court still struggled to get a cogent explanation of defense, since no facts and no detail is contained in the pleading:

> THE COURT: So I want to go back to how you explained it. So the First Amendment association defense - - and I'm not saying that this is your only defense, obviously. People are entitled to have multiple defenses. This wouldn't be a defense that you didn't do it, it's a defense that you did it and we had a darn good reason to because it was - - it was basically - - it was basically a mole from the other side trying to infiltrate the Democratic primary. I'm being - - I'm being rather colorful about that, let's just say.
>
> MR. RIZZO: I think that is one strategy that we have.

(Motion to Strike Affirmative Defense, Ex, A, p. 19.)

What is striking from the exchange is twofold. The first is obvious: Defendants' pleading states nothing about Plaintiff being a "Republican plant" nor does it offer any factual allegations upon which Defendants rely. The second is more insidious, as in the above exchange defense counsel never limited the defense contentions at trial to the parameters of the Court's summarization. Second, Defense counsel responded only that the Court's summarization was "one strategy that we have." By using conclusory legal allegations devoid of facts, Defendants' seek *carte blanche* to assert any facts or theory they choose at trial to smear the Plaintiff. Such gamesmanship is antithetical to F.R.Civ. P. Rule 8(c). "The purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Yash Raj Films (USA) Inc. v. Atl. Video*, 03 C 7069, 2004 WL 1200184, at *2 (N.D. Ill. May 28, 2004). Plaintiff cannot effectively rebut at theories of First Amendment protection not identified prior to trial.

The Defenses are procedurally indefensible and must be stricken as a matter of law.

### III. DEFENDANTS' TIMELINESS ARGUMENT HAS BEEN REJECTED BY SEVENTH CIRCUIT PRECEDENT AND THIS COURT.

Defendants' argument of timeliness has been rejected in this Circuit. In *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388 (7th Cir. 1991), the District Court considered a Motion to

Strike and affirmative defense well beyond the 21-day period of Rule 12(f). The Seventh Circuit rejected the claim that the motion could not be considered:

> Courts have read Rule 12(f) to allow a district court to consider a motion to strike at any point in a case, reasoning that it is considering the issue of its own accord despite the fact that its attention was prompted by an untimely filed motion.

944 F.2d at 1399–1400 (citations omitted.) *Williams* was repeatedly relied upon by this Court in considering Rule 12(f) motions filed more than 21 days after the relevant Answer. *Leibowitz v. Bowman Int'l, Inc.,* 15 C 3021, 2016 WL 6804580 (N.D. Ill. Nov. 17, 2016)(Kennelly, J.); *Senne v. Vill. of Palatine*, 10 C 5434, 2013 WL 68703 (N.D. Ill. Jan. 4, 2013)(Kennelly, J.). In accord, *ADT Sec. Services, Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 973 F. Supp. 2d 842 (N.D. Ill. 2014)(Shadur, J.) (in reliance on *Williams* a motion to strike affirmative defenses considered by the court despite being filed after 3½ years of litigation and two appeals).

In this case, in status call on August 20, 2018, Plaintiff's counsel informed the Court Plaintiff intended to file a motion to challenge the Affirmative Defenses based on the First Amendment. The Court's response was that the Motion needed to be filed "quickly." The full array of defense counsel present made no objections. On September 5, 2018 Plaintiff filed the Motions at bar. (Dkt. Nos. 182, 183.) At initial presentation on September 12, 2018, the Court continued the Motions to October 16, 2018, at which time the motions were continued generally to dispositive motion phase of the case. Plaintiff filed a new Notice of Motion for the Motions on June 6, 2019, the deadline for filing dispositive motions in this case. (Dkt. No. 279.)

Additionally, the Affirmative Defenses are themselves bereft of any factual allegations that would give Plaintiff notice of the exact theory being espoused. Only when Plaintiff challenged a series of subpoenas to various persons including then-Governor Bruce Rauner did the defense finally reveal in open court that its theory of the defenses, which turned out to be the

assertion that Plaintiff was a "Republican plant." See Transcript of July 5, 2018, attached to the Motion to Strike First Affirmative Defense as Exhibit A.

This Court should hear the Motion on ground that it can resolve a key issue in advance of trial, namely Defendants' claim that their actions are protected by the First Amendment. In *United States v. 416.81 Acres of Land*, 514 F.2d 627 (7th Cir. 1975), an eminent domain case, the district court struck *sua sponte* several affirmative defenses. The Court of Appeals upheld the order, stating:

> Although it is said that a motion to strike a defense as insufficient is "not favored" by the courts because of its potential as a dilatory tactic, it is nonetheless a useful and appropriate tool for weighing the legal implications to be drawn from uncontroverted facts.

514 F.2d at 631. Similarly, in *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989), a lender to an equipment seller filed suit against debtors who borrowed funds to pay a prospective lease for dairy farm equipment. The district court struck some 14 affirmative defenses. Citing U.S *v. 416.81 Acres,* the Seventh Circuit upheld the order, stating:

> Midwhey places great reliance on the general rule that motions to strike are disfavored. This is because motions to strike potentially serve only to delay. But where, as here, motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay.

883 F.2d at 1294. Similarly, the motions at bar seek resolution in advance of trial of a key legal assertion of Defendants: that even if proven, no claim exists because the actions alleged by Plaintiff are protected by the First Amendment. The motions are not time barred.

WHEREFORE, Plaintiff, JASON GONZALES, respectfully requests that this Honorable Court grant his Motion to Strike First Affirmative Defense and Motion to Strike Second Affirmative Defense in this action.

9

Respectfully submitted,

JASON GONZALES

By:     /s/ Stephen F. Boulton

Anthony J. Peraica ARDC No. 6186661
Stephen F. Boulton  ARDC No. 6186906
ANTHONY J. PERAICA & ASSOCIATES, LTD.
5130 S. Archer Avenue
Chicago, Illinois 60632
773-735-1700
sboulton@peraica.com