IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON GONZALES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-CV-07915 |
| | ) | |
| MICHAEL J. MADIGAN, FRIENDS OF | ) | Judge: Matthew F. Kennelly |
| MICHAEL J. MADIGAN, 13TH WARD | ) | |
| DEMOCRATIC ORGANIZATION, | ) | |
| PRISONER REVIEW BOARD, SHAW | ) | |
| DECREMER, SILVANA TABARES, RAY | ) | |
| HANANIA, JOE BARBOSA, AND | ) | |
| GRASIELA RODRIGUEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' JOINT RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1(B)(3)(C) ADDITIONAL STATEMENT OF UNDISPUTED FACTS

Defendants Michael J. Madigan, Friends of Michael J. Madigan ("Friends"), 13th

Ward Democratic Organization ("13th Ward"), Shaw Decremer, Silvana Tabares, Joe

Barbosa, and Grasiela Rodriguez (collectively "Defendants") respectfully submit their

joint response to Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts.

## GENERAL OBJECTIONS

Local Rule 56.1(b)(3)(C) provides that a party opposing a motion for summary

judgment should file a statement consisting of "any additional facts that require denial

of summary judgment, including references to affidavits, parts of the record and other

supporting materials relied upon." *See* N.D. Ill. L.R. 56.1. "The Seventh Circuit has

1

repeatedly held that a district court is entitled to expect strict compliance with Local Rule 56.1." *See Barth v. Village of Mokena*, 2006 WL 862673, at *1 (N.D. Ill. 2006).

In this case, Plaintiff's Statement of Additional Facts contains facts that mischaracterize or misstate the evidence upon which they purport to rely and therefore, should be stricken. *See Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely); *De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.). Further, Plaintiff's Statement of Additional Facts contains "irrelevant information, legal arguments, and conjecture," and therefore, should be stricken. *See Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

## RESPONSES AND OBJECTIONS

### *State Action*

108.    Michael Madigan is the Speaker of the Illinois House of Representatives, State Representative for the 22nd District in Illinois, Committeeman for the 3rd Congressional District, Committeeman for the 113th Ward in the City of Chicago, Chairman of the Democratic Majority, Chairman of the Democratic Party of Illinois, Chairman of Friends of Michael J. Madigan, and Chairman of the 13th Ward Democratic Organization. Exhibit 43, Madigan Dep. P. 38-39, 70-73, 97; Exhibit 71. He is part of the leadership for the Illinois Democratic Caucus, Illinois House Democratic Caucus, member of the State Central Committee. Exhibit 43, Madigan Dep. P. 72, 98. According to the Illinois Board of Elections, Michael Madigan was also the Chairman of the Illinois House Democratic Majority, Speaker Madigan's Committee to Elect Viverito, and Citizens to Elect Frank Olivo, which are all now closed. Exhibit 71.

2

**OBJECTIONS: Defendants object to Exhibit 71 as it was not produced or disclosed during discovery, and therefore, Plaintiff violated Rules 26(a) and 26(e), implicating Rule 37(c)(1), which automatically and mandatorily excludes such evidence. For these reasons, Plaintiff may not rely on Exhibit 71 to prove the truth of the matters set forth therein.**

**RESPONSE: Without waiving above objections, Defendants admit.**

109.    In addition to the political roles that Michael Madigan holds, he has been the Representative for the 22nd District since 1971 and been Speaker of the Illinois House of Representatives from 1983 to 1985 and then again from 1997 to the present. Exhibit 43, Madigan Dep. P. 34; Exhibit 85, Madigan biography. Madigan uses the numerous roles he holds to influence Democrats at all levels of government. Exhibit 43, Madigan Dep. P. 79-80.

**OBJECTIONS: Plaintiff's statement that "Madigan uses the numerous roles he holds to influence Democrats at all levels of government" is "misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C)."** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.*, **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). Defendants also object to the word "influence" as unreasonably vague, and ambiguous. Defendants further object to Exhibit 85 as it was not produced or disclosed during discovery, and therefore,**

3

Plaintiff violated Rules 26(a) and 26(e), implicating Rule 37(c)(1), which automatically and mandatorily excludes such evidence. For these reasons, Plaintiff may not rely on Exhibit 85 to prove the truth of the matters set forth therein.

<u>RESPONSE:</u> Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Defendant Madigan has been the Representative for the 22nd District since 1971 and has been Speaker of the Illinois House of Representatives from 1983 to 1985 and then again from 1997 to the present. Defendants dispute that Defendant Madigan uses the numerous roles he holds to influence Democrats at all levels of government. The evidence cited does not support this statement, nor does the record otherwise support such a statement. Defendant Madigan testified that as the Chairman of the Democratic Party of Illinois, he is "involved with the Democratic Party of Illinois . . . . [to] work with different candidates [Democratic candidates for State Offices] . . . to help them get elected. *See* Madigan's Deposition, Plaintiff's Exhibit ("Ex.") 43, at 79:16-80:5. He also testified, as Chairman of the Democratic Party of Illinois, that he also works with "candidates for the Illinois House, candidates for the Illinois Senate, [and] candidates for the United States Congress." Defendant Madigan testified that his role as the 13th Ward Committeeman "is to work on behalf of Democratic candidates in the general election; to distribute their literature; to prepare a sample ballot, and to distribute the sample ballot." *Id.* at 42:24-43:7. As the 13th Ward Committeemen, Defendant

4

Madigan also testified that "what he attempts to do [for the 13th Ward] is to persuade and encourage governments, governmental bodies to provide an appropriate level of service to the people that live in the 13th Ward . . . . [a]nd so citizens of the 13th Ward will come to Madigan's office and ask for assistance in terms of their interaction with governments and we attempt to help them." *Id.* at 43:23-44:8. And, as a member of the State Committee, "[m]y responsibility would be to be a member of the State Central Committee of the Democratic Party . . . . [and] [i]f there were votes taken with the State Committee, I would be expected to participate in the votes." *Id.* at 69:10-24.

110. Michael Madigan admitted that the 13th Ward Democratic Organization, of which he is Chairman, provides the same services offered by the Alderman's office. Exhibit 43, Madigan Dep. P. 44-46.

<u>OBJECTIONS:</u> **Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

<u>RESPONSE:</u> **Disputed. Defendant Madigan never testified that the 13th Ward Democratic Organization provides governmental services nor does the record otherwise support such a statement. Defendant Madigan testified that the 13th Ward**

Democratic Organization works "on behalf of Democratic candidates in the general election; to distribute their literature; to prepare a sample ballot, and to distribute the sample ballot." *See* Madigan's Deposition, Plaintiff's Ex. 43, at 42:24-43:7. Defendant Madigan also testified that "what [the 13th Ward Democratic Organization] attempts to do [for the 13th Ward] is to persuade and encourage governments, governmental bodies to provide an appropriate level of service to the people that live in the 13th Ward . . . . [a]nd so citizens of the 13th Ward will come to Madigan's office and ask for assistance in terms of their interaction with governments and we attempt to help them." *Id.* at 43:23-44:8.

111. Madigan testified that in the 13th Ward, what he attempts to do is to persuade and encourage governments, governmental bodies to provide an appropriate level of service to the people that live in the 13th Ward. And so citizens of the 13th Ward will come to Madigan's office and ask for assistance in terms of their interaction with governments and we attempt to help them. Exhibit 43, Madigan Dep. P. 44.

**OBJECTIONS:** **Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

6

**RESPONSE:** **Without waiving above objections, Defendants partially admit and partially dispute. Defendant Madigan testified that in his role as the 13th Ward Committeeman that "what he attempts to do [for the 13th Ward] is to persuade and encourage governments, governmental bodies to provide an appropriate level of service to the people that live in the 13th Ward . . . . [a]nd so citizens of the 13th Ward will come to Madigan's office and ask for assistance in terms of their interaction with governments and we attempt to help them."** *See* **Madigan's Deposition, Plaintiff's Ex. 43, at 43:23-44:8.**

112.    Alderman Martin (Marty) Quinn, in addition to being the Alderman for the 13th Ward in the City of Chicago, is also a member of the 13th Ward Democratic Organization since 1997. Exhibit 70, Marty Quinn Dep. P. 14-15, 17.

**OBJECTIONS:** **Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.*, **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**RESPONSE:** **Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Marty Quinn, in addition to being the Alderman for the 13th Ward in the City of Chicago, is currently also a volunteer for**

the 13th Ward Democratic Organization. *See* Marty Quinn's Deposition, Plaintiff's Ex. 70, at 81:12-16. Defendants also admit Marty Quinn was a volunteer with the 13th Ward Democratic Organization in 1997. *Id.* at 16:24-17:6. Marty Quinn never testified that he was consistently a member of the 13th Ward Democratic Organization since 1997 nor does the evidence otherwise support such a statement. Marty Quinn testified that his first involvement in the political process was in 1997 as a volunteer with the 13th Ward Democratic Organization, and that after he worked on Brosnahan's 1998 election as a member of the staff, and then on Rick Daley's 1999 election as a volunteer coordinator, and then after, "went to work at the 13th Ward at some point." *Id.* at 16:24-18:21.

113.     The offices and personnel used by Michael Madigan for governmental and political functions is distinguishable only as to who pays for the offices and office supplies and time of the year or time of the day. Exhibit 43, Madigan Dep. P. 99-104.

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

8

**RESPONSE:** Disputed. Defendant Madigan never testified that "[t]he offices and personnel used by Michael Madigan for governmental and political functions is distinguishable only as to who pays for the offices and office supplies and time of the year or time of the day," nor does the record otherwise support such a statement. Defendant Madigan testified that "there are certain legal requirements on separation and that's what I would abide by" and "I'm not going to engage in any inappropriate or illegal activity in terms of blending." *See* Madigan's Deposition, Plaintiff's Ex. 43, at 99:12-22.

