IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON GONZALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16 cv 7915 |
| v. ) | |
| ) | Judge: Matthew F. Kennelly |
| MICHAEL J. MADIGAN, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF
DEFENDANTS' RULE 56(A) MOTION FOR SUMMARY JUDGMENT**

Defendants Michael J. Madigan, Friends of Michael J. Madigan ("Friends"), 13th Ward Democratic Organization ("13th Ward"), Shaw Decremer, Silvana Tabares, Joe Barboza, and Grasiela Rodriguez (collectively "Defendants") submit their joint reply in support of their Rule 56(a) Motion for Summary Judgment and Joint Brief in Support of their Rule 56(a) Motion for Summary Judgment (collectively "Motion") (Dkt. #277, 278).

**Argument**

As Defendants showed in their opening brief (at pp. 6-8), federal courts strictly limit the scope of their review of state elections. Candidates challenging their opponents' campaign practices are expected to air these complaints publicly and capitalize on them at the polls. "The right response" to a "dirty election tactic," the Seventh Circuit recently held, is to "campaign[]" on the issue, for "[t]he price of political dirty tricks must be collected at the ballot box rather than the courthouse." *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 939-40 (7th Cir. 2018).

To be sure, *Smith v. Cherry*, 489 F.2d 1098 (7th Cir. 1973) (per curiam), recognized an exception to this rule under the Equal Protection Clause, and Plaintiff Jason Gonzales strives to fit his case within that exception. But *Smith* requires Gonzales to make several showings, and he has not marshalled evidence supporting any of them, meaning his equal protection claim ultimately fails on each of four independent grounds. His claim under 42 U.S.C. § 1985(3) likewise fails, and Gonzales offers no meaningful response to Defendants' showing that he is not a proper party to seek the relief he requests. Finally, Defendants showed in their opening brief (at p. 27) that Gonzales' remaining state law claims fail, and Gonzales offers no meaningful response, so Defendants are entitled to summary judgment on those claims as well.

I.  **Gonzales's Equal Protection Claim Fails On Four Independent Grounds.**

As Defendants showed in their opening brief (at pp. 10, 12), *Smith* recognizes an equal protection claim where (1) a candidate whose name appears on the ballot has agreed not to serve if elected, (2) this agreement was not publicly known before the election, (3) there is a reasonable likelihood that the undisclosed scheme affected the election's outcome, and (4) those behind the scheme acted under color of state law. Def. Br. 11. In response, Gonzales makes clear (at pp. 5-7) that he bases his equal protection claim on the theory recognized in *Smith*,[1] but he asks this Court to expand or overlook

---

[1] Gonzales does raise one "alternative" equal protection theory that does not rely on "*Smith* and *Rudisill*." Pl. Br. 7. For this, he cites *Esmail v Macrane*, 53 F.3d 176 (7th Cir. 1995). But in *Esmail*, the defendant mayor allegedly denied the plaintiff a liquor license as part of "an orchestrated campaign of official harassment

2

that theory's well-defined elements. This is a sharp break from Plaintiff's initial position that *Smith* has "a fact pattern quite similar to Defendants' use of sham candidates Barboza and Rodriguez." (Dkt. #53, pg. 3). Following discovery, however, Plaintiff has no choice but to ask the Court to recognize an unprecedented new version of *Smith*'s equal protection claim—well beyond the narrow cause of action recognized in that case—because the record includes no evidence supporting any of the *Smith* elements that the Seventh Circuit and other courts have consistently recited and applied. *See Rudisill v. Flynn*, 619 F.2d 692, 694 (7th Cir. 1980); *see also Grimes v. Smith*, 585 F. Supp. 1084, 1092 (1984) (Posner, J., sitting by designation) ("subsequent cases in this circuit . . . have read [*Smith*] very narrowly").

### A. Gonzales Does Not Allege, Much Less Present Evidence, That Voters Were Deceived "As To The Actual Effect Of Their Votes."