### *Candidate Confusion*

114. Liam Gallagher confused Rodriguez with Jason Gonzales. Exhibit 75, Gallaher Dep. P. 20-21.

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

304105952v1 1002097

**RESPONSE:** Disputed. Mr. Gallagher never testified that he confused Grasiela Rodriguez with Jason Gonzales at any point during the election. During his deposition, he accidentally referred to Jason Gonzales as "Rodriguez," but quickly thereafter testified "[t]hat's it Jason Gonzales, that's the one, yeah. It's not Rodriguez. It's Gonzales, because he came by the precinct I was out in front of and I met him." *See* Mr. Gallagher's Deposition, Plaintiff's Ex. 75, at 20:24-21:3. Defendants further aver that Attorney Peraica even referred to Plaintiff as "Jason Rauner," and after, stated "that was a misstatement on my part." *See* Madigan's Deposition, Plaintiff's Ex. 43, at 253:12-17.

115. Rodriguez and Barboza being on the ballot effected the outcome of the election. As put by Defendants' expert Allan Lichtman, "[o]bviously, even if they got 1 vote, you know, in the technical sense they would effect the election." Exhibit 68, Lichtman Dep. P. 67.

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

**RESPONSE:** Disputed. Defendants Barbosa and Rodriguez's presence on the ballot

10

did not affect the outcome of the election. *See* Affidavit of Brown Miller Group, Defendants' Ex. 27, at MJM 7817; Brown Miller Group June 17, 2016, Post Election Analysis, Defendants' Ex. 28, at MJM 947-68; Rule 26(a)(2) Expert Report of A. Lichtman, Defendants' Ex. 29, at 41-51. Defendants further aver that Dr. Lichtman, Defendants' Rule 26(a)(2) expert, opined that the presence of Defendants Barbosa and Rodriguez on the ballot did not affect the outcome of the 2016 Primary Election because, even if all of the votes cast for them were given to Gonzales, Gonzales would not have beaten Madigan. *See* Rule 26(a)(2) Expert Report of A. Lichtman, Defendants' Ex. 29, at 43.

### *Madigan 2016 Election Campaign*

116.    The campaign manager for the 2016 primary for Michael Madigan was Alderman Marty Quinn. Exhibit 42, Decremer Dep. P. 69, 139; Exhibit 43, Madigan Dep. P. 59-60. Madigan had some control over his re-election campaign in March 2016 but also delegate [sic] efforts to Marty and Kevin Quinn. Exhibit 43, Madigan Dep. P. 138-139.

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

11

**RESPONSE:** **Without waiving above objections, Defendants partially admit and partially dispute. The evidence cited does not support, nor does the record other support, that there was a designated campaign manager or that Defendant Madigan delegated tasks to Kevin Quinn. Defendant Madigan testified specifically that "[t]here was no designated campaign manager," and never testified that he delegated tasks to Kevin Quinn.** *See* **Madigan's Deposition, Plaintiff's Ex. 43, at 59:6-8. Defendants admit that Marty Quinn acted as the campaign manager for the 2016 primary for Michael Madigan.** *Id.* **Defendants admit also that Defendant Madigan had some control over his re-election campaign and that that he delegated tasks to Marty Quinn.** *Id.* **at 138:24-139:1.**

117.    Liam Gallagher, a circulator for Michael Madigan's 2016 campaign, recognized Jason Gonzales to be Michael Madigan's main opponent and "he was putting up a good campaign at the time." Exhibit 75, Gallagher Dep. P. 23.

**RESPONSE: Admit.**

118.    It is Michael Madigan's practice to ask all Democratic Committeemen who are part of the 22nd Representative District to provide him with support at election time. Exhibit 43, Madigan Dep. P. 41, 194-195. Alderman Burke supported Madigan for State Representative. Exhibit 43, Madigan Dep. P. 40, 42. Michael Madigan does not remember if he reached out to political allies to get additional candidates, but he does recall talking to Charles Hernandez about the election. Exhibit 43, Madigan Dep. P. 153-156.

**OBJECTIONS:** **Plaintiff's statement that "Michael Madigan does not remember if he reached out to political allies to get additional candidates" is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule**

304105952v1 1002097

56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

RESPONSE: Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that "in the ordinary course," Defendant Madigan would ask all Democratic Committeemen who are part of the 22nd Representative District "to assist him." *See* Madigan's Deposition, Plaintiff's Ex. 43, at 41:14-18. Further, Defendants admit that Alderman Burke supported Madigan for State Representative, and that Defendant Madigan recalls speaking to Charles Hernandez about the election. The evidence cited does not support, nor does the record otherwise support, the statement that "Michael Madigan does not remember if he reached out to political allies to get additional candidates." Defendant Madigan testified that he did not ask anyone including Charles Hernandez to ask Defendants Barboza or Rodriguez to run in the 22nd District. *Id.* at 159:14-160:14. Defendant Madigan did not have "anything to do with the recruitment of Grasiela Rodriguez or Barbosa to run in" the 2016 Primary Election. *Id.* at 156:2-7; 159:21-159:23; 160:11-160:14.

304105952v1 1002097

119.    The mailings used in the 2016 primary were likely prepared by Michael Madigan's staff in Springfield. Exhibit 43, Madigan Dep p. 107-108.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**RESPONSE: Disputed. The evidence cited does not support such a statement, nor does the record otherwise support it. Defendant Madigan testified, in response to who prepared the mailing, that "I don't know . . . . I don't know," and that he didn't know if it was done in-house when asked who designed the mailings used in the 2016 primary. *See* Madigan's Deposition, Plaintiff's Ex. 43, at 107:22-23; 108:20-109:1.**

120.    Michael Madigan had numerous Sunday morning telephone conferences with regard to his re-election in 2016 that involved Marty Quinn, Will Cousineau, Tim Mapes, Steve Brown, and others. Exhibit 43, Madigan Dep. P. 144-147.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South***

14

*Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

RESPONSE: **Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Defendant Madigan had telephone conferences in relation to the 2016 primary and that Marty Quinn, Will Cousineau, and Tim Mapes participated in the calls.** *See* **Madigan's Deposition, Plaintiff's Ex. 43, at 144:4-146:22. Defendants also admit that Steve Brown at times would participate.** *Id.* **at 146:23-147:1. The evidence cited does not support that "others" participated in the calls, or that Steve Brown always participated in the calls. Defendant Madigan testified that "[a]t times he [Steve Brown] would" participate in the calls and that Marty Quinn, Will Cousineau, and Tim Mapes participated in the calls.** *Id.* **at 146:23-147:1-2.**

### Michael Madigan

121.    Michael Madigan recognizes Alaina Hampton as a "former employee of our political committee". Exhibit 43, Madigan Dep. P. 20. Ms. Hampton, while working as Illinois House Speaker Michael Madigan's legislative staff, was physically working at Representative Silvana Tabares' 21 District Office from March 2013 until April 2014. Exhibit 72, Hampton Federal Complaint, Exhibit A.

OBJECTIONS: **Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is**

304105952v1 1002097

improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Further, Defendants object to Exhibit 72 on the grounds of hearsay, and lack of foundation. *Shrader v. Palos Anesthesia Assocs.*, No. 01 C 2450, 2004 U.S. Dist. LEXIS 19194, at *13 (N.D. Ill. Sep. 24, 2004) ("Hearsay evidence is not admissible evidence and therefore cannot be used to create a genuine issue of material fact.) (citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994)). Exhibit 72 appears to be statements from Ms. Hampton, and is inadmissible hearsay, and Plaintiff has not demonstrated the foundation for the authenticity or reliability of any of the statements therein. Exhibit 72 was also not produced or disclosed during discovery, and therefore, Plaintiff violated Rules 26(a) and 26(e), implicating Rule 37(c)(1), which automatically and mandatorily excludes such evidence. For all these reasons, Plaintiff may not rely on Exhibit 72 to prove the truth of the matters set forth therein.

RESPONSE: Disputed. Defendants admit only that Defendant Madigan, in response to a question about his involvement in any other civil lawsuits, testified that he is involved in a lawsuit by Ms. Hampton, in which she alleges that she is a former

16

employee of a political committee. *See* **Madigan's Deposition, Plaintiff's Ex. 43, at 20:21-24. The evidence cited, and the record does not otherwise support, that "Ms. Hampton, while working as Illinois House Speaker Michael Madigan's legislative staff, was physically working at Representative Silvana Tabares' 21 District Office from March 2013 until April 2014." Defendant Tabares testified that Ms. Hampton "went door to door state walking" and "helped organize community events for the residents . . . did press for me . . . [and] helped with constituent work" and that she worked in Ms. Tabares' legislative district office at 25th and Millard, and that her title was "In District for the 21st District."** *See* **Tabares' Deposition, Plaintiff's Ex. 57, at 54:20-55:19; 58:3-7.**

122.    Madigan's power and influence resulted in the resignation of Tim Mapes in both his governmental job and political appointments. Exhibit 43, Madigan Dep. P. 80-81; Exhibit 92, Mapes Dep. P. 19-20, 23, 48. Madigan also unilaterally terminated Kevin Quinn from his position as precinct captain coordinator. Exhibit 43, Madigan Dep. P. 85-86.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.*, **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

304105952v1 1002097

**RESPONSE:** Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Defendant Madigan told Mr. Mapes to submit his resignation, and Mr. Mapes thereafter resigned. *See* Madigan's Deposition, Plaintiff's Ex. 43, at 80:24-81:1. Defendants also admit that Kevin Quinn was "terminated" from the 13th Ward Democratic Organization by Defendant Madigan. *Id.* at 85:22-23. The evidence cited, and the record otherwise, does not support the statement that Mr. Mapes' resignation was the result of "*Madigan's power and influence*." Defendant Madigan testified only that he "told him [Mr. Mapes] to submit his resignation," and that he accepted his resignation. *See Id.* at 80:19-81:5. Defendants dispute Kevin Quinn held the position of "precinct captain coordinator." *See* Alderman Quinn's deposition, Plaintiff's Ex. 70, at 70:4-8.

123.    Madigan makes the final determination as to who becomes a precinct captain in the 13th Ward. Exhibit 43, Madigan Dep. P. 83-84. Precinct captains are paid bonus money for performing political work. Exhibit 43, Madigan Dep. P. 89.