At the threshold, the equal protection claim recognized in *Smith* requires the existence of a "sham" candidate.[2] *Smith*, 489 F.2d at 1100, 1103. Accordingly, Gonzales parrots that term throughout his brief in describing Defendants Joe Barbosa and Grasiela Rodriguez. But even if everything Gonzales alleges were true, Barbosa and Rodriguez were not "sham" candidates as *Smith* used that term. Rather, to make out an

---

directed against him out of sheer malice." *Id.* at 179. Of course, granting a liquor license requires state action, unlike the alleged conduct here, and Gonzales was not *denied* anything, for he was on the ballot and ran a campaign that all agree would have failed regardless of the two candidates whom Gonzales challenges as "shams." See infra § I.C. In any event this new, class-of-one equal protection theory is forfeited. *See Bassiouni v. CIA*, 2004 WL 1125919, at *25 (N.D. Ill. 2004) (plaintiff cannot create genuine issue of material fact by raising arguments on summary judgment that were not raised in the complaint).

[2] Notwithstanding Gonzales' unsupported assertion to the contrary (at pp. 4-5), Defendants have consistently recognized that Gonzales is raising an equal protection claim.

equal protection claim, the ballot itself must lie—there must be "deception on the face of the ballot," *Smith*, 489 F.2d at 1102—meaning it must "deceiv[e] voters as to the *actual effect* of their votes," *Rudisill*, 619 F.2d at 694 (emphasis added).

And for a ballot to deceive voters as to the *effect* of their votes, a candidate whose name appears must not be prepared to serve if elected—that is, a vote for "the sham candidate whose name appeared on the ballot was really a vote for another undisclosed person." *Id.* As courts have repeatedly recognized, this lie as to a vote's true effect—as to who the voter is actually choosing for office—is an essential element of the equal protection theory recognized in *Smith*. *See* Def. Br. 10.

Gonzales does not allege, much less show, such deception here. To be sure, he recites a litany of what he characterizes as "evidence to persuade a jury" that Barboza and Rodriguez were "[r]ecruited and [s]upported by the Madigan [p]olitical [m]achine." Pls. Br. 8-10. But even if this properly characterized the record (and it does not), it is entirely irrelevant. What matters is that there is no dispute that a vote for Barboza was a vote for Barboza and a vote for Rodriguez was a vote for Rodriguez. Indeed, Plaintiff admits that "[h]ad Barboza or Rodriguez won the 2016 Primary Election, he or she would have been the Democratic nominee in the 2016 general election," and further concedes that "Madigan would have supported Barboza or Rodriguez" in that election. Dkt. 291, ¶¶ 69, 71. Accordingly, voters were not deceived as to the effect of their votes.

4

Gonzales' only remaining response is meritless. He borrows *Smith's* phrase that there must be "'deception on the face of the ballot,'" Pls. Br. 7; *see also id.* at 6 (quoting elsewhere from *Smith*), without acknowledging that the Seventh Circuit interprets this to require a showing that voters were deceived as to the "actual effect of their votes"—that is, that "a vote for the sham candidate whose name appeared on the ballot" was actually "a vote for another undisclosed person," *Rudisill*, 619 F.2d at 694. Nor does Gonzales offer a definition of his version of a "sham" candidate, other than to say that it is anyone who in his view fails to run a "legitimate campaign." Pls. Br. 8. But a ballot that includes such candidates does not deceive voters as to the effect of their votes, so long as these purportedly "sham" candidates would serve if elected, something no one disputes here. And Plaintiff's definition of a "sham" candidate—based on the time and other resources he or she devotes to the campaign—is both impossible to administer and would disproportionately subject less popular and well-funded candidates to the threat of litigation. *See* Defs. Br. 13-14.

In short, Gonzales does not allege, much less marshal evidence to show, that the 2016 primary ballot deceived voters as to the effect of their votes. On this basis alone, Defendants are entitled to summary judgment on his equal protection claim.

> **B.** **That Barbosa And Rodriguez Were Purportedly "Sham" Candidates, As Plaintiff Misuses That Term, Was Well Publicized In Any Event.**

As explained in Defendants' opening brief (at p. 14), even the appearance of a real "sham" candidate—one who agrees in advance not to serve—does not give rise to

5

an equal protection claim if the "sham" was publicly disclosed. Quite simply, if the "sham" was known to the electorate, voters were not "deceiv[ed]." *Rudisill*, 619 F.2d at 694.

Here, the undisputed facts show that Gonzales widely publicized his charge that Barboza and Rodriguez were sham candidates. SOMF ¶ 46. The media ran numerous stories on the issue, and Gonzales even poll-tested the effectiveness of the message with voters. *Id*. ¶¶ 48, 54, 63.