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

18

**RESPONSE: Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Defendant Madigan makes the final determination upon recommendation of Alderman Quinn, and "we listen to everybody."** *See* **Madigan's Deposition, Plaintiff's Ex. 43, at 83:22-84:4. Defendants also admit that the 13th Ward Democratic Organization pays precinct captain bonus money for political work upon a recommendation by Alderman Quinn.** *Id.* **at 83:22-84:7; 89:19-22.**

124.    Friends of Michael J. Madigan and the financial payments stemming from it are controlled by Michael Madigan. Exhibit 43, Madigan Dep. P. 92. Madigan also has sole discretion over the funds in the House Democratic Majority. Exhibit 43, Madigan Dep. P. 126.

**RESPONSE: Without waiving above objections, Defendants partially admit and partially dispute. Financial payments of Friends of Michael J. Madigan and the House Democratic Majority are controlled by Defendant Madigan, along with the Treasurer of the Committee, but the check book is not controlled by Defendant Madigan.**

125.    Michael Madigan testified: "You can understand that many people come to me asking for recommendations for employment, and I render recommendations for employment in both the private and public sector, I do it in both. But there's a test that people have to meet. They have to be, to my knowledge, they have to be honest hard-working people with integrity. And if they are, I'll recommend to a potential employer the best of my knowledge and experience with this person, this would be a good worker for your office, a good worker for your business whatever it may be." Exhibit 43, Madigan Dep. P. 187-188. Michael Madigan admitted that he has recommended members of the 13th Ward Democratic Organization for employment, including but not limited to Ed Tully who works for Cook County, Thomas Siska who worked for the

304105952v1 1002097

Secretary of State as Chief Deputy, Jennifer Solski who works for Alderman Quinn, Erin Foley who works for the Secretary of State, Hugo Chavez who works for the City of Chicago, George Barrera who works for CHA, David Foley who works for the Secretary of State, and Susan Moran. Exhibit 43, Madigan Dep. P. 174-180, 185-187. Madigan could not recall if he recommended the following 13th Ward members for employment but he would recommend them—Collin Gruca, Kyle Gruca, Ed Moody, Fred Moody, and James Gleffe. Exhibit 43, Madigan dep. P. 188-192.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.*, **2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**RESPONSE: Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Defendant Madigan testified as quoted in Paragraph 125, and that he has recommended members of the 13th Ward Democratic Organization for employment. Defendants admit that Defendant Madigan testified that his memory is that he recommended Ed Tully for his current job with Cook County, and Thomas Siska for job as secretary of state as a Chief Deputy.** *See* **Madigan's Deposition, Plaintiff's Ex. 43, at 175:3-176:8. Defendant Madigan testified that he recommended George Barrera to the CHA, and David Foley to the Secretary of State.** *Id.* **at 185:21-186:23. Defendants admit that Defendant Madigan testified that**

he does not remember, but may have, recommended Eric Foley for employment with the Secretary of State and Hugo Chavez for his position with the City of Chicago, and that either he did or he would recommend Susan Moran with a governmental unit. *Id.* at 176:17-177:4; 179:14-3; 187:5-15. Defendant Madigan could not recall if he recommended the following 13th Ward members for employment but he would recommend them—Collin Gruca, Kyle Gruca, Ed Moody, Fred Moody, and James Gleffe. *Id.* at 189:4-191:8; 192:11-19.

### Joe Barboza

126.    Joe Barboza's level of activity in the community is limited to little league baseball. Exhibit 37, Rubi Barboza Dep. P. 24.

**OBJECTIONS:** **Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago***, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.***, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**RESPONSE:** **Disputed. Defendant Joe Barbosa has lived in the 22nd District for 18 years, is active and popular in the community, and has coached several little league baseball teams.** *See* **Deposition of J. Barbosa, Plaintiff's Ex. 39, at 6:10-6:13, 10:18-10:20,**

304105952v1 1002097

14:1-14:4, 100:1-100:6.

127.    Running for the 22nd Representative District of Illinois was suggested to Joe Barboza; he never thought of running for political office prior to that race. Exhibit 39, Barboza Dep. P. 14. Joe Barboza did not discuss with his friends any type of strategy as to how to defeat Grasiela Rodriguez, Jason Gonzales or Michael Madigan. Exhibit 39, Barboza Dep. P. 54-55.

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

**RESPONSE:** Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Defendant Barbosa decided to run for state representative in the 22nd District after discussing it with his "close friends in the neighborhood." *See* Deposition of J. Barbosa, Plaintiff's Ex. 39, at 12:22-13:6. No one approached Defendant Barbosa and asked him to run. *Id.* at 14:1-14:4. Defendants admit that Defendant Barbosa never thought of running for political office prior to that race. *Id.* at 14:19-22. Defendants admit that Defendant Barbosa could not recall if he discussed how to defeat Grasiela Rodriguez, Jason Gonzales or Michael Madigan in the primary. *Id.* at 55:4-55:8.

22

128.     Joe Barboza has no clue as to who prepared the Nominating Petitions for him running for the 22nd Representative District, how he got them, who numbered them, who blacked out names, or how it was delivered in Springfield. Exhibit 39, Barboza Dep. P. 29, 77-82, 85, 106.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.*, **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**RESPONSE: Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Defendant Barbosa testified that "we had a group of people helping me out . . . . [j]ust a group of friends."** *See* **Deposition of J. Barbosa, Plaintiff's Ex. 39, 79:19-23. Defendant Barbosa testified that this same group of people prepared/provided and filed the nominating petitions.** *Id.* **at 79:3-81:6. He could not recall how a number of the signatures were "stricken out on these pages with black magic marker or something."** *Id.* **at 82:6-12.**

129.     Joe Barboza knows the following circulators of his petitions: himself (7 pages; 73 signatures), Rubi Barboza (5 pages; 54 signatures), Deliliah Barboza (2 pages; 23 signatures), Diana Rios (3 pages; 37 signatures), Zenaida Campos (2 pages; 19 signatures), Elsa Rivera (2 pages; 20 signatures), Roberto Rivera (2 pages; 18 signatures), Rogelio Manzano (1 page; 9 signatures), Jario Madrigal (5 pages; 40 signatures), Jacob Castro (1 page; 8 signatures), Cindy Gonzalez (1 page; 5 signatures), Salvador Raigosa

(3 pages; 32 signatures), and Ignacio Munoz (1 page; 14 signatures). Exhibit 39, Barboza Dep. P. 83, 84, 87, 90, 91, 92, 94; Exhibit 73, Barboza Nominating Petitions. Rubi Barboza, Joe's wife, is unfamiliar with Zenaida Campos, Jario Madrigal, and Cindy Gonzalez. Exhibit 37, Rubi Barboza Dep. P. 29, 31.

**OBJECTIONS: Defendants object to Exhibit 73 (Barboza Nominating Petitions) as it was not produced or disclosed during discovery, and therefore, Plaintiff violated Rules 26(a) and 26(e), implicating Rule 37(c)(1), which automatically and mandatorily excludes such evidence. For this reason, Plaintiff may not rely on Exhibit 73 to prove the truth of the matters set forth therein.**

RESPONSE: Without waiving above objections, Defendants admit.

130.    Joe Barboza did not know the following circulators of his petitions: James Fernandez (9 pages; 87 signatures), John Nagel (4 pages; 49 signatures), Derek Kucharski (5 pages; 59 signatures), Mark Riha (3 pages; 30 signatures), David Gonzalez (3 pages; 29 signatures), Marcella Navarro (3 pages; 35 signatures), John Hanrahan (4 pages; 55 signatures), Kenneth Kopek (3 pages; 44 signatures) or Justin Vasquez (2 pages; 29 signatures). Exhibit 39, Barboza Dep. P. 84, 86, 90, 91, 92-93, 94; Exhibit 73, Barboza Nominating Petitions. These same individuals testified that they did not know Joe Barboza. Exhibit 76, Kucharski Dep. P. 8; Exhibit 77, Nagel Dep. P. 9; Exhibit 78, Hanrahan Dep. P. 8. These circulators returned Barboza's petitions to the Lithuanian Museum building office at 6500 S. Pulaski and they were notarized there. Exhibit 77, Nagel Dep. P. 10, 22.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs'**

24

additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Defendants again object to Exhibit 73 (Barboza Nominating Petitions) as it was not produced or disclosed during discovery, and therefore, Plaintiff violated Rules 26(a) and 26(e), implicating Rule 37(c)(1), which automatically and mandatorily excludes such evidence. For this reason, Plaintiff may not rely on Exhibit 73 to prove the truth of the matters set forth therein.

RESPONSE: Without waiving above objections, Defendants partially admit and partially dispute. The evidence cited, nor does the record otherwise, support that Defendant Barboza did not know Justin Vasquez. Defendants admit Defendant Barboza did not know the others listed. The evidence cited, nor does the record otherwise, support that all the listed individuals "testified that they did not know Joe Barboza." Defendants only admit that Kucharski, Nagel, and Hanrahan did not know Joe Barboza. The evidence cited, nor does the record otherwise, support that all the listed circulators "returned Barboza's petitions to the Lithuanian Museum building office at 6500 S. Pulaski and they were notarized there." *See* Kucharski deposition, Plaintiff's Ex. 77, at 12:13-15. Defendants further aver that Plaintiff did not know all of his circulators. *See* Gonzales' Deposition, Plaintiff's Ex. 58, at 179:1-180:4.