Gonzales responds (at p. 11) that "Defendants would have this Court determine the collective subjective knowledge of an electorate from three years ago as to the quantum of understanding [] the public had given the isolated instances of communication." Pls. Br. 11. But the undisputed facts show that Plaintiff's "sham" allegations were well publicized, and Barbosa's and Rodriguez's failure to produce yard signs or hold rallies—reasons why Gonzales claims they were not "legitimate" candidates—were obvious to anyone who cared to look.[3] It is Plaintiff's burden to show that the sham he alleges was nevertheless undisclosed, something he obviously fails to do. *See Block v. Marino*, 819 F. Supp. 349 (S.D.N.Y. 1993) (dismissing claim because "'sham' was disclosed to voters" before election). On the contrary, the unrefuted

---

[3] Plaintiff complains (at p. 11) that *Rudisill* is distinguishable because there no one "misunderstood the issue placed on the ballot." But the same is true here. Just as *Rudisill* distinguished the alleged fraud in that case from the deception in *Smith*, where "a vote for the same candidate whose name appeared on the ballot was really a vote for another undisclosed person," 619 F.2d 694, here no one "misunderstood the issue" on the ballot because a vote for Barbosa or Rodriguez was a vote for Barbosa or Rodriquez. And again, if the supposed deception was that these candidates were not running what Gonzales considers "legitimate campaigns," this too was well publicized.

evidence establishes—not that the electorate was unaware of Gonzales' claims against Barbosa and Rodriguez—but that both Hispanic and white voters found claims about "sham" candidacies to be of little importance. SOMF ¶¶ 54, 63.

For this reason, too, Defendants are entitled to summary judgment on Gonzales' equal protection claim.

### C. Gonzales Fails To Show Any Impact On The Election, As Required To Sustain His Equal Protection Claim.

Gonzales also must establish a "reasonable possibility that [Barbosa's and Rodriguez's] candidac[ies] affected the outcome of the election." *Smith*, 489 F.2d at 1103. And as Defendants set out in their opening brief, the undisputed facts show that these candidacies had no impact on the outcome of that race. Among other evidence, Madigan won by a sizeable margin well in excess of Gonzales, Barbosa and Rodriguez's votes combined; unrebutted survey evidence showed that ethnicity was of little importance to Hispanic primary voters, contrary to Gonzales' presumption; and Gonzales' own expert, Dick Simpson, refused to opine that Gonzales would have won the primary if Barbosa and Rodriquez had not run. Def. Br. 17-20.

Gonzales offers almost no response. He cites his own deposition for the assertion that "the effect of the sham candidates went far beyond vote totals," making it impossible to answer the "metaphysical" question of who would have won the primary if Barbosa and Rodriguez had not been on the ballot. Def. Br. 13. But it is the plaintiff's burden to make that showing, using the evidence and expert testimony, and Gonzales'

7

expert simply refused to reach that conclusion. On the contrary, Simpson estimated that Gonzales might have garnered 40% of the vote in a head-to-head race with Madigan, though Simpson conceded that even that was only "a guess." SOMF ¶¶ 89-91. In any event, Gonzales supports his statement that "the effect of sham candidates went far beyond vote totals" with his own testimony reciting purported statements from unnamed voters—inadmissible hearsay that cannot be used to create a question of fact on summary judgment. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994).

In short, while this Court gave Gonzales the opportunity "to produce evidence" showing that "a candidate-packed primary ballot, including three Hispanic candidates in a heavily Hispanic district, would lead to voter confusion and drive them toward the incumbent or keep them from voting," Dkt. 89 at 4, Gonzales failed to find any evidence to support that theory.

Instead, with no record support for this element of his equal protection claim, he asks the Court to overlook the element entirely, claiming he "has no burden to prove he would have won the 2016 Primary election" after all. Pls. Br. 12. In *Smith*, Gonzales contends, plaintiffs needed to prove a likely effect on the outcome of the election because they sought "to overturn the electoral result," while Gonzales "does not contest that outcome and does not seek a new election" but rather complains of his "denial of equal protection within that election, regardless of the result." *Id*. at 12-13.