304105952v1 1002097

131.    There are problems with Joe Barboza's nominating petitions: (1) Diana Rios did not reside at the Knox address as set forth on her circulator pages (Exhibit 37, Rubi Barboza Dep. P. 19; Exhibit 86, Rios Dep. P. 6-7); (2) John Hanrahan's petitions were not notarized in front of him. Exhibit 78, Hanrahan Dep. P. 10.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**RESPONSE: Disputed. The Board overruled the objections to Barbosa's nominating petitions and found that Barbosa had sufficient signatures to be placed on the ballot in the 2016 Primary Election. *See* Defendants' Ex. 5 at 45:22-46:13; Electoral Board's Findings and Decision, Phillips v. Barbosa, Defendants' Exhibit 13.**

132.    He never talked to his friends about raising money but expected to spend money on his campaign. Exhibit 39, Barboza Dep. P. 16, 18. Joe Barboza testified and set forth in his interrogatories that he did not spend any money on his campaign. Exhibit 39, Barboza Dep. P. 32; Exhibit 79, Barboza Interrogatory Response #5. Joe Barboza also testified that no one gave him financial assistance for his campaign and he had no expenditures. Exhibit 39, Barboza Dep. P. 45, 46-47; Exhibit 79, Barboza Interrogatory Response #8, #9.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of**

*Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

<u>RESPONSE:</u> Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit all the statements in Paragraph 132 other than "Joe Barboza testified and set forth in his interrogatories that he did not spend any money on his campaign," and that he "had no expenditures." The evidence does not support that he did not spend any money on his campaign, or that he testified as such. Defendant Barbosa testified that he paid for documents that were made. *See* Deposition of J. Barbosa, Plaintiff's Ex. 39, at 45:22-23.

133.    Joe Barboza testified to having passed out flyers with his background information, but did not create the flyer, did not pay for the copying of the flyer, and did not spend any money on his campaign. Exhibit 39, Barboza Dep. P. 18, 20, 29, 30.

<u>OBJECTIONS:</u> Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which

304105952v1 1002097

they purport to rely).

**RESPONSE: Disputed. Defendant Barboza testified that he created the flyers and that he paid for documents that were made.** *See* **Deposition of J. Barbosa, Plaintiff's Ex. 39, at 18:20-22; 45:22-23.**

134.    Joe Barboza testified that he and his campaign broke federal law by placing his flyers in mailboxes. Exhibit 39, Barboza Dep.p. 21.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.*, **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**RESPONSE: Disputed. The evidence cited does not support the statement in Paragraph 134, nor does the record otherwise support the statement. Defendant Barbosa only testified that he placed flyers in mailboxes.** *See* **Deposition of J. Barbosa, Plaintiff's Ex. 39, at 21:14-15.**

135.    Joe Barboza was unemployed at the time he was circulating his nominating petitions for 22nd Representative District, during the campaign period and the primary election. Exhibit 39, Barboza Dep. P. 33, 36, 37, 43. In 2016, after the election was concluded, Joe Barboza obtained employment with Robert Andreas Construction Company in Cicero. Exhibit 39, Barboza Dep. P. 36. Robert Andreas Construction Company has multiple construction contracts with the Town of Cicero; the owner of the

company and Cicero President Larry Dominick dine frequently together. Exhibit 40, Dominick Dep. P. 28-30.

**OBJECTIONS:** **Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.*, **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**RESPONSE:** **Disputed. The evidence cited does not support the statement in Paragraph 134, nor does the record otherwise support the statement. Defendant Barbosa only testified that he was "unemployed for sometime," "for several months . . . . in 2017 and 2018," and that he started a job for Robert Andreas Construction Company in 2016.** *See* **Deposition of J. Barbosa, Plaintiff's Ex. 39, 36:17-37:10. And, that he had a period of unemployment ion 2016, and that he doesn't "recall" if he began work before or after the primary election.** *Id.* **at 38:9-39:3. In addition, Larry Dominic never testified that "Robert Andreas Construction Company has multiple construction contracts with the Town of Cicero," and that the owner of the company and him dine frequently together. Mr. Dominic testified only that "I've known them [Robert Andreas & Sons, Incorporated] since 1960 because "[t]hey do work for the**

town, but I have known them as friends since 1960." *See* **Dominic Deposition,**

**Plaintiff's Exhibit 40, at 28:5-12. Mr. Dominic testified that he never called Robert**

**Andreas & Sons, Incorporated to get anybody a job there.** *Id.* **at 29:9-11. He testified**

**that he occasionally has lunch with Byron Andreas.** *Id.* **at 29:12-15.**

136.    Joe Barboza's sister is Ruth Ortega and she notarized his Statement of Candidacy. Exhibit 39, Barboza Dep. P. 75; Exhibit 41, Ortega Dep. P. 7-9; Exhibit 73, Nominating Petition of Joe Barboza. Ruth Ortega works for the Town of Cicero in the Licensing Department and was appointed by Cicero Town President Larry Dominick to the Cicero Zoning Board. Exhibit 40, Dominick Dep. P. 30-33; Exhibit 41, Ortega Dep. P. 18, 22. Ortega has also associated with Charles Hernandez in the Cicero Democratic Organization. Exhibit 40, Dominick Dep. P. 33; Exhibit 41, Ortega Dep. P. 26.

**OBJECTIONS: Plaintiff's statement that ""Ortega has also associated with Charles**

**Hernandez in the Cicero Democratic Organization" is misleading and**

**mischaracterizes the evidence and should be stricken as improper under Local Rule**

**56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012)**

**("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");**

*Brown v. Advocate South Suburban Hosp.*, **2011 WL 6753995, at \*4 (N.D. Ill. 2011)**

**(striking portions of the plaintiffs' additional statement of facts that mischaracterize**

**the evidence on which they purport to rely).**

**RESPONSE: Without waiving above objections, Defendants partially admit and**

**partially dispute. Defendants admit all statements in Paragraph 136 except "Ortega**

**has also associated with Charles Hernandez in the Cicero Democratic Organization."**

**The evidence cited does not support the statement, nor does the record otherwise**

support the statement. Mr. Dominick testified only that "[s]he [Ruth Ortega] comes occasionally -- she comes along with Charlie [Hernandez]." *See* Dominic Deposition, Plaintiff's Exhibit 40, at 33:2-9. Ms. Ortega did not testify, nor was asked about, Charlie Hernandez. *See* R. Ortega's Deposition, Plaintiff's Ex. 41.

137.    For the 2016 Election, Rubi and Deliliah Barboza also were circulators for State Representative Elizabeth Hernandez at the request of Joe's sister, Ruth Ortega. Exhibit 37, Rubi Barboza Dep. P. 21; Exhibit 41, Ortega Dep. P. 27. They received compensation from the Cicero Voter's Alliance (The Larry Dominick Team). Exhibit 37, Rubi Barboza Dep. P. 21; Exhibit 44, Illinois Board of Elections Expenditure for Barboza.

<u>OBJECTIONS:</u> Plaintiff's statement that ""Ortega has also associated with Charles Hernandez in the Cicero Democratic Organization" is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). Further, Exhibit 44 was not produced or disclosed during discovery, and therefore, Plaintiff violated Rules 26(a) and 26(e), implicating Rule 37(c)(1), which automatically and mandatorily excludes such evidence. For this reasons, Plaintiff may not rely on Exhibit 44 to prove the truth of the matters set forth therein.

<u>RESPONSE:</u> Without waiving above objections, Defendants partially admit and

31

partially dispute. Defendants only admit that Rubi and Delilah Barboza were circulators for State Representative Elizabeth Hernandez during unknown times, at the request of Joe's sister, Ruth Ortega. Rubi Hernandez testified that she did not know if she was paid for obtaining signatures on behalf of Lisa Hernandez. *See* R. Barboza's Deposition, Plaintiff's Ex. 37, at 21:18-20. Delilah Barboza testified that she helped "Lisa Mendoza" with signatures and was "not sure what dates those were." *See* D. Barbosa's Deposition, at 14:6-20. Delilah Barboza testified that she was paid for obtained the signatures for "Ms Mendoza's campaign," but was not sure who paid her. *See* D. Barbosa's Deposition, at 15:12-16.

## Grasiela Rodriguez

138. Grasiela Rodriguez only collected 4 pages containing 37 signatures for her candidacy. Exhibit 74, Rodriguez Nominating Petitions; Exhibit 47, G. Rodriguez Dep. P. 68. The remainder of the signatures needed to be on the ballet where collected by Joseph Nasella (66 pages with 534 signatures), Frank Glass (16 pages with 153 signatures), Mike Kuba (15 pages with 123 signatures) and an individual with the name of either Edmond or Edward O'Farrell (both names are printed on the petitions as being the circulator but it cannot be determined by the signature as to which name is correct) (15 pages with 128 signatures). Exhibit 74, Rodriguez Nominating Petitions. Grasiela Rodriguez does not know and has never met any of the individuals who circulated her petitions. Exhibit 47, G. Rodriguez Dep. P. 47-50.

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South*

32

*Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). Defendants again object to Exhibit 74 (Rodriguez Nominating Petitions) as it was not produced or disclosed during discovery, and therefore, Plaintiff violated Rules 26(a) and 26(e), implicating Rule 37(c)(1), which automatically and mandatorily excludes such evidence. For this reason, Plaintiff may not rely on Exhibit 74 to prove the truth of the matters set forth therein.

<u>RESPONSE:</u> Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit all except that Joseph Nasella collected 534 signatures and that Mike Kuba collected 123 signatures. Joseph Nasella collected 539 signatures and that Mike Kuba collected 122 signatures. *See* Rodriguez Nominating Petitions, Plaintiff's Exhibit 74.

139.    Grasiela Rodriguez raised no money, spent no money, did not ask people to circulate petitions for her, did not have a staff or volunteers to assist with a campaign, did not have yard signs or flyers, did not engage the assistance of her husband who ran for the same office 4 years prior and did not have a campaign strategy. Exhibit 47, G. Rodriguez Dep. P. 33-34, 38-39, 57-64, 69-70.

<u>OBJECTIONS:</u> Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the

304105952v1 1002097

plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

RESPONSE: Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Defendant Rodriguez did not ask people to circulate petitions for her, did not have a staff or volunteers to assist with her campaign, did not have yard signs or flyers, and did not have a campaign strategy as to defeating Michael J. Madigan. Defendant Rodriguez testified that she did not remember if she raised or spent money. *See* Deposition of G. Rodriguez, Plaintiff's Ex. 47, at 61:22-62:4. The evidence cited, nor does the record otherwise support, that Defendant Rodriguez did not engage the assistance of her husband who ran for the same office 4 years prior. In fact, Defendant Rodriguez testified that she spoke to her husband about running in 2016 Primary election on multiple occasions. *Id.* at 29:11-20; 32:8-18

140.    Grasiela Rodriguez testified that she obtained information about running for office from Jennifer Solski. Exhibit 47, G. Rodriguez Dep. P. 35-37. Jennifer Solski is an Assistant to Alderman Marty Quinn, Ethics Officer for the 13th Ward at the 65th & Pulaski location, Office Manager of the Central Ave. Office and communicates with precinct captains. Exhibit 45, Solski Dep. P. 8, 16-18. Madigan is familiar with Jennifer Solski and presumes she worked on his 2016 campaign. Exhibit 43, Madigan Dep. P. 77.