But this new theory suffers from multiple problems. *First*, it breaks sharply from Gonzales' complaint, which alleges that his equal protection rights were violated based on the effect of Defendants' alleged conduct on the election. He contends that Defendants "*dilute[ed] the Hispanic vote* by registering two fake candidates with Hispanic surnames," aimed "to prevent [him] from winning election," and achieved their aims "by means of the use of sham candidates, defamation, *and dilution of votes*." Dkt. 68, ¶¶ 120, 362, 367 (emphasis added). In short, Gonzales bases his equal protection claim on Defendants' alleged threat to the success of his candidacy, not on an abstract interest unrelated to the election result.

*Second*, because Gonzales brings his claim as an unsuccessful candidate, *Smith*'s requirement that he show a likely effect on the election must apply. Gonzales alleges he was affected as a candidate for office, not as a voter, meaning any harm would derive from the effect of Defendants' actions on his candidacy. *See Smith*, 489 F.2d at 1004. Otherwise, this lawsuit would in essence be one for emotional distress resulting from the mere participation of two allegedly "sham" candidates, and such a claim is not actionable. When it comes to "electioneering intrigues, the meannesss of candidates, and the calumnies of their opponents," "[t]he legal system leaves most of these matters to the political process, not the courts." *Manley v. Law*, 889 F.3d 885, 889 (7th Cir. 2018) (internal quotations omitted).

9

*Third*, Gonzales rests his new equal protection theory on *Kozuszek v. Brewer*, 546 F.3d 485 (7th Cir. 2008), Pl. Br. 12, but that decision shows why Gonzales may *not* assert his new theory. *Kozuszek* affirmed the dismissal of a § 1983 claim based on the allegedly unconstitutional refusal to count the plaintiffs' votes. 546 F.3d at 490. In a "final observation" at the end of the opinion, however, the court notes in dicta that plaintiffs would not have needed to show that, if counted, their votes would have affected the outcome of the election. *Id*. That is because the case involved the plaintiffs' "*act* of voting—an individual's ability to express his or her political preferences at the ballot box," and "[a]n official who willfully interferes with this act violates the Constitution, regardless whether the vote would have affected the election outcome." *Id*.

Gonzales does not seek to vindicate his rights as a voter. On the contrary, he voted for himself, and his vote was counted. SOMF ¶ 98. Nor would he have standing to advance claims on behalf of other voters. *Warth v. Seldin*, 422 U.S. 490, 503 (1975) (An equal protection plaintiff "must allege and show that [he] personally [has] been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."). The constitutional claim recognized in *Kozuszek*—the only authority on which Gonzales bases his new equal protection theory—therefore has no application here.

In sum, Gonzales brings his equal protection claim as a disappointed primary candidate, and *Smith* thus requires him to show a "reasonable likelihood" that

10

Defendants' alleged conduct changed the outcome of the election. Because Gonzales failed to find any evidence to support this showing, Defendants are entitled to summary judgment on this claim.

### D. Defendants Were Not Acting Under Color Of State Law.

As Defendants showed in their opening brief (at pp. 20-23), nothing in the case suggests that Defendants were acting under color of state law, another element of Gonzales' equal protection claims. Specifically, Gonzales must show that Defendants' alleged conduct is related "to the performance of the duties of the[ir] state office[s]." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). The law is clear that elected officials are not state actors when they engage in conduct as candidates for office, nor is it state action for government officials to exploit the prestige of their position. Def. Br. 21-23.

Gonzales offers nothing meaningful in response. Instead, he spends pages purportedly showing "action under color of law due to the clout and power of 'The Speaker,'" claiming that "[w]ithout such clout and power, the scheme" he alleges "could have never succeeded." Def. Br. 19. He then marshals "facts" purporting to show that "Madigan's power rests on two bases: money and jobs." *Id*. at 20. But neither of these supports a finding of state action. "Money" refers to two political accounts, *id.* 20, neither of which was procured under "color of law." The state does not appropriate

funds to such accounts, nor is state action needed to collect campaign funds, as Gonzales' own ability to do so makes clear.[4]