RESPONSE: Admit. Defendants further aver that Jennifer Solski is a friend of Defendant Rodriguez. *See* G. Rodriguez's Deposition, Plaintiff's Ex. 47, at 35:10-23. Defendant Rodriguez testified that "I asked a friend [Jennifer Solski] that circulated

34

before or assigned things that -- how would I begin, how would I do that, go about getting petitions." *Id.*

141.     Cicero Township Democratic Committeeman Charles Hernandez is familiar with Grasiela Rodriguez's circulator Joseph Nasella, as he volunteered for Hernandez's campaign and Cicero Voter's Alliance. Exhibit 87, Cundari Dep. P. 67-68.

**OBJECTIONS:** **Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.*, **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**RESPONSE:** **Disputed. The evidence cited does not support the statements in Paragraph 141, nor does the record otherwise support it. Defendants admit only that Mr. Cundari is familiar with a "Joseph Nasella" and further aver that Mr. Cundari did not know if Mr. Nasella was involved in the 2016 primary.** *See* **Cundari Deposition, Plaintiff's Ex. 87, at 69:3-11. Plaintiff did not depose Charles Hernandez.**

### *Shaw Decremer*

142.     Jason Gonzales took his own nominating petitions to the Illinois State Board of Election in Springfield, Illinois and saw Shaw Decremer in the room while he proceeded to file his petitions on November 30, 2015. Exhibit 58, J. Gonzales Dep. P. 269-274.

304105952v1 1002097

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago***, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.***, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**RESPONSE: Partial Admit and Partial Dispute. Defendants admit that Jason Gonzales took his own nominating petitions to the Illinois State Board of Election in Springfield, Illinois. However, Defendant Decremer testified only that he saw "Jason Gonzales at the Board of Elections with his petitions," but does not "remember where I was when I saw him [Plaintiff] or when I saw him," and does not recall "where I was when he [Plaintiff] filed [his petitions]."** *See* **Decremer's Deposition, Plaintiff's Ex. 57, at 81:5-18; 84:12-15.**

143. Jason Gonzales saw Shaw Decremer on November 30, 2015, at the Illinois State Board of Election in Springfield, Illinois with petitions to be filed between the time of 4:30pm and 5:00pm. Exhibit 58, J. Gonzales Dep. P. 92-93; 269-274. No one else had been filing petitions at that time Decremer approached the counter. Exhibit 58, J. Gonzales Dep. P. 279-280.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago***, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is**

304105952v1 1002097

improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

<u>RESPONSE:</u> **Partial Admit and Partial Dispute. Defendants admit that Jason Gonzales saw Shaw Decremer on November 30, 2015, at the Illinois State Board of Election in Springfield, Illinois. However, Defendant Decremer testified only that he saw "Jason Gonzales at the Board of Elections with his petitions," but does not "remember where I was when I saw him [Plaintiff] or when I saw him."** *See* **Decremer's Deposition, Plaintiff's Ex. 57, at 81:5-18. Or, if he had petitions in his hand at the time.** *Id.* **at 81:19-82:1. Decremer did not file the petitions of Defendants Rodriguez or Barboza.** *Id.* **at 82:2-4; 83:4-7.**

144.    Grasiela Rodriguez and Joe Barboza's nominating petitions were filed with the Illinois State Board of Election in Springfield at 4:52 pm and 4:53 pm, respectively. Exhibit 74, Rodriguez Petition; Exhibit 73, Barboza Petition. Decremer recalls having a conversation with someone, likely Marty Quinn, discussing the nominating petitions of Grasiela Rodriguez and Joe Barboza. Exhibit 57, Decremer Response to Interrogatories #8. Decremer testified to bringing Rodriguez and Barboza's nominating petitions down to Springfield to file. Exhibit 42, Decremer Dep. P. 46.

<u>OBJECTIONS:</u> **Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South*

304105952v1 1002097

*Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

RESPONSE: Partial Admit and Partial Dispute. Defendants admit Rodriguez and Barboza's nominating petitions were filed at 4:52 pm and 4:53 pm. Defendants admit Defendant Decremer brought Rodriguez and Barboza's nominating petitions to Springfield. Decremer did not file the petitions of Defendants Rodriguez or Barboza. *Id.* at 82:2-4; 83:4-7. Defendants dispute that Defendant Decremer "recalls have a conversation with someone, likely Marty Quinn[.]" Defendant Decremer testified he did not recall having any conversations. *See,* Decremer deposition, Plaintiff's Exhibit 57. 136:13-16, 137:24-138:2.

145. After Decremer left the Illinois State Board of Election filing room, Jason Gonzales re-approached the counter and learned that two other candidates petitions were filed in the same race as him, right after Gonzales had filed his petitions. Exhibit 58, J. Gonzales Dep. P. 279.

RESPONSE: Admit.

146. Shaw Decremer has served on Illinois House Speaker Michael Madigan's staff and volunteered on Madigan's campaigns. Exhibit 80, Chicago Tribune article "Former Madigan aide pays $1.1 million for Ravenswood Manor Home". In February 2018, Shaw Decremer was told by Political Direct [sic] Craig Willert that his volunteering was no longer need and Decremer knew that after two decades with Michael Madigan his efforts were no longer needed. Exhibit 42, Decremer Dep. P. 129, 131; Exhibit 81, NBC Chicago article "Another High-Ranking Madigan Aide Dismissed Over Allegations of Misconduct: Sources"; Exhibit 82, ABC7 article "Madigan cuts ties with top campaign worker over 'inappropriate behavior'".

**OBJECTIONS:** **Defendants object to Exhibits 80, 81 and 82 on the grounds of hearsay, and lack of foundation.** *Shrader v. Palos Anesthesia Assocs.*, **No. 01 C 2450, 2004 U.S. Dist. LEXIS 19194, at \*13 (N.D. Ill. Sep. 24, 2004) ("Hearsay evidence is not admissible evidence and therefore cannot be used to create a genuine issue of material fact.) (citing** *Winskunas v. Birnbaum*, **23 F.3d 1264, 1268 (7th Cir. 1994)). This statement is also immaterial to any of Plaintiff's claims.** *Cady v. Sheahan*, **467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).Exhibits 80, 81 and 82 appears to be news articles and are inadmissible hearsay, and Plaintiff has not demonstrated the foundation for the authenticity or reliability of the article or any statements therein. Further, Exhibits 80, 81 and 82 were not produced or disclosed during discovery, and therefore, Plaintiff violated Rules 26(a) and 26(e), implicating Rule 37(c)(1), which automatically and mandatorily excludes such evidence. For all these reasons, Plaintiff's may not rely on Exhibits 80, 81 and 82 to prove the truth of the matters set forth therein.**

**RESPONSE:** **Without waiving above objections, Defendants admit.**

147.    Shaw Decremer admitted to providing political assistance to campaign committees supporting Michael J. Madigan and also Silvana Tabares. Exhibit 57, Decremer Response to Interrogatories #5. Shaw Decremer has also worked on and contributed to campaigns at the bequest of Michael Madigan or the organization of which he heads, Democratic Party of Illinois, Friends of Michael J. Madigan, Democratic Majority. Exhibit 83, Illinois Board of Elections expenditure search for Decremer; Exhibit 57, Decremer Response to Interrogatories #11; Exhibit 84, Illinois Board of

304405952v1 1002097

Elections contribution searches.

**OBJECTIONS: Defendants object to Exhibit 83 on the grounds of hearsay, and lack of foundation.** *Shrader v. Palos Anesthesia Assocs.*, **No. 01 C 2450, 2004 U.S. Dist. LEXIS 19194, at \*13 (N.D. Ill. Sep. 24, 2004) ("Hearsay evidence is not admissible evidence and therefore cannot be used to create a genuine issue of material fact.) (citing** *Winskunas v. Birnbaum*, **23 F.3d 1264, 1268 (7th Cir. 1994)). Exhibit 83 appears to be an Illinois Board of Elections expenditure search for Decremer and is inadmissible hearsay, and Plaintiff has not demonstrated the foundation for the authenticity or reliability of the article or any statements therein. Further, Exhibit 83 was not produced or disclosed during discovery, and therefore, Plaintiff violated Rules 26(a) and 26(e), implicating Rule 37(c)(1), which automatically and mandatorily excludes such evidence. For all these reasons, Plaintiff's may not rely on Exhibit 83 to prove the truth of the matters set forth therein.**

**RESPONSE: Without waiving above objections, Defendants admit.**

### *Elections contribution searches.*

148.    From July 1, 2002 until January 15, 2013, Shaw Decremer was employed by the Officer of the Speaker of the House and assisted Michael J. Madigan while serving in that role. Exhibit 57, Decremer Response to Interrogatories #5 and #11. Thereafter, Shaw Decremer became a lobbyist in Springfield, advocating on behalf of his clients to the same individuals he dealt with while working for the Officer of the Speaker or on political campaigns. Exhibit 42, Decremer Dep. P. 24-25.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence**

40

and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

<u>RESPONSE:</u> **Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit to all statements in Paragraph 148 except that as a lobbyist, he advocates "on behalf of his clients to the same individuals he dealt with while working for the Officer of the Speaker or on political campaigns." The evidence cited does not support such a statement, nor does the record otherwise support it.**

149.    Leading up to the March primary election in 2016, Shaw Decremer worked on Michael Madigan's re-election campaign. Exhibit 42, Decremer Dep. P. 47. Shaw Decremer is in Madigan's organization "somewhere in the line of authority". Exhibit 43, Madigan Dep. P. 202. Shaw Decremer has worked with people from the 13th Ward Democratic Organization on various campaigns. Exhibit 42, Decremer Dep. P. 60.