Gonzales' reference to "jobs" is no better. This refers to an "admi[ssion]" that Madigan "made recommendations for employment in both the private and public sector." *Id*. But public officials have "a First Amendment right to make recommendations for employment." *Winkelman v. Magne*, 173 F. Supp. 2d 821, 825 (C.D. Ill. 2001) (citing *Tarpley v. Keistler*, 188 F.3d 788, 793-95 (7th Cir. 1999); *Vickery v. Jones*, 100 F.3d 1334, 1344-45 (7th Cir. 1996)). And Gonzales cannot sustain a § 1983 claim based on a Defendant's exercise of that right. *See Tarpley v. Keistler*, 188 F.3d 788, 796-97 (7th Cir. 1999) ("In this case, political speech of a well-recognized genre [job recommendations] is at stake, and we will not allow a claim of conspiracy to undermine it. 'We are loathe to interpret section 1983 to proscribe what we thus understand to be traditional political activity.'").

In any event, Gonzales presents no evidence that Madigan (or Tabares, the only other state-official Defendant) used money or job recommendations to get Barboza or Rodriguez on the ballot. Gonzales merely ties his "facts" together with mere conjecture

---

[4] If correct, Gonzales' campaign-fund theory would imply that he acted under "color of law" if he conspired with a state actor, former Governor Bruce Rauner, and Rauner's Republican allies to raise Gonzales' campaign funds.

that Madigan somehow must have been involved.[5] But such conjecture is insufficient to defeat summary judgment. *Delapaz v. Richardson*, 634 F.3d 895, 901 (7th Cir. 2011).

Gonzales asks the Court to overlook the absence of factual support for his claim, claiming he is "not required to demonstrate a specific fact that unambiguously demonstrates state action, since the question is whether 'the aggregate of all relevant factors' allows such a conclusion." Def. Br. 14-15 (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 360 (1974)). But Gonzales omits the fact that his quotation to *Jackson* comes from Justice Douglas' *dissent* in that case, *see Jackson*, 419 U.S. at 360 (Douglas, J., dissenting), not from the majority opinion.

Nor does *Shakman v Democratic Org. of Cook County*, 435 F.2d 267, 280 (7th Cir. 1970), support Gonzales' claim, as he contends (at pp. 2, 15). Indeed, there was "no argument" even raised in that case that the state-official defendants were not "acting under color of law in making the appointments" at issue. *Shakman*, 435 F.2d at 269.[6]

Gonzales also argues that Defendants engaged in state action because the Illinois Election Code, 10 ILCS 5/1-1. *et seq.*, governs the placement of candidates on the ballot. Def. Br. 17. But this Court has already rejected that theory, recognizing that it would

---

[5] For example, Gonzales claims Barbosa received "rewards" from people connected with the Town of Cicero, without any evidence connecting Madigan and Cicero. Def. Br. 22. Likewise, Plaintiff claims Rodriguez was "rewarded" with a job at a company that has contributed to Alderman Ed Burke's political committee, without evidence suggesting a connection to Madigan. *Id.*

[6] Gonzales also fails to mention a later appeal in the same litigation, criticizing the earlier opinion, on which Gonzales relies, because that opinion did not "precisely define[ ]" or offer "much guidance" on the constitutional rights purportedly at stake in that case. *Shakman v. Dunne*, 829 F.2d 1387, 1391 n.7, 1395.

304105758v1 1017796

mean that "every claim of election fraud or violation of a state election statute would give rise to a federal suit under section 1983" and that "[t]he Seventh Circuit has held . . . that section 1983 does not have such a broad scope. *See Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975)." Dkt. 64 at 10. Accordingly, this Court made clear that its "grant of Gonzales's motion to alter its judgment of dismissal d[id] not rest on this basis." *Id.*

Without legal or record support for his claim that any Defendant acted under color of state law, Gonzales' equal protection claims fail.

## II. Plaintiff Has No Actionable Damages.

As Defendants showed in their opening brief (at p. 27), "federal courts do not sit to award post-election damages to defeated candidates." *Hutchinson v. Miller*, 797 F.2d 1279, 1287 (4th Cir. 1986). Gonzales responds (at p. 28) by claiming that *Hutchinson* was an application of *Younger* abstention (it was not), followed by the unremarkable point that *Younger* does not apply here. Nor is there anything to Gonzales' claim (at p. 28) that *Hutchinson* somehow conflicts with the Seventh Circuit's decision in *Hennings*, which *Hutchinson* not only cited with favor (as Gonzales acknowledges), but involved an unsuccessful *voter* claim for *injunctive* relief—hardly evidence that the Seventh Circuit has embraced damages claims for unsuccessful candidates.