<u>OBJECTIONS:</u> **Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the**

plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). Defendants object to the phrase "Madigan's Organization" as vague and ambiguous.

RESPONSE: Without waiving above objections, partially Defendants admit and partially dispute. Defendants admit that Defendant Decremer was involved in Madigan's campaign in the 2016 Primary Election but his involvement was limited to notarizing Madigan's statement of candidacy and loyalty oath and bringing Madigan's nominating petitions papers to the Illinois State Board of Elections in Springfield, Illinois. *See* Madigan Dep., Plaintiff's Ex. 43, at 130:6-24, 131:1-7, 212:8-212:11; Decremer Dep., Plaintiff's Ex. 42, 45:24-46:7, 47:4-47:11; 63:22-64:1; Mapes Dep., Plaintiff's Ex. 92, at 62:20-62:24. Defendants also admit that Defendant Madigan testified that Defendant Decremer was "somewhere in the line of authority" when he worked for the Office of the Speaker. *See* Madigan Dep., Plaintiff's Ex. 43, at 202:20-22. Defendants dispute Defendant Madigan testified Defendant Decremer was "somewhere in the line of authority" within "Madigan's Organization." *Id*. Defendants also admit that Defendant Decremer has worked with people from the 13th Ward Democratic Organization on various campaigns.

42

### *Silvana Tabares*

150.     Silvana Tabares married Sean Murray in 2013. Exhibit 64, Tabares Dep. P. 7. Sean Murray was her campaign manager for the 2011 State Representative race. Exhibit 64, Tabares Dep. P. 35.

**RESPONSE: Admit.**

151.     Silvana Tabares volunteered to work for the 13th Ward Democratic Organization and Friends of Michael J. Madigan for the 2016 primary election, where she did canvasing and phone banking from the 13th Ward Office located at 65th Street and Pulaski Road. Exhibit 64, Tabares Dep. P. 26-29.

**RESPONSE: Admit.**

152.     Speaker's staff working [sic] alongside Tabares when she was performing phone banking services. Exhibit 64, Tabares Dep. P. 31.

**RESPONSE: Defendants admit that Defendant Tabares worked alongside Defendant Madigan's campaign staff.**

153.     Tabares had the support of Town of Cicero President Larry Dominick. Exhibit 64, Tabares Dep. P. 34.

**RESPONSE: Admit.**

154.     Tabares voted for State Representative Michael J. Madigan for the office of Speaker of House in 2013 because he had asked her for the vote. Exhibit 64, Tabares Dep. P. 52.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago***, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South*

43

*Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

RESPONSE: **Disputed. Defendants admit only that Defendant Tabares voted for State Representative Michael J. Madigan for the office of Speaker of House in 2013, but dispute that it was because "he had asked her for the vote."** *See* **Tabares Deposition, Plaintiff's Ex. 64, at 52:12-53:5. The evidence cited does not support such a statement, nor does the record otherwise support it. Defendant Tabares testified only that she voted for Defendant Madigan or support him as Speaker of the House.** *Id.* **at 52:16-53:2. Defendant Madigan did not promise her anything in return for the support/vote.** *Id.* **at 53:3-8.**

155. As a freshman State Representative, Silvana Tabares was assigned to the committees of Higher Education, Insurance and Housing. Exhibit 64, Tabares Dep. P. 53. Madigan had later named her Chairwoman of the Elections and Campaign Finance Committee, thereby giving her a pay increase of $10,000. Exhibit 64, Tabares Dep. P. 115.

RESPONSE: **Admit. Defendants further aver that her appointment was "based on seniority" and that she "was one of a class."** *See* **Madigan's Deposition, Plaintiff's Ex. 43, at 240:18-242:2. The appointment was based on a policy that "before someone can be appointed as the Chair of a Committee and get the stipend, they have to have completed two terms . . . . [and] [t]hey have to have been elected to three terms – excuse me -- appointed or elected to three terms . . . . [a]nd then they enter an eligible**

44

class of people that can be appointed as Chairs of Committees." *Id.* Defendant

Tabares was not treated differently than any other member of that class, and was

"not conditioned in anyway upon political work." *Id.*

156.    In 2013, Silvana Tabares asked Speaker of the House Michael Madigan for additional assistance at her district office and thereafter Alania Hampton was hired to work in the 21st Representative District Office, while she was being paid by the Speaker's office. Exhibit 64, Tabares Dep. P. 54, 56, 60.

**OBJECTION:** This statement is immaterial to any of Plaintiff's claims. *Cady v.*

*Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain

"irrelevant information, legal arguments, and conjecture" may be stricken.).

**RESPONSE:** Disputed. Defendant Tabares testified that Ms. Hampton "applied

through the Speaker staff to be on Speaker staff," and "was paid by the Speaker of

the House [Mike Madigan]." *See* Tabares' Deposition, Plaintiff's Ex. 64, at 55:24-55:20.

Defendant Tabares "asked [Michael J. Madigan] for an In District to help me in my

district door to door," and that "Speaker Madigan sent Alaina Hampton to help her."

*Id.*

157.    Silvana Tabares had attended political fundraisers for Michael Madigan, Exhibit 64, Tabares Dep. P. 121. She had meetings with Madigan both on the House floor and in Madigan's office. Exhibit 64, Tabares Dep. P. 77. She also saw him at Caucas [sic] meetings in Springfield in 2015. Exhibit 64, Tabares Dep. P. 76-77. Tabares could not recall when any of the meeting with Michael Madigan took place but stated that they were contained on her electronic calendar, which was requested both in the interrogatories and deposition but were not produce [sic]. Exhibit 64, Tabares Dep. P. 74-75.

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence

304105952v1 1002097

and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). Defendants further object to Plaintiff's inclusion of "was requested both in the interrogatories and deposition but were not produce [sic]" as improper. Defendant Tabares objected to the production of" "a[]l documents constituting calendars, diaries or schedules of your activities during the period January 1, 2015, through the present whether said activities were public or private purposes" because "it is overly broad in scope, ambiguous for its failure to define activities, for not being reasonably calculated to lead to the discovery of relevant evidence . . . [and] to the extent it assumes information relating to this Defendant's activities either in an official role as a State Representative as such is protected by the legislative privilege." Plaintiff never requested a Rule 37.2 conference on the issue, and no motion to compel was filed.

RESPONSE: Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit all statements in Paragraph 115 except that Defendant Tabares could not recall when any of the meetings with Michael Madigan took place or that she stated that the meetings were contained on her electronic

calendar. The evidence cited does not support such a statement, nor does the record otherwise support it. As to the electronic calendars, Defendant Tabares testified that she would keep her scheduled appointments "to meet with Speaker Madigan," on her electronic calendar, but did not testify that she had any scheduled appointments with Speaker Madigan, only that they saw "each other periodically at the State Capital." *See* Tabares' Deposition, Plaintiff's Ex. 64, at 76:15-78:13. Defendant Tabares testified that her and Defendant Madigan "had Caucus meetings at the capital," and "see each other periodically at the State Capital," and "see each other during committee rooms or to discuss legislation that is going on at the State Capital . . . [o]n the House floor or in his office, just talk about State business." *Id.* at 76:15-78:13. She testified further that she did not meet with Defendant Madigan in 2015 about political business, about his re-election campaign, or about the three other primary candidates in the March 2016 Primary. *Id.* She also testified that she did not talk to "Mike Madigan in 2015 or 2016 about hiring any of these employees that you had in [her] Chicago office as a State Representative or Springfield office." *Id.*

158.    Marty Quinn, Michael Madigan's campaign manager for the 2016 primary campaign, (Exhibit 42, Decremer Dep. P. 69, 139), asked Tabares to work on Madigan's campaign. Exhibit 64, Tabares Dep. P. 66. Tabares performed canvassing, phone banking and was a passer outside of a polling place on election day for Madigan. Exhibit 64, Tabares Dep. P. 71.

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of*

*Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

<u>RESPONSE:</u> Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Marty Quinn asked Defendant Tabares to work on Defendants Madigan's campaign and admit that Defendant Tabares performed canvassing, phone banking and was a passer outside of a polling place on election day for Madigan. Defendants dispute that Marty Quinn was Michael Madigan's officially designated campaign manager for the 2016 primary campaign. Defendant Madigan testified specifically that "[t]here was no designated campaign manager," and never testified that he delegated tasks to Kevin Quinn. *See* Madigan's Deposition, Plaintiff's Ex. 43, at 59:6-8. Defendants admit though that Marty Quinn acted as the campaign manager for the 2016 primary for Michael Madigan. *Id.*

159.    Tabares told voters and potential voters for the 2016 primary election over the phone and in person to: "Vote for Speaker Michael Madigan. Vote No on convicted felon Jason Gonzales." Exhibit 64, Tabares Dep. P. 82-83. Although Tabares knew Gonzales had been pardoned due to news articles, she never told voters that he was pardoned. Exhibit 64, Tabares Dep. P. 84. Tabares spoke to Hispanic voters in Spanish and relayed the fact that she was a State Representative. Exhibit 64, Tabares Dep. P. 86; Exhibit 58, Jason Gonzales Dep. P. 222. Tabares never saw signs or literature for Joe Barboza or Grasiela Rodriguez and only spoke negatively about Jason Gonzales. Exhibit 64, Tabares Dep. P. 82, 86, 89.

304105952v1 1002097

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

**RESPONSE:** Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit all statements in Paragraph 117 except that Defendant Tabares relayed the fact that she was a State Representative. The evidence cited does not support such a statement, nor does the record otherwise support it. Defendant Tabares testified only that, during phone calls, she told every voter to "[v]ote for Speaker Michael Madigan . . . . [v]ote no on convicted felon Jason Gonzales." *See* **Tabares Deposition, Plaintiff's Ex. 64, at 81:23-86:24.**

160.    In 2017, Silvana Tabares was approached by Michael Madigan to run for the Democratic Committeewoman position in the 3rd Congressional District. Exhibit 64, Tabares Dep. P. 62-63, 93; Exhibit 43, Madigan Dep. P. 70-71. All expenses for the join [sic] campaign were covered by Madigan and his organizations. Exhibit 64, Tabares Dep. P. 63-64, 93. During the joint Tabares/Madigan campaign, Tabares was campaigning with 13th Ward and Madigan's precinct captains. Exhibit 64, Tabares Dep. P. 97.