## III. Plaintiff Has Not Shown The Racial Animus Required For A § 1985(3) Claim.

Gonzales introduces no evidence to suggest that Defendants were motivated by racial animus. To the contrary, as noted in Defendants' opening brief (at p. 26),

14

Gonzales testified that Defendants acted "to defend Speaker Madigan, the incumbent's power," not because they "had any racial hang-ups against" him. Gonzales offers only his own speculation in response, and even that is limited to the allegation that his "race had a significant bearing" on Defendants' "decision to put in two candidates with Hispanic names." Pls. Br. 26, citing PSOF ¶ 99. But even if such self-serving speculation could defeat summary judgment, what Gonzales alleges is (in his view) a strategic effort to confuse voters, not the animus required to sustain a § 1985(3) claim. *See, e.g., Curtis v. GTE Comm'n Sys. Corp.*, No. 90 C 0633, 1990 WL 106511, at *6 (N.D. Ill. July 12, 1990) ("§ 1985 does not provide a remedy for . . . political vendettas, unless they are motived by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus'") (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

### IV. Gonzales Has No Evidence Of An Actionable Conspiracy.

Finally, Gonzales (at p. 26) offers nothing to suggest that any Defendant reached an understanding with a state actor to deny Gonzales his rights. Rather, his theory rests entirely on speculation and conjecture, *see supra* Section I.D., which is insufficient to defeat summary judgment. *Beaman v. Freesmeyer*, 776 F.3d 500, 511 (7th Cir. 2015).

### Conclusion

For all of the reasons stated above, Defendants respectfully request that this Court grant their Rule 56(a) Motion for Summary Judgment and enter judgment in their favor.

15

Respectfully submitted,

/s/ *Adam R. Vaught*
Adam R. Vaught

304105758v1 1017796

Adam R. Vaught
Vincent M. Rizzo
Carson R. Griffis
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
avaught@hinshawlaw.com
*Attorneys for Michael J. Madigan*

Michael J. Kasper
151 North Franklin Street, Suite 2500
Chicago, IL 60601
Telephone: 312-704-3292
mjkasper60@mac.com
*Attorney for Friends of Michael J. Madigan and 13th Ward Democratic Organization*

Richard J. Prendergast
Deirdre Ann Close
Michael Thomas Layden
Richard J. Prendergast, Ltd.
111 West Washington Street , Suite 1100
Chicago, IL 60602
Telephone: (312) 641-0881
rprendergast@rjpltd.com
dclose@rjpltd.com
mlayden@rjpltd.com
*Attorneys for Silvana Tabares*

Sean Michael Sullivan
Del Galdo Law Group, LLC
1441 S. Harlem Ave.
Berwyn, IL 60402
Telephone: (773) 562 3090
sullivan@dlglawgroup.com
grandfield@dlglawgroup.com
*Attorneys for Shaw Decremer*

Michael Kreloff
Law Offices of Michael Kreloff
3710 Commercial Ave. Ste. 5
Northbrook, IL 60062
Telephone: (847)525-1139
capitolaction@yahoo.com
*Attorney for Shaw Decremer*

James Patrick Nally
James P. Nally PC
8 South Michigan Avenue, Suite 3500
Chicago, IL 60603
Telephone: 312-422-5560
jamesnally@goldmanlegalhelp.com
*Attorney for Joe Barboza*

Scott Brent Erdman
The Law Offices Of Scott B Erdman
8 S. Michigan Avenue, Suite 3500
Chicago, IL 60603
Telephone: (312) 263-5700
ScottErdman@ErdmanLawOffices.com
*Attorney for Grasiela Rodriguez*

CERTIFICATE OF SERVICE

    The undersigned certifies that on July 29, 2019, I electronically filed the forgoing DEFENDANTS' JOINT REPLY IN SUPPORT OF DEFENDANTS' RULE 56(A) MOTION FOR SUMMARY JUDGMENT with the Clerk of the U.S. District Court, using the Court's CM/ECF system, which will accomplish service electronically on all counsel of record.

                                                                                         */s/ Adam R. Vaught*

304105758v1 1017796