**RESPONSE: Admit.**

304105952v1 1002097

161.    Michael Madigan privately supported Tabares for her current Aldermanic position with the 23rd Ward of Chicago. Exhibit 64, Tabares Dep. P. 98. Michael Madigan spoke with Mayor Rahm Emanuel about having Silvana Tabares appointed to the 23rd Ward Alderman position. Exhibit 43, Madigan Dep. P. 216.

**RESPONSE: Admit.**

### Jason Gonzales

162.    Several voters told Jason Gonzales that they will not be voting in the primary because it would be a throw away vote, the incumbent always wins, or they were leaning towards the two sham candidates. Exhibit 58, Jason Gonzales Dep. P. 10-17.

**OBJECTIONS: Defendants object to Gonzales' testimony regarding what several votes told him on the grounds of hearsay, and lack of foundation.** *Shrader v. Palos Anesthesia Assocs.*, **No. 01 C 2450, 2004 U.S. Dist. LEXIS 19194, at \*13 (N.D. Ill. Sep. 24, 2004) ("Hearsay evidence is not admissible evidence and therefore cannot be used to create a genuine issue of material fact.") (citing** *Winskunas v. Birnbaum*, **23 F.3d 1264, 1268 (7th Cir. 1994)). These statements are inadmissible hearsay, and Plaintiff has not demonstrated the foundation for the authenticity or reliability of the statements. There are no exceptions. As such, Plaintiffs may not rely on these statements to support this statement of fact.**

**RESPONSE: Disputed. The admissible evidence does not support such a statement.**

163.    Jason Gonzales has experienced emotional, psychological, and reputational damages that include visits to a psychiatrist, people in the community not speaking to him after the election, difficulty sleeping, panic attacks, depression, anxiety, and using prescription Xanex. Exhibit 58, Jason Gonzales Dep. P. 95. People have called him a fool and idiot for going up against Michael Madigan. Exhibit 58, Jason Gonzales

50

Dep. P. 100.

**OBJECTIONS:** Defendants object to Gonzales' testimony regarding what people in the community called him on the grounds of hearsay, and lack of foundation. *Shrader v. Palos Anesthesia Assocs.*, No. 01 C 2450, 2004 U.S. Dist. LEXIS 19194, at *13 (N.D. Ill. Sep. 24, 2004) ("Hearsay evidence is not admissible evidence and therefore cannot be used to create a genuine issue of material fact.") (citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994)). These statements are inadmissible hearsay, and Plaintiff has not demonstrated the foundation for the authenticity or reliability of the statements. There are no exceptions. As such, Plaintiff may not rely on these statements to support this statement of fact. Defendants also object to the statement that "people in the community not speaking to him after the election," as conjecture. *See Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Further, Rule 26(a)(1)(A)(iii) clearly requires parties to make initial disclosures that include, among other things, "a computation of each category of damages claimed by the disclosing party." If a party fails to provide information as required by Rule 26(a), "the party is not allowed to use that information . . . at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Additionally, Plaintiff cannot diagnosis himself with "difficulty sleeping, panic attacks, depression, anxiety." Plaintiff is not an expert and that without medical

knowledge, skill, experience, training and/or education, Plaintiff is not equipped to render conclusions or opinions about his alleged medical conditions. Rule 701 prohibits lay witnesses from testifying about matters which require specialized knowledge. Pursuant to Rule 701, lay witness testimony in the form of opinions or inferences "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Furthermore, Rule 702 clarifies that a nonexpert is not permitted to give expert testimony. *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001); Fed. R. Evid. 702.

RESPONSE: Disputed. The admissible and/or produced record evidence does not support such a statement. Plaintiff attributed his emotional distress to "a combination of both" the negative advertising in the campaign and the presence of Barbosa and Rodriguez on the ballot. *See* Gonzales' Deposition, Defendants' Ex. 5, at 97:23-98:17. In addition, there is no evidence of any emotional, psychological, and reputational damages. Plaintiff has not produced, or cited, any evidence of visits to a psychiatrist, or bills for prescriptions for Xanex. Additionally, Plaintiff has not disclosed any doctors and/or medical reports related to physiological and/or emotional treatment in connection with any of the allegations. Further, Plaintiff

304105952v1 1002097

stated that he is not seeking payment for medical bills and that "the money in my campaign then would not be -- I would not be entitled to that." *Id.*

164.    Jason Gonzales has been damaged financially through prescription costs, lack of the State Representative salary, personal funds used on the campaign, funds used on polling and campaigning against the sham candidates, and attorney fees and costs in litigating his constitutional rights. Exhibit 58, Jason Gonzales Dep. P. 103, 104; Docket No. 68, Second Amended Complaint.

**RESPONSE: Defendants refer this Court to their objections and response to Plaintiff's paragraph number 163.**

165.    Defendants' Expert Allan Lichtman recognizes that "Jason Gonzales is a Democrat, he professes to be a Democrat." Exhibit 68, Lichtman Dep. P. 91.

**RESPONSE: Admit. Defendants further aver that Plaintiff asked Dr. Lichtman whether he is biased against Plaintiff because of his support of the Democratic party, and Dr. Lichtman responded that "[a]s far as I know, Jason Gonzales is a Democrat, he professes to be a Democrat." *See* Dr. Lichtman's deposition, Plaintiff's Ex. 68, at 91:5-6.**

166.    Defendants' Expert Allan Lichtman did not consider the issue of race and whether the 22nd Representative District is an "effective Latino opportunity district". Exhibit 68, Lichtman Dep. P. 56.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.); *Brown v. Advocate South Suburban***

53

*Hosp.*, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

RESPONSE: Disputed. Dr. Lichtman testified that "I didn't study that question in the broad sense of whether it's an effective Latino opportunity district, but with respect to the 2016 election in the Democratic primary, which I did study, it was an effective Latino opportunity district because the candidate overwhelmingly favored by Latino voters and that is Michael Madigan who prevailed in that election." *See* Lichtman Deposition, Plaintiff's Ex. 68, at 56: 3-14. Dr. Lichtman also testified that "[i]t's not the race of the candidate, it's the choice of the voters . . . . [a]nd voters of any race can prefer a candidate of any race . . . . [a]nd what my analysis showed is over 60% of the Latinos participating in the 2016 primary election preferred Michael Madigan and that's with three challenges, they preferred Michael Madigan to the second choice by a very wide margin . . . . [a]nd so indeed the Latino voters of RD 22 in the 2016 Democratic primary were able to elect their overwhelming candidate of choice. *Id.* at 56:15-24. Finally, Dr. Lichtman testified that "I just told you . . . . I analyzed the Latino and non-Latino vote and showed that the overwhelming candidate of choice of the Latino voters [Michael J. Madigan] was elected in that district. *Id.* at 59:18-24.

167.    Defendants' Expert Allan Lichtman recognizes that it is unusual for an incumbent like Madigan to have his employees go out and circulate on behalf of his opponents and that "it might be in [Madigan's] best interest to have various

54

opponents." Exhibit 68, Lichtman Dep. P. 44.

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). See De v. City of Chicago, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.); Brown v. Advocate South Suburban Hosp., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

**RESPONSE:** Disputed. Dr. Lichtman was asked "[a]ssuming Mr. Nasella said what I've told you, that he was given petitions of Madigan's primary opponents by Madigan's employees in Madigan's office to go out and circulate, would that be unusual?" *See* Lichtman Deposition, Plaintiff's Ex. 68, at 44:8-13. In response, Mr. Lichtman testified "Probably . . . . I haven't studied that issue, but I'm sure it's happened." *Id.* at 44:14. Dr. Litchman was further asked "[w]ould that be an indication that these were sham candidates since the person they were running against were circulating their petitions with their agents or employees?" Mr. Litchman testified "Absolutely not . . . . [i]t's possible and this would not be unusual for an incumbent to believe that there's an anti-incumbent vote, and it might be in their interest to have various opponents." *Id.* at 44:14-21. Dr. Litchman further testified that "I said it would not be unusual at all for an incumbent to think there's

55

an anti-incumbent vote and it would, obviously, be in the interest of the incumbent and that would be very common to have multiple candidates. *Id.* at 45:9-13

168.    Michael Kuba, a circulator for Grasiela Rodriguez, did not reside at the address listed on the petitions signed by him. Exhibit 74, Rodriguez Nominating Petitions; Exhibit 89, Kuba Dep. P. 7-8; Exhibit 90, Pagois Dep. P. 5. Michael Kuba does not know Grasiela Rodriguez. Exhibit 89, Kuba Dep. P. 14. He picked up the nominating petitions from the 13th Ward office where his ex-girlfriend Susan Moran is a precinct captain. Exhibit 89, Kuba Dep. P. 15-16, 18; Exhibit 91, Moran Dep. P. 22-24. Michael Kuba went around with Eugene Pagois, a 13th Ward precinct captain, to verify that people signed the petition. Exhibit 89, Kuba Dep. P. 21, 23, 31, 32.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**RESPONSE: Without waiving above objections, Defendants partially admit and partially dispute. Defendants dispute that "Michael Kuba . . . did not reside at the address listed on the petitions signed by him." Mr. Kuba testified "yes," when asked if he ever lived at the address listed on the petitions signed by him. *See* Kuba Deposition, Plaintiff's Ex. 89, at 8:6-8. Defendants admit that Michael Kuba circulated for, and did not know, Grasiela Rodriguez, and that he picked up the nominating**

304105952v1 1002097

petitions from the 13th Ward office, and that his ex-girlfriend Susan Moran is a precinct captain for the 13th Ward. Defendants admit that Mr. Kuba went around with Eugene Pagois, a 13th Ward precinct captain, to verify that people signed the petition. However, Susan Moran did not give him the documents and Mr. Kuba did not even know if she worked there but thought she might be a volunteer there. *Id.* at 15:16-16:3. Mr. Kuba does not know if Moran or Pagois were precinct captains for the 13th Ward. *Id.* at 23:11-13.

169.    Grasiela Rodriguez obtained a position with Elmhurst Chicago Stone after running for office. Exhibit 47, G. Rodriguez Dep. P. 15. Elmhurst Chicago Stone is a contributor to Alderman Ed Burke who is close to Alderman Marty Quinn. Exhibit 48, Elmhurst Chicago Stone contribution statement from Illinois Board of Elections; Exhibit 49, Article "Why Alderman Who Need Extra Help Call Ed Burke." Michael Rodriguez was given a job with a large construction company, McHugh Construction, that gets state contracts, after his run for office in 2012. Exhibit 46, M. Rodriguez Dep. P. 11.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). In addition, Defendants further object to the documents on the grounds of hearsay, and lack of foundation. *Shrader v. Palos Anesthesia Assocs.*, No. 01 C 2450, 2004 U.S. Dist. LEXIS 19194, at \*13 (N.D. Ill. Sep. 24, 2004) ("Hearsay**

evidence is not admissible evidence and therefore cannot be used to create a genuine issue of material fact.) (citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994)). Exhibit 49 appears to be a WTTW news article dated March 14, 2019 and is inadmissible hearsay, and Plaintiff has not demonstrated the foundation for the authenticity or reliability of the article or any statements therein. Further, Exhibit 48 and Exhibit 49 were not produced or disclosed during discovery, and therefore, Plaintiff violated Rules 26(a) and 26(e), implicating Rule 37(c)(1), which automatically and mandatorily excludes such evidence. For all these reasons, Plaintiff may not rely on Exhibit 48 and Exhibit 49 to prove the truth of the matters set forth therein. ). This statement also is immaterial to any of Plaintiff's claims. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

RESPONSE: Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Defendant Rodriguez testified on June 13, 2018 that she has worked at Elmhurst Chicago Stone for the last six months. *See* Rodriguez's Deposition, Plaintiff's Ex. 47, at 15:7-14. Defendants further aver though that Defendant Rodriguez was not promised anything and did not receive anything in exchange for running in the 2016 Primary Election. *Id.* at 26:11-26:13, 34:7-34:22. Defendants also admit that Michael Rodriguez, as of July 11, 2019, worked at McHugh Construction, for approximately six (6) years. The admissible evidence does

304105952v1 1002097

not support whether McHugh Construction receives state contracts or whether he received this job after his run for office in 2012 or that Alderman Ed Burke is close to Alderman Marty Quinn or whether Elmhurst Chicago Stone is a contributor to Alderman Ed Burke

170.    Joseph Nasella has held numerous governmental jobs as a result of his campaigning and ability to obtain signatures on nominating petitions. Exhibit 88, Nasella Dep. P. 10-14, 16, 26, 29-30, 39. Nasella learned through the grapevine that Kevin Quinn was the access to Speaker Madigan. Exhibit 88, Nasella Dep. P. 26. Kevin Quinn sent Nasella to spy on Jason Gonzales and find out what he was doing. Exhibit 88, Nasella Dep. P. 28-29. Kevin Quinn directed Nasella to his previous job with the Secretary of State's office. Exhibit 88, Nasella Dep. P. 31. Joseph Nasella learned that getting a job in Cicero was ruled by Charles Hernandez and Larry Dominick. Exhibit 88, Nasella Dep. P. 55, 57.

**OBJECTIONS:** Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). See De v. City of Chicago, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); Brown v. Advocate South Suburban Hosp., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

**RESPONSE:** Disputed. Joseph Nasella never testified that he held numerous governmental jobs *as a result of* his campaigning and ability to obtain signatures on nominating petitions. *See* Nasella Dep., at Plaintiff's Ex. 88, at 10-14, 16, 26, 29-30, 39. Mr. Nasella never testified that he learned through the grapevine that Kevin Quinn

304105952v1 1002097

was *the access to Speaker Madigan. Id.* at 26. He testified that he found out through the grapevine that Kevin Quinn is the person to ask about becoming involved in the 13th Ward Democratic Organization. *Id.* at 26:11-21. Mr. Nasella never testified that Kevin Quinn sent Nasella to spy on Jason Gonzales and find out what he was doing. Mr. Nasella testified that Kevin or Moe asked him to see if Jason Gonzales would sign a petition. *Id.* at 28:12-22. Mr. Nasella never testified that Kevin Quinn directed Mr. Nasella to his previous job with the Secretary of State's office. Mr. Nasella testified that he learned about the job with the Secretary of State from Kevin Quinn. *Id.* at 3-23. Mr. Nasella never testified that he learned that getting a job in Cicero was ruled by Charles Hernandez and Larry Dominick. He testified that "Speaking between him [Charlie Hernandez] and Larry Dominick, you know, they rule the roost . . . . [y]ou know, I don't – if was up to me, I'd been Commissioner." *Id.* at 55:2-9.

171. Kevin Quinn provided Joseph Nasella with the nominating petitions for Grasiela Rodriguez and when asked why her and not Madigan, he got no response. Exhibit 88, Nasella Dep. P. 62, 68-69. He picked them up from the office at 6500 S. Pulaski on the second floor. Exhibit 88, Nasella Dep. P. 63.

**RESPONSE: Admit.**

172. 13th Ward Precinct Captain Eugene Pagois is related to State Senator Frank Civicus. Exhibit 90, Pagois Dep. P. 6, 58. He is the highest paid electrician at MPEA (Metropolitan Pier and Exposition Authority), specifically the McCormick place location. Exhibit 90, Pagois Dep. P. 10, 23-25, 31, 32.

**OBJECTIONS: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of*

*Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). ). This statement also is immaterial to any of Plaintiff's claims. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

<u>RESPONSE:</u> Without waiving above objections, Defendants partially admit and partially dispute. Defendants admit that Eugene Pagois is related to former State Senator Frank Civicus, that he is a 13th Ward Precinct Captain and that Mr. Pagois works for the MPEA at their McCormick place location. See Pagois Deposition, Plaintiff's Ex. 90, at 10:3-16. Mr. Pagois though never testified that he was the highest paid electrician at MPEA, and the evidence does not otherwise support it either.

173. Several 13th Ward Precinct Captains and members do not reside in the 13th Ward or even within the 22nd Representative District, including Joseph Nasella, Eugene Pagois, Edmond/Edward O'Farrell, James Fernandez, Mark Riha, David Gonzalez, Marcella Navarro, John Nagel, Justin Vasquez, Kenneth Kopek, Ed Tully, William Rhode, Michael Czopkiewicz, Joseph Garcia, Susan Moran, Victoria Jemilo, Colin Gruca, Kyle Gruca and Steve Hensley. Exhibits 73, 74, and depositions of these individuals.

<u>OBJECTIONS:</u> Exhibit 73 and Exhibit 74 were not produced or disclosed during discovery, and therefore, Plaintiff violated Rules 26(a) and 26(e), implicating Rule 37(c)(1), which automatically and mandatorily excludes such evidence. For all these

304105952v1 1002097

reasons, Plaintiffs' may not rely on Exhibit 73 and Exhibit 74 to prove the truth of the matters set forth therein. Defendants also object to Plaintiff's cite to "depositions of these individuals," without any pinpoints or exhibits. ). This statement also is immaterial to any of Plaintiff's claims. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

<u>RESPONSE:</u> Disputed. The evidence cited does not support the information set forth in Paragraph 73 as Plaintiff lists various individuals but cites to only two deposition transcripts.

Respectfully submitted,

/s/ *Adam R. Vaught*
Adam R. Vaught

304105952v1 1002097

Adam R. Vaught
Vincent M. Rizzo
Carson R. Griffis
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
avaught@hinshawlaw.com
*Attorneys for Michael J. Madigan*

Michael J. Kasper
151 North Franklin Street, Suite 2500
Chicago, IL 60601
Telephone: 312-704-3292
mjkasper60@mac.com
*Attorney for Friends of Michael J. Madigan*
*and 13th Ward Democratic Organization*

Richard J. Prendergast
Deirdre Ann Close
Michael Thomas Layden
Richard J. Prendergast, Ltd.
111 West Washington Street , Suite 1100
Chicago, IL 60602
Telephone: (312) 641-0881
rprendergast@rjpltd.com
dclose@rjpltd.com
mlayden@rjpltd.com
*Attorneys for Silvana Tabares*

Sean Michael Sullivan
Del Galdo Law Group, LLC
1441 S. Harlem Ave.
Berwyn, IL 60402
Telephone: (773) 562 3090
sullivan@dlglawgroup.com
grandfield@dlglawgroup.com
*Attorneys for Shaw Decremer*

Michael Kreloff
Law Offices of Michael Kreloff
3710 Commercial Ave. Ste. 5
Northbrook, IL 60062
Telephone: (847)525-1139
capitolaction@yahoo.com
*Attorney for Shaw Decremer*

James Patrick Nally
James P. Nally PC
8 South Michigan Avenue, Suite 3500
Chicago, IL 60603
Telephone: 312-422-5560
jamesnally@goldmanlegalhelp.com
*Attorney for Joe Barboza*

Scott Brent Erdman
The Law Offices Of Scott B Erdman
8 S. Michigan Avenue, Suite 3500
Chicago, IL 60603
Telephone: (312) 263-5700
ScottErdman@ErdmanLawOffices.com
*Attorney for Grasiela Rodriguez*

304105952v1 1002097

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 29, 2019, I electronically filed the forgoing DEFENDANTS' JOINT RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1(B)(3)(C) STATEMENT OF ADDITIONAL FACTS with the Clerk of the U.S. District Court, using the Court's CM/ECF system, which will accomplish service electronically on all counsel of record.

<i>/s/ Adam R. Vaught</i>

304105952v1 1002